Bethany Stevens (SBN 245672)
bstevens@wscllp.com
Amanda Walker (SBN 252380)
awalker@wscllp.com
WALKER STEVENS CANNOM LLP
500 Molino Street, Suite 118
Los Angeles, California 90013
Telephone: (213) 712-9145
Fax: (213) 403-4906

Michael Ng (SBN 237915)
michael.ng@kobrekim.com
Daniel Zaheer (SBN 237118)
daniel.zaheer@kobrekim.com
KOBRE & KIM LLP
150 California Street, 19th Floor
San Francisco, California 94111
Telephone: (415) 582-4800

Christopher Cogburn*
*pro hac vice to be filed
christopher.cogburn@kobrekim.com
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 488-1200

*Attorneys for Petitioner
Shanghai Lan Cai Asset
Management Co, Ltd.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **SHANGHAI LAN CAI ASSET MANAGEMENT CO, LTD.**, <br><br> Petitioner, <br><br> v. <br><br> **JIA YUETING**, <br><br> Respondent. | Civil Case No. 2:18-cv-10255 <br><br> **PETITION TO CONFIRM ARBITRATION AWARD** |

Petitioner Shanghai Lan Cai Asset Management Co, Ltd. ("SLC") hereby petitions this Court for an order and judgment confirming a final, binding arbitration award (the "Final Award") issued in Beijing, China on January 22, 2018, against Respondent Jia Yueting and two companies in which Jia had a substantial ownership interest: LeTV Sports Culture Develop (Beijing) Co., Limited ("LeTV") and TV Plus Holdings (Beijing) Limited ("TV Plus" and, together with Jia and LeTV, the "Arbitration Respondents"). This Petition is supported by an accompanying Memorandum and a Declaration of Jian Kang dated December 10, 2018 ("First Kang Declaration"). In support of this Petition, SLC respectfully states as follows:

## NATURE OF ACTION

1. SLC brings this proceeding under Section 207 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 207, and Article III of the 1958 Convention for the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), to confirm the Final Award. The tribunal of three arbitrators (the "Tribunal") that issued the Final Award was duly constituted under the 2015 Arbitration Rules of the Beijing Arbitration Commission.

2. The Final Award concluded Beijing Arbitration Commission case number (2018) Jing Zhong Cai Zi No. 0146 (the "Arbitration"), which resolved a dispute between SLC and Jia, LeTV and TV Plus.

3. SLC respectfully requests that this Court confirm the Final Award and incorporate its terms into a judgment in favor of SLC. SLC also seeks to recover the fees and expenses incurred in confirming the Final Award, along with such further relief as this Court may find just and proper.

## PARTIES

4. Petitioner Shanghai Lan Cai Asset Management Co, Ltd. is a corporation organized under the laws of the People's Republic of China, with its

principal place of business in Shanghai, People's Republic of China.  (First Kang Decl. ¶ 4.)

5.     Respondent Jia Yueting is a Chinese citizen who lives in California. His permanent address is 7 Marguerite Drive, Rancho Palos Verdes, California. (*Id.*)

## JURISDICTION AND VENUE

6.     This proceeding arises under Article III of the New York Convention. Chapter 2 of the Federal Arbitration Act, codified at 9 U.S.C. § 201 *et seq.*, applies the New York Convention to award-recognition actions brought in the courts of the United States.

7.     This Court has jurisdiction over the subject matter of this proceeding under 9 U.S.C. § 203, which provides that "[t]he district courts of the United States . . . have original jurisdiction over" any "action or proceeding falling under the [New York] Convention."  This proceeding "fall[s] under the Convention" because it arises out of a commercial contract between SLC and Jia, neither of whom are citizens of the United States.  See 9 U.S.C. § 202 (providing that an "arbitral award arising out of a legal relationship . . . which is considered as commercial . . . falls under the Convention" unless the relationship is "entirely between citizens of the United States").  In addition, the Final Award was made in the People's Republic of China, which is a party to the New York Convention.

