Bethany Stevens (SBN 245672)
bstevens@wscllp.com
Amanda Walker (SBN 252380)
awalker@wscllp.com
WALKER STEVENS CANNOM LLP
500 Molino Street, Suite 118
Los Angeles, California 90013
Telephone: (213) 712-9145
Fax: (213) 403-4906

Michael Ng (SBN 237915)
michael.ng@kobrekim.com
Daniel Zaheer (SBN 237118)
daniel.zaheer@kobrekim.com
KOBRE & KIM LLP
150 California Street, 19th Floor
San Francisco, California 94111
Telephone: (415) 582-4800

Christopher Cogburn*
*pro hac vice to be filed
christopher.cogburn@kobrekim.com
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 488-1200

Attorneys for Petitioner
Shanghai Lan Cai Asset
Management Co, Ltd.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **SHANGHAI LAN CAI ASSET MANAGEMENT CO, LTD.**, <br><br> Petitioner, <br><br> v. <br><br> **JIA YUETING**, <br><br> Respondent. | Civil Case No. 2:18-cv-10255 <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD** |

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................ 1

**BACKGROUND** ........................................................................................................ 2

    A. SLC and LeTV enter into the Loan Contract, and Jia and TV Plus guarantee SLC's loan. ......................................................................................... 2

    B. LeTV defaults on its repayment obligations under the Loan Contract, and SLC commences the Arbitration. ................................................................. 3

    C. The Tribunal unanimously finds the Arbitration Respondents jointly and severally liable for SLC's damages. ............................................................... 4

    D. The Arbitration Respondents refuse to pay the Final Award. ......................... 6

**ARGUMENT** ............................................................................................................... 6

    A. SLC and Jia entered into a valid arbitration agreement. .................................. 9

    B. The dispute resolved by the Final Award was squarely within the scope of the parties' agreement to arbitrate. ................................................................. 10

    C. United States law permits—indeed, strongly favors—arbitration for the resolution of international commercial disputes. ................................................ 10

    D. Respondents had notice of the Arbitration and were able to—and did—present their case. ........................................................................................... 11

    E. The composition of the Tribunal and the procedures used in the Arbitration were consistent with the parties' agreement to arbitrate. ................................ 11

    F. The Final Award is binding and has not been set aside at the seat of arbitration. ....................................................................................................... 12

    G. Confirmation of the award is consistent with the public policy of the United States. ................................................................................................................ 13

**CONCLUSION** .......................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Agility Pub. Warehousing Co. K.S.C., Prof'l Contract Adm'rs, Inc. v. Supreme Foodservice GmbH*,
  495 F. App'x 149 (2d Cir. 2012) .................................................................. 14

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  244 F. Supp. 3d 100 (D.D.C. 2017) ............................................................... 9

*Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
  364 F.3d 274 (5th Cir. 2004) ........................................................................ 9

*Ministry of Def. and Support for Armed Forces of Islamic Republic of Iran v. Cubic Def. Sys., Inc.*,
  665 F.3d 1091 (9th Cir. 2011) ................................................................. 9, 14

*Ministry of Def. of Islamic Republic of Iran v. Gould, Inc.*,
  969 F.2d 764 (9th Cir. 1992) ........................................................................ 8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ............................................................................... 11, 14

*Parsons & Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier*,
  508 F.2d 969 (2d Cir. 1974) ......................................................................... 9

*Polimaster Ltd. v. RAE Systems, Inc.*,
  623 F.3d 832 (9th Cir. 2010) ........................................................................ 8

*Seung Woo Lee v. Imaging3, Inc.*,
  283 F. App'x 490 (9th Cir. 2008) ................................................................ 7

*United Steelworkers of Am., AFL-CIO-CLC v. Smoke-Craft, Inc.*,
  652 F.2d 1356 (9th Cir. 1981) .................................................................... 13