8.     28 U.S.C. § 1331 also gives the Court subject-matter jurisdiction over this proceeding, because it is a "civil action[] arising under the . . . laws, or treaties of the United States."

9.     The Court has personal jurisdiction over Jia because he is a resident of California.

10.    Venue in this District is proper under 28 U.S.C. § 1391(b)(1) because the sole Respondent, Jia, resides within this District.

# BACKGROUND

11. The Final Award resolved a dispute between SLC and the Arbitration Respondents that arose under two related agreements. The first of those agreements (the "Loan Contract") set forth the terms under which SLC—acting as an agent of investor-users of Lancai.cn, an internet-based financing platform—extended a ¥50 million loan to LeTV. (First Kang Decl. Ex. 1 at 2; *see generally* First Kang Decl. Ex. 2.) Under the second agreement (the "Guarantee"), Jia and TV Plus guaranteed the loan to LeTV, assuming joint and several liability for any failure by LeTV to perform its obligations under the Loan Contract. (First Kang Decl. Ex. 1 at 2; *see generally* First Kang Decl. Ex. 3.)

12. The Loan Contract provided for a term of 12 months, running from the date on which SLC disbursed the loan funds to LeTV. (First Kang Decl. Ex. 2 art. 2(I).) LeTV was to repay the ¥50 million principal in a single lump-sum payment at the conclusion of the 12-month term, while settling outstanding interest on each of five dates (the "Interest Settlement Dates") over the course of the term. (*Id*. art. 3(II), (IV).) The Loan Contract provided for an annual interest rate of 7.5 percent. (*Id*. art. 3(III).) In the event of a default by LeTV, an additional "0.05 percent per day" would accrue under the Loan Contract until the default was cured. (*Id*. art. 3(VII).)

13. The parties executed the Loan Contract and the Guarantee on December 1, 2016. SLC disbursed the loan funds to LeTV's nominated recipient on December 2, 2016. Under the terms governing the Interest Settlement Dates, LeTV was required to pay all interest outstanding on the loan as of December 15, 2016, March 15, 2017, June 15, 2017, and September 15, 2017. (*See* First Kang Decl. Ex. 2 art. 3(IV).) The principal, together with any remaining interest, was due by December 2, 2017. (*See id*. art. 3(II).)

14. LeTV made the interest payments required on the first two Interest Settlement Dates. To this day—more than one year after the date on which LeTV

was required to repay the loan principal and all remaining interest—neither LeTV nor its guarantors, Jia and TV Plus, have made any additional payments to SLC.

## THE ARBITRATION AND THE FINAL AWARD

15. Article 13 of the Loan Contract provided for arbitration in the event of a dispute between the parties:

>  (I) The Contract shall be governed by the laws of the People's Republic of China.
>
> (II) Any dispute arising from the performance of the [Loan] Contract may be resolved through consultation, failing which either Party may bring such dispute for arbitration by the Beijing Arbitration Commission.

(First Kang Decl. Ex. 2 art. 13.)

16. Article 11 of the Guarantee contained a nearly identical arbitration provision:

> Any dispute arising from or in connection with this [Guarantee] shall be settled through negotiation by the parties hereto, failing which, shall be submitted to Beijing Arbitration Commission for arbitration in accordance with the prevailing rules of arbitration of such commission. The arbitration award shall be final, binding upon each party.

(First Kang Decl. Ex. 3 art. 11.3.)

17. When LeTV failed to make the payment due on June 15, 2017, SLC referred the matter to arbitration before the Beijing Arbitration Commission, consistent with the arbitration clauses in both the Loan Contract and the Guarantee. On June 28, 2017, the Beijing Arbitration Commission accepted SLC's request for arbitration against Jia and the other two Arbitration Respondents.