**Statutes**

9 U.S.C. § 201 ............................................................................................. 2, 6, 7

9 U.S.C. § 202 .................................................................................................... 7

9 U.S.C. § 207 .................................................................................................... 7

# PRELIMINARY STATEMENT

This is an action to confirm a final, binding arbitration award (the "Final Award"). A tribunal of three respected jurists (the "Tribunal") issued the Final Award in the People's Republic of China on January 22, 2018, after an arbitration proceeding (the "Arbitration") between Petitioner Shanghai Lan Cai Asset Management Co, Ltd. ("SLC"), Respondent Jia Yueting, and two companies in which Jia had a substantial ownership interest: LeTV Sports Culture Develop (Beijing) Co., Limited ("LeTV") and TV Plus Holdings (Beijing) Limited ("TV Plus" and, together with Jia and LeTV, the "Arbitration Respondents"). The Final Award arises out of a dispute between SLC and the Arbitration Respondents over the Arbitration Respondents' failure to satisfy their obligations under two related agreements. Under the first of those agreements (the "Loan Contract"), SLC extended a ¥50 million loan to LeTV for a term of 12 months. The second agreement (the "Guarantee") made Jia and TV Plus jointly and severally liable for any default by LeTV. When LeTV stopped making its required interest payments, SLC initiated the Arbitration against all three Arbitration Respondents, consistent with the terms of arbitration clauses in both the Loan Contract and the Guarantee. Notwithstanding SLC's attempts to hold LeTV and its guarantors to their bargain, LeTV continued to default on its interest payments even as the Arbitration was underway. Eventually, LeTV failed to repay the loan principal at the end of the 12-month term, and neither Jia nor TV Plus stepped in to make SLC whole as the Guarantee requires. After arbitration proceedings spanning several months—including a hearing at which Jia, represented by counsel, presented evidence and argument—the Tribunal unanimously found all three Arbitration Respondents jointly and severally liable for SLC's damages caused by LeTV's default.

SLC is entitled to collect what it is owed. SLC therefore respectfully requests that this Court confirm the Final Award and incorporate its terms into a

1

United States judgment in its favor. Petitions to confirm international arbitral awards are governed by Chapter 2 of the Federal Arbitration Act (9 U.S.C. § 201 *et seq.*), which incorporates the treaty obligations of the United States under the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). *See* 9 U.S.C. § 201. The New York Convention requires courts in contracting countries to confirm awards falling under the Convention unless one of several limited, enumerated grounds applies. Because none of these grounds for deferring or denying confirmation applies to the Final Award, the Court must confirm it.

## BACKGROUND

**A. SLC and LeTV enter into the Loan Contract, and Jia and TV Plus guarantee SLC's loan.**

SLC and LeTV entered into the Loan Contract on December 1, 2016. The Loan Contract was designed to give LeTV—an online video service in which Jia holds a substantial ownership interest—¥50 million to "supplement" its "working capital in its day-to-day operations" while allowing SLC, in its capacity as agent for investor-users of the internet-based financing platform Lancai.cn, to earn interest during the 12-month term of the loan. (First Kang Decl. Ex. 2 art. 1–2(II).) LeTV was to repay the ¥50 million principal in a single lump-sum payment at the conclusion of the 12-month term (on December 2, 2017), while settling outstanding interest on each of five dates (the "Interest Settlement Dates"): December 15, 2016, March 15, 2017, June 15, 2017, and September 15, 2017. (*Id.* art. 3(II), (IV).) The Loan Contract provided for an annual interest rate of 7.5 percent. (*Id.* art. 3(III).) In the event of a default by LeTV, an additional "0.05 percent per day" would accrue under the Loan Contract until the default was cured. (*Id.* art. 3(VII).) And, under the Guarantee, Jia and TV Plus would be jointly and severally liable to SLC. (First Kang Decl. Ex. 3 at 1.)

Both the Loan Contract and the Guarantee contained clauses calling for arbitration in the event of a dispute. Article 13 of the Loan Contract provided:

(I) The Contract shall be governed by the laws of the People's Republic of China.

(II) Any dispute arising from the performance of the [Loan] Contract may be resolved through consultation, failing which either Party may bring such dispute for arbitration by the Beijing Arbitration Commission.

(First Kang Decl. Ex. 2 art. 13.) Similarly, the Guarantee provided:

Any dispute arising from or in connection with this [Guarantee] shall be settled through negotiation by the parties hereto, failing which, shall be submitted to Beijing Arbitration Commission for arbitration in accordance with the prevailing rules of arbitration of such commission. The arbitration award shall be final, binding upon each party.

(First Kang Decl. Ex. 3 art. 11.3.)