18. The Tribunal was duly appointed by the Director of the Beijing Arbitration Commission in accordance with the Commission's rules. (First Kang

Decl. Ex. 1 at 1.)  Mr. Wu Shengchun, a senior economist specializing in guaranty law, loan contracts, and international finance, was appointed as chief arbitrator. (First Kang Decl. ¶ 8.)  He was joined on the Tribunal by Ms. Kang Le, an arbitrator specializing in investment and financing disputes, and Mr. Han Xu, who specializes in finance, loan contracts, and the law of corporations.  (*Id*. ¶ 8.)  The Arbitration was conducted in Beijing under the Beijing Arbitration Commission rules.  (First Kang Decl. Ex. 1 at 1.)

19. The Tribunal scheduled its first hearing for October 27, 2017.  (*Id*.)  Despite receiving the Commission's written notice advising him of the hearing, Jia (along with the other two Arbitration Respondents) failed to appear.  (*Id*.)  But despite his absence, Jia was able to present his case to the Tribunal: the Tribunal set a second hearing for December 1, 2017, at which Jia appeared and was represented by counsel.  Jia's counsel produced evidence and made oral arguments on his behalf.  (*Id*.)

20. On January 22, 2018, after hearing all parties' oral presentations, examining the evidence, and engaging in panel discussions, the Tribunal issued the 16-page Final Award.  (*Id*. at 1–2.)  The Tribunal unanimously found that LeTV defaulted on its obligations under the Loan Contract by failing to repay both the principal and any interest accrued after March 15, 2017.  (*Id*. at 15–16.)  The Tribunal also found LeTV liable for post-default interest at an annual rate of 16.5 percent—less than the post-default rate provided by the Loan Contract—to be calculated from December 2, 2017, and for SLC's and the Tribunal's costs and expenses, calculated at ¥1,446,575.34 and ¥319,740, respectively.  (*Id*. at 16–18.)

21. In addition, the Tribunal concluded that the Guarantee rendered Jia and TV Plus jointly and severally liable for the amounts awarded against LeTV. (*Id*. at 19–20.)  The Tribunal summarized the Guarantee's legal effect: "When [LeTV] has not performed or has not fully performed [its] debts under the Loan Contract, [SLC] has the right to directly request [TV Plus] and [Jia] to assume the

liability of providing guarantee." (*Id*. at 19.) The Tribunal further explained that the Guarantee covered not only liabilities for LeTV's "failure . . . to pay the principal, interest, penalty interest . . . as well as other amounts . . . on time and in full in accordance with the Loan Contract," but also extended to "all the expenses paid by [SLC] for realization of [its] rights and interests, including but not limited to legal fees, litigation fees, travel expenses, etc." (*Id*.)

22. In reaching this conclusion, the Tribunal rejected two arguments Jia raised in an attempt to avoid liability under the Guarantee. First, contrary to Jia's argument that conditions precedent to his obligation under the Guarantee remained unsatisfied, the Tribunal concluded that "once the Loan Contract expires and [LeTV] has failed to perform . . . the conditions for [TV Plus] and [Jia] to be held liable for providing guarantee have been met." (*Id*. at 20.) Jia also contended that the Guarantee provisions imposing joint and several liability upon him personally were invalid under Chinese law. (*Id*.) The Tribunal dismissed this argument as "without factual and legal basis." (*Id*.)

23. The Tribunal therefore ordered Jia and the other Arbitration Respondents to compensate SLC for:

    a. ¥50 million, representing the principal disbursed to LeTV under the Loan Contract;

    b. principal interest at an annual rate of 7.5 percent to be calculated from March 15, 2017;

    c. post-default interest at an annual rate of 16.5 percent to be calculated from December 2, 2017;

    d. ¥507,028, representing SLC's arbitration costs; and

    e. ¥319,740, representing arbitration expenses disbursed by SLC to the Beijing Arbitration Commission.

(*Id*. at 21–22.)

24. The Tribunal ordered the Arbitration Respondents to pay these amounts "in full within 10 days from the date of service of this Award." Otherwise, the Arbitration Respondents must pay 200% of the payable interest (i.e., 48 percent per annum) according to the Civil Procedure Law of the People's Republic of China. (*Id*. at 22.) To date, neither Jia nor either of the other Arbitration Respondents has paid SLC any part of what it is owed under the Final Award. (First Kang Decl. ¶ 10.)