### B. LeTV defaults on its repayment obligations under the Loan Contract, and SLC commences the Arbitration.

LeTV made the interest payments required on the first two Interest Settlement Dates. To this day—more than one year after the date on which LeTV was required to repay the loan principal and all remaining interest—neither LeTV nor its guarantors, Jia and TV Plus, have made any additional payments to SLC. When LeTV failed to make the payment due on June 15, 2017, SLC referred the matter to arbitration before the Beijing Arbitration Commission, consistent with the arbitration clauses in both the Loan Contract and the Guarantee. On June 28, 2017, the Beijing Arbitration Commission accepted SLC's request for arbitration against Jia and the other two Arbitration Respondents.

In accordance with the Beijing Arbitration Commission's arbitration rules, the Director of the Commission appointed the three-person Tribunal. Mr. Wu

3

Shengchun, a senior economist specializing in guaranty law, loan contracts, and international finance, was appointed as chief arbitrator. (First Kang Decl. ¶ 8.) He was joined on the Tribunal by Ms. Kang Le, an arbitrator specializing in investment and financing disputes, and Mr. Han Xu, who specializes in finance, loan contracts, and the law of corporations. (*Id.*) The Arbitration was conducted in Beijing under the Beijing Arbitration Commission rules. (First Kang Decl. Ex. 1 at 1.)

The Tribunal scheduled its first hearing for October 27, 2017. (*Id.*) Despite receiving the Commission's written notice advising him of the hearing, Jia (along with the other two Arbitration Respondents) failed to appear. (*Id.*) But despite his absence, Jia was able to present his case to the Tribunal: the Tribunal set a second hearing for December 1, 2017, at which Jia appeared and was represented by counsel. Jia's counsel produced evidence and made oral arguments on his behalf. (*Id.*)

**C. The Tribunal unanimously finds the Arbitration Respondents jointly and severally liable for SLC's damages.**

On January 22, 2018, after hearing all parties' oral presentations, examining the evidence, and engaging in panel discussions, the Tribunal issued the 16-page Final Award. (*Id.* at 1–2.) The Tribunal unanimously found that LeTV defaulted on its obligations under the Loan Contract by failing to repay both the principal and any interest accrued after March 15, 2017. (*Id.* at 15–16.) The Tribunal also found LeTV liable for post-default interest at an annual rate of 16.5 percent—less than the post-default rate provided by the Loan Contract—to be calculated from December 2, 2017, and for SLC's and the Tribunal's costs and expenses, calculated at ¥1,446,575.34 and ¥319,740, respectively. (*Id.* at 18, 21.)

In addition, the Tribunal concluded that the Guarantee rendered Jia and TV Plus jointly and severally liable for the amounts awarded against LeTV. (*Id.* at 19–20.) The Tribunal summarized the Guarantee's legal effect: "When [LeTV] has

not performed or has not fully performed [its] debts under the Loan Contract, [SLC] has the right to directly request [TV Plus] and [Jia] to assume the liability of providing guarantee." (*Id.* at 19.)  The Tribunal further explained that the Guarantee covered not only liabilities for LeTV's "failure . . . to pay the principal, interest, penalty interest . . . as well as other amounts . . . on time and in full in accordance with the Loan Contract," but also extended to "all the expenses paid by [SLC] for realization of [its] rights and interests, including but not limited to legal fees, litigation fees, travel expenses, etc." (*Id.*)

In reaching this conclusion, the Tribunal rejected two arguments Jia raised in an attempt to avoid liability under the Guarantee.  First, contrary to Jia's argument that conditions precedent to his obligation under the Guarantee remained unsatisfied, the Tribunal concluded that "once the Loan Contract expires and [LeTV] has failed to perform . . . the conditions for [TV Plus] and [Jia] to be held liable for providing guarantee have been met." (*Id.*)  Jia also contended that the Guarantee provisions imposing joint and several liability upon him personally were invalid under Chinese law.  (*Id.* at 19–20.)  The Tribunal dismissed this argument as "without factual and legal basis." (*Id.* 20.)

The Tribunal therefore ordered Jia and the other Arbitration Respondents to compensate SLC for:

- ¥50 million, representing the principal disbursed to LeTV under the Loan Contract;
- principal interest at an annual rate of 7.5 percent to be calculated from March 15, 2017;
- post-default interest at an annual rate of 16.5 percent to be calculated from December 2, 2017;
- ¥507,028, representing SLC's arbitration costs; and
- ¥319,740, representing arbitration expenses disbursed by SLC to the Beijing Arbitration Commission.