25. As of December 10, 2018, interest has accrued on the Final Award in the amount of $3,650,246.89 and interest continues to accrue at a rate of $9,557.18 per day. (First Kang Decl. ¶ 10.)

26. Jia has not applied to set aside the Final Award in the People's Republic of China, and his time for doing so expired several months ago. (First Kang Decl. ¶ 11.)

## BASIS FOR CONFIRMATION OF THE FINAL AWARD

27. The Final Award is a well-reasoned award, issued by respected jurists in a proceeding in which all parties bound by the Final Award actively participated. There is no reason why the Final Award should not be confirmed.

28. Under the New York Convention, as incorporated into United States law through the Federal Arbitration Act, an arbitral award must be confirmed unless one of a limited number of grounds for refusal or deferral applies: "Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207.

29. The party opposing confirmation has the burden of showing that such a ground applies. *See Polimaster Ltd. v. RAE Systems, Inc.*, 623 F.3d 832, 836 (9th

Cir. 2010) ("As the party seeking to avoid enforcement of the award, [the respondent] has the burden of showing the existence of a New York Convention defense. [That] burden is substantial because the public policy in favor of international arbitration is strong, and the New York Convention defenses are interpreted narrowly." (internal citations omitted)). Jia cannot meet that burden here.

30. The grounds on which a court can refuse or defer confirmation are:
- the lack of a valid arbitration agreement between the parties;
- that the award resolves a dispute outside the scope of the parties' arbitration agreement;
- that the award resolves a dispute that, under the laws of the country where confirmation is sought, cannot be resolved through arbitration;
- that the award debtor had no notice of the arbitration proceedings or was unable to meaningfully participate;
- that the tribunal was composed and/or the arbitration used procedures inconsistent with the parties' arbitration agreement;
- that the award is not yet binding or has been set aside by a competent authority of the country in which, or under the law of which, the award was made; or
- that confirming the award would contravene the public policy of the country where confirmation is sought.

*See* New York Convention art. V.

31. As explained further in the accompanying Memorandum, none of these grounds applies here. The plain language of Article 13 of the Loan Contract and Article 11 of the Guarantee makes clear that SLC, Jia, and the other Arbitration Respondents agreed that certain disputes could be resolved by arbitration. (First Kang Decl. Ex. 2 art. 13(II); Ex. 3 art. 11.3.) The Arbitration

concerned precisely such a dispute, one "arising from the performance of the" Loan Contract—and, by extension, "arising from or in connection with" the Guarantee, which made Jia liable for LeTV's failure to perform under the Loan Contract. (*Id.*) Nothing in the laws of the United States prohibits resolving this type of dispute through arbitration; to the contrary, the United States has long favored arbitration for the resolution of international commercial disputes. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (endorsing "emphatic federal policy in favor of arbitral dispute resolution," which "applies with special force in the field of international commerce"). Jia had notice of the Arbitration and actively participated in it, presenting his case, with the assistance of counsel, through evidence and argument submitted to the Tribunal. The Tribunal was composed by and followed the procedures of the Beijing Arbitration Commission, as contemplated by the parties' agreements to arbitrate. The Final Award is binding on the parties and has not been set aside in the People's Republic of China—the seat of the arbitration—or, as far as SLC is aware, in any other jurisdiction. Finally, confirming the Final Award would offend no public policy of the United States.

32. Accordingly, the New York Convention requires confirmation of the Final Award.

## COUNT I

### (CONFIRMATION OF FINAL AWARD UNDER 9 U.S.C. § 207)

33. SLC incorporates each and every allegation in the preceding paragraphs as if set forth fully herein.

34. The United States is a contracting party to the New York Convention, as is the People's Republic of China.

35. The Final Award is governed by the New York Convention (made applicable in this proceeding by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 et seq.) because the Final Award arises out of a commercial contract between

SLC and Jia, neither of whom are citizens of the United States. *See* 9 U.S.C. § 202.