(*Id.* at 20–21.)

The Tribunal ordered the Arbitration Respondents to pay these amounts "in full within 10 days from the date of service of this Award." The Arbitration Respondents' failure to make a full payment within these 10 days renders them liable for 200 percent of the payable interest (i.e., 48 percent annually) according to the Civil Procedure Law of the People's Republic of China. (*Id.* at 21.)

**D. The Arbitration Respondents refuse to pay the Final Award.**

Nearly a year after it was issued, the Final Award remains outstanding. Jia has not moved to set aside the Final Award in the People's Republic of China—or anywhere else, for that matter—and his time for doing so has long since expired: Chinese law requires that any application to set aside an arbitration award be brought within six months of the service of the award upon the respondent seeking to challenge it. (First Kang Decl. ¶ 11.) Yet Jia and the other Arbitration Respondents have paid SLC nothing, nor have they foreshadowed any upcoming change in their recalcitrant posture toward these obligations. The Arbitration Respondents have therefore left SLC with no other choice than to enforce the Final Award through judicial means.

## ARGUMENT

**I. The New York Convention and United States law require confirmation of the Final Award.**

The Federal Arbitration Act (the "FAA") governs the enforcement of international arbitral awards. Chapter 2 of the FAA (9 U.S.C. § 201 *et seq.*) incorporates the treaty obligations of the United States under the New York Convention, making the rules and procedures set forth in the Convention applicable in confirmation proceedings brought in the courts of the United States. *See* 9 U.S.C. § 201. And the Final Award is governed by the New York Convention because it arose out of commercial contracts—the Loan Contract and the Guarantee—between SLC (a Chinese corporation), Jia (a Chinese citizen living

in California), and two other Chinese entities.  *See* 9 U.S.C. § 202 (providing that an "arbitral award arising out of a legal relationship . . . which is considered as commercial . . . falls under the Convention" unless the relationship was "entirely between citizens of the United States").

The New York Convention requires a court in a contracting country to confirm an award subject to the Convention unless the court finds that one of seven specific grounds for deferring or refusing confirmation applies.  *See* 9 U.S.C. § 207 ("The court ***shall*** confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." (emphasis added)).  As the Ninth Circuit has explained, "[f]ederal law permits a party who was victorious in a recognized foreign arbitration proceeding to seek confirmation of the award in the United States under the New York Convention, and the statute gives the courts little discretion when considering such petitions." *Seung Woo Lee v. Imaging3, Inc.*, 283 F. App'x 490, 492 (9th Cir. 2008).  This is because "[t]he grounds for the court's refusal or deferral of recognition or enforcement of an arbitration award are limited to the seven grounds" identified by the New York Convention.  *Id.*

These limited, enumerated grounds for deferring or refusing confirmation are set forth in Article V of the Convention.  In summary, they permit courts to deny confirmation only where:

- the parties' arbitration agreement is invalid;
- the award resolves a type of dispute that the parties did not agree to arbitrate;
- the award resolves a type of dispute that, under the laws of the country where confirmation is sought, cannot be resolved through arbitration;
- the award debtor had no notice of the arbitration proceedings or was unable to meaningfully participate;
- the arbitration used procedures (including for the composition of the

7
MEMORANDUM IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD

- tribunal) that are inconsistent with the parties' arbitration agreement;
- the award is not yet binding on the parties or has been set aside by a competent authority of the country in which, or under the law of which, the award was made; or
- confirming the award would contravene the public policy of the country where confirmation is sought.

*See* New York Convention art. V.

      The party opposing confirmation of an arbitration award has the burden of proving that one of the Convention's limited, enumerated grounds for refusing or deferring recognition applies. *Ministry of Def. of Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir. 1992). This "burden is substantial because the public policy in favor of international arbitration is strong, and the New York Convention defenses are interpreted narrowly." *Polimaster Ltd. v. RAE Systems, Inc.*, 623 F.3d 832, 836 (9th Cir. 2010) (internal citations omitted). This Circuit is not alone in consistently cautioning that these grounds for deferring or denying confirmation are to be construed narrowly. *See, e.g.*, *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier*, 508 F.2d 969, 976 (2d Cir. 1974) (holding "defense[s] to enforcement of a foreign award . . . should be construed narrowly" to "comport with the enforcement-facilitating thrust of the Convention"); *Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2004) ("Defenses to enforcement under the New York Convention are construed narrowly, 'to encourage the recognition and enforcement of commercial arbitration agreements in international contracts . . .'"); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 244 F. Supp. 3d 100, 110 (D.D.C. 2017) (characterizing "scope of its review" under New York Convention as "narrow").