36. Article IV of the New York Convention provides that a party applying for confirmation of an award "shall, at the time of the application, supply: (a) [t]he duly authenticated original award or a duly certified copy thereof; [and] (b) [t]he original agreement [to arbitrate] or a duly certified copy thereof." A duly authenticated copy of the Final Award is attached as Exhibit 1 to the First Kang Declaration, and a duly authenticated copy of the Loan Contract (which sets forth the parties' agreement to arbitrate in Article 13) is attached as Exhibit 2 to the First Kang Declaration.

37. The Final Award arose out of a legal relationship that is commercial within the meaning of 9 U.S.C. § 202.

38. Under the Guarantee, the Final Award is "final [and] binding upon each party." (First Kang Decl. Ex. 3 art. 11.3.) Article 50 of the Beijing Arbitration Commission Rules likewise provides that the Final Award is "legally binding from the date on which it [was] made," and Jia was required to "perform the award in accordance with the time limit for performance specified in the award"; in this case, "within 10 days from the date of service of [the] Award." (First Kang Decl. Ex. 1 at 21.)

39. Neither Jia nor the other Arbitration Respondents has paid SLC the amounts it is owed under the Final Award. Article 50 of the Beijing Arbitration Commission Rules authorizes judicial relief under these circumstances: "Where any party fails to perform the award, the other party may apply to the competent court for enforcement."

40. 9 U.S.C. § 207 provides that, in an action to confirm an award governed by the New York Convention, the "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207 (emphasis added).

The party resisting confirmation has the burden of proving that one of the Convention's limited, enumerated grounds for refusing or deferring recognition applies. *Ministry of Def. of Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir. 1992). That burden is a heavy one, for judicial review of an arbitration award under the New York Convention "is quite circumscribed"; "the district court has little discretion" in view of Congress's command that "'[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention.'" *Id*. (quoting 9 U.S.C. § 207) (emphasis in original).

41. As explained in the accompanying Memorandum, none of the New York Convention's enumerated grounds for refusing or deferring recognition apply to the Final Award.

42. Under 9 U.S.C. § 207 and Article III of the New York Convention, SLC is entitled to an order confirming the Final Award. Petitioners respectfully request that the Court confirm the Final Award by entering judgment in favor of SLC and against Jia in the amount of the Final Award, with interest as provided therein, plus the costs of this proceeding.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner Shanghai Lan Cai Asset Management Co, Ltd. respectfully requests:

    a. an order of this Court, under 9 U.S.C. § 207 and Article III of the New York Convention, confirming the Final Award and entering judgment thereon;

    b. a judgment in favor of SLC and against Jia that conforms to the Final Award, including (1) ¥50 million plus interest at an annual rate of 7.5 percent to be calculated from March 15, 2017, combined with post-default interest at an annual rate of

16.5 percent to be calculated from December 2, 2017, and doubled (for a total annual rate of 48 percent), under the Civil Procedure Law of the People's Republic of China, from December 12, 2017; (2) ¥507,028 for costs incurred by SLC during the Arbitration; and (3) ¥319,740 for arbitration expenses disbursed by SLC to the Beijing Arbitration Commission;

  c. an award of post-judgment compound interest under 28 U.S.C. § 1961;

  d. an award of costs incurred by SLC in bringing this proceeding, including reasonable attorneys' fees;

  e. an order of this Court retaining jurisdiction over the matter for any further proceedings as may be necessary to enforce the Final Award and any further awards or judgments which may be obtained by SLC against Jia; and

  f. any other relief that this Court, in the interests of justice, deems necessary and proper.

Dated: December 10, 2018   WALKER STEVENS CANNOM LLP

          By: *Bethany Stevens*
             Bethany Stevens

          *Attorneys for Petitioner*
          *Shanghai Lan Cai Asset*
          *Management Co, Ltd.*