      Because awards governed by the New York Convention must be confirmed unless one of these narrow grounds applies, "[c]onfirmation is a summary

8

MEMORANDUM IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD

proceeding that converts a final arbitration award into a judgment of the court"; the FAA does not contemplate a plenary action initiated by a complaint but rather a circumscribed process akin to summary judgment. *Ministry of Def. and Support for Armed Forces of Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1094 n.1 (9th Cir. 2011); *accord* 3 Fed. Proc., L. Ed. § 4:140 (2018) ("Thus, an arbitration award under the Convention may be enforced by filing a petition or application for an order confirming the award supported by an affidavit. The hearing on such a petition or application will take the form of a summary procedure in the nature of federal motion practice.").

As explained below, Jia cannot satisfy his burden of proving that any of these grounds applies. The Court must therefore confirm the Final Award.

**A. SLC and Jia entered into a valid arbitration agreement.**

Under the New York Convention, one of the limited grounds for deferring or denying confirmation of an award is that "the parties to [an agreement to arbitrate] were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made." New York Convention art. V(1)(a). Jia cannot seriously claim that this ground applies here.

The plain language of Article 11 of the Guarantee is clear: it permits either party to submit "[a]ny dispute arising from or in connection with" the Guarantee for arbitration before the Beijing Arbitration Commission "in accordance with the prevailing rules of arbitration of such commission." (First Kang Decl. Ex. 3 art. 11.3.) SLC exercised this option, consistent with the terms of the Loan Contract and the Guarantee, by submitting a request for arbitration to the Beijing Arbitration Commission, which the Commission accepted on June 28, 2017. (First Kang Decl. ¶ 7.)

### B. The dispute resolved by the Final Award was squarely within the scope of the parties' agreement to arbitrate.

Under the New York Convention, confirmation of an award may be deferred or refused where "the award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced."  New York Convention art. V(1)(c).  There is no basis for Jia to assert this ground, either.

At no point in the Arbitration did Jia contend that the parties' dispute fell outside the scope of their arbitration agreement, and with good reason.  Article 13 of the Guarantee provides for arbitration of "[a]ny dispute arising from or in connection with" the Guarantee, which rendered Jia jointly and severally liable for any default by LeTV on its obligations under the Loan Contract.  (First Kang Decl. Ex. 3 art. 11.3.)  It is beyond dispute that the Final Award is within the scope of this broad language; the Final Award holds Jia and the other Arbitration Respondents liable for LeTV's breach of its obligations under the Loan Contract and compensates SLC for damages caused by those breaches.  (First Kang Decl. Ex. 1 at 13–20.)

### C. United States law permits—indeed, strongly favors—arbitration for the resolution of international commercial disputes.

The New York Convention permits courts "in the country where recognition and enforcement is sought" to defer or refuse confirmation of an award where "[t]he subject matter of the difference [i.e., the dispute submitted to arbitration] is not capable of settlement by arbitration under the law of that country."  New York Convention art. V(2)(a).

But the courts of this country have long favored arbitration for the resolution

of disputes arising out of commercial contracts like the Loan Contract and the Guarantee. The Supreme Court has recognized an "emphatic federal policy in favor of arbitral dispute resolution," one which "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). Confirmation of the Final Award is entirely consistent with this policy.

### D. Respondents had notice of the Arbitration and were able to—and did—present their case.

Under the New York Convention, confirmation of an award can be deferred or denied if "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present [its] case." New York Convention art. V(1)(b). This ground plainly does not apply to this case.

The Beijing Arbitration Commission gave the Arbitration Respondents, including Jia, proper notice of the Arbitration, and—despite their failure to appear at the first hearing scheduled by the Tribunal—the Arbitration Respondents were fully able to present their case to the Tribunal. Jia was represented by counsel in the Arbitration, and he defended himself with legal and factual arguments, together with supporting evidence, before the Tribunal. (First Kang Decl. Ex. 1 at 1–2.) In view of these facts, there can be no serious argument that Jia lacked notice of the Arbitration or was somehow unable to present his case. To the contrary, Jia and the other Arbitration Respondents made their case, and the Tribunal explained at length why it was unpersuasive. (First Kang Decl. Ex. 1 at 12–20.)

### E. The composition of the Tribunal and the procedures used in the Arbitration were consistent with the parties' agreement to arbitrate.

A court may defer or deny confirmation under the New York Convention if it finds that "[t]he composition of the arbitral authority or the arbitral procedure

was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place." New York Convention art. V(1)(d).  Respondents cannot possibly object on this ground.

The Tribunal was appointed by the Beijing Arbitration Commission in accordance with its rules, to which the parties expressly submitted in their agreement to arbitrate.  (First Kang Decl. Ex. 2 art. 13(II).)  Neither Jia nor either of the other Arbitration Respondents raised any objection during the Arbitration to the Tribunal's composition or the procedures that governed the Arbitration.  Having remained silent then, Jia cannot now cry foul.  As the Ninth Circuit has long recognized, litigants have "an affirmative obligation to present to the arbitrator any arguments why the arbitration should not proceed.  Parties to arbitration cannot sit idle while an arbitration decision is rendered and then, if the decision is adverse, seek to attack the award collaterally on grounds not raised before the arbitrator." *United Steelworkers of Am., AFL-CIO-CLC v. Smoke-Craft, Inc.*, 652 F.2d 1356, 1360 (9th Cir. 1981).

**F. The Final Award is binding and has not been set aside at the seat of arbitration.**

SLC's Petition seeks confirmation of the Final Award, which was issued on January 22, 2018.  (First Kang Decl. Ex. 1 at. 21.)  The Final Award is the culmination of a lengthy arbitration that SLC commenced pursuant to the arbitration clauses in the Loan Contract and the Guarantee.  The arbitration clause in the Guarantee—under which Jia submitted to arbitration—expressly provides that "[t]he arbitration award shall be final [and] binding upon each party."  (First Kang Decl. Ex. 3 art. 11.3.)

Article V of the New York Convention provides that recognition and enforcement of an award may be refused if the party opposing the petition can prove that "[t]he award has not yet become binding on the parties, or has been set

aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." New York Convention art. V(1)(e).  Here, the People's Republic of China is the primary jurisdiction, and only its courts have authority to set aside the Final Award.  Jia has not attempted to set aside the Final Award in the People's Republic of China, and the time for doing so under Chinese law—within six months after the award is served upon the parties—has long since expired.  (First Kang Decl. ¶ 11.)  There is thus no dispute that the Final Award is final and binding upon Jia.

### G. Confirmation of the award is consistent with the public policy of the United States.

Finally, the New York Convention authorizes a court "in the country where recognition and enforcement is sought" to decline to confirm an award if "[t]he recognition or enforcement of the award would be contrary to the public policy of that country."  New York Convention art. V(2)(b).  In this case, confirmation would be consistent with—not contrary to—U.S. public policy, which favors enforcement of commercial arbitration awards.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

Confirming the Final Award would offend no public policy of the United States.  The public policy defense "is frequently invoked but rarely successful, particularly in view of the strong United States policy favoring arbitration." *Agility Pub. Warehousing Co. K.S.C., Prof'l Contract Adm'rs, Inc. v. Supreme Foodservice GmbH*, 495 F. App'x 149, 151 (2d Cir. 2012).  In an action for confirmation under the New York Convention, this exception is to be construed very narrowly, applying "only when confirmation or enforcement of a foreign arbitration award would violate the forum state's most basic notions of morality and justice." *Cubic Def. Sys.*, 665 F.3d at 1097 (internal quotation marks omitted).  The Final Award—a straightforward award of compensatory damages to SLC

13
MEMORANDUM IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD

based on its commercial counterparties' breach of contract—comes nowhere close to this standard.

## CONCLUSION

For the foregoing reasons, the Court should confirm the Final Award and incorporate its terms into a judgment against Jia.

Dated: December 10, 2018                    WALKER STEVENS CANNOM LLP

                                            By:   *Bethany Stevens*
                                                  Bethany Stevens

                                            *Attorneys for Petitioner*
                                            *Shanghai Lan Cai Asset*
                                            *Management Co, Ltd.*