# EXHIBIT 1

# 北 京 仲 裁 委 员 会
# 裁 决 书

（2018）京仲裁字第 0146 号

申　请　人：上海懒财资产管理有限公司
住　　　所：上海市宝山区高逸路 112-118 号 6 幢 1049 室
法定代表人：廖志达　　总经理
委托代理人：孙　菲　　上海懒财资产管理有限公司员工
　　　　　　李　斌　　上海懒财资产管理有限公司员工


被 申 请 人：乐视体育文化产业发展（北京）有限公司
住　　　所：北京市朝阳区姚家园路 105 号 3 号楼 10 层 1103
法定代表人：雷振剑　　总经理
委托代理人：李　原　　该公司员工

被 申 请 人：乐视控股（北京）有限公司
住　　　所：北京市朝阳区姚家园路 105 号 3 号楼 10 层 1102
法定代表人：吴　孟　　经理
委托代理人：邹　义　　北京中书律师事务所律师

被 申 请 人：贾跃亭
身份证号码：14262319731215081X
住　　　址：山西省临汾市尧都区解放西路 31 号
委托代理人：邹　义　　北京中书律师事务所律师

北京仲裁委员会

北京仲裁委员会（以下简称本会）根据申请人上海懒财资产管理有限公司（以下简称申请人）向本会提交的仲裁申请书以及申请人与被申请人乐视体育文化产业发展（北京）有限公司（以下简称第一被申请人）、被申请人乐视控股（北京）有限公司（以下简称第二被申请人）、被申请人贾跃亭（以下简称第三被申请人，第一被申请人、第二被申请人、第三被申请人以下合称被申请人）之间签订的《借款合同》、《回购担保协议》中的仲裁条款以及有关法律的规定，于2017年6月28日受理了申请人与被申请人之间因上述合同所引起的争议仲裁案（以下简称本案）。本案编号为（2017）京仲案字第1504号。

本案适用本会自2015年4月1日起施行的《北京仲裁委员会仲裁规则》（以下简称仲裁规则）。

本会受理本案后，按照仲裁规则的规定向申请人送达了受理通知、仲裁规则、仲裁员名册等文件，并按照仲裁规则的规定向被申请人送达了答辩通知、仲裁申请书、申请人的证据材料、仲裁规则、仲裁员名册等文件。

因双方未按期选定仲裁员，双方亦未按期共同选定首席仲裁员，依据本会仲裁规则，本会主任指定吴胜春先生担任本案首席仲裁员、指定康乐女士、韩旭先生担任本案仲裁员，于2017年9月21日组成仲裁庭，适用普通程序审理本案。本会依据仲裁规则向双方当事人送达了组庭通知和开庭通知。同日，仲裁庭决定于2017年10月27日对本案进行开庭审理。本会按照仲裁规则的规定向双方当事人送达了本案组庭通知和开庭通知，双方均未对仲裁庭组成人员提出异议，亦未提出回避请求。

仲裁庭审阅了当事人提交的全部仲裁材料，于2017年10月27日在北京第一次开庭审理本案，申请人的代理人出席了庭审，被申请人经本会书面通知，无正当理由未到庭，仲裁庭对第一次开庭进行了缺席审理。2017年12月1日，仲裁庭在北京第二次开庭审理本案，申请人和被申请人均委派代理人出席了庭审，申请人陈述了仲裁请求及所依据的事实和理由，被申请人进行了答辩，当事人进行了举证质证，仲裁庭对本案有关的事实进行了调查，并组织当事人进行了辩论，庭审结束前，申请人与被申请人均发表了最后陈述意见。

本案现已审结。仲裁庭根据庭审情况和有关证据材料，经合议，依照相关法律及仲裁规则的规定作出本裁决。

现将本案案情、仲裁庭意见及裁决分述如下：

一　案　　情

（一）申请人的仲裁请求

申请人称，2016 年 12 月 1 日，申请人与第一被申请人签署《借款合同》，约定申请人向第一被申请人出借款项 5000 万元（人民币，下同），年利率为 7.5%，借款本金于借款到期日一次性偿还，利息按季支付；同日，第一被申请人、第二被申请人、第三被申请人共同与申请人签订了《回购担保协议》，第二被申请人、第三被申请人自愿为第一被申请人履行《借款合同》项下的还款义务承担连带保证责任，保证期间为自被担保债务清偿期限届满之日起 2 年。

《借款协议》及《回购担保协议》签订后，申请人即以银行转账方式向第一被申请人指定账户转账支付了 5000 万元借款。

申请人依照各方协议之约定，要求第一被申请人提前清偿本金 5000 万元，清偿所有应付未付利息 945205.48 元，并给付迟延履行利息，并通过多种方式与被申请人谋求解决方案，但被申请人以各种理由予以推诿，上述款项至今未获偿付。

申请人提出如下仲裁请求：

1. 第一被申请人向申请人支付：

（1）借款本金 5000 万元，给付利息 945205.48 元（从 2017 年 3 月 15 日起暂计算至 2017 年 6 月 15 日止，实际应计算至付清全部本息之日）；

（2）实现债权的费用暂定为 1083000 元；

2. 第二被申请人、第三被申请人对上述款项承担连带清偿责任；

3. 由各被申请人共同承担本案仲裁所发生的全部费用。

在第一次庭审过程中，申请人口头提出变更仲裁请求，2017 年 10 月 31 日申请人以书面形式申请变更仲裁请求，仲裁庭接受了申请人的申请。

申请人最终的仲裁请求为：

1. 第一被申请人向申请人支付：

（1）偿还本金 5000 万元，给付利息 1890410.96 元（计算方式：5000×7.5%×184/365。利息计算请求自 2017 年 3 月 15 日至 2017 年 9 月 15 日共计 184 天，实际应计算至被申请人全部付清之日），支付罚息 565 万元（计算方式：50000000×0.05%×226，计算期间暂定为 2017 年 03 月 15 日至 2017 年 10 月 27 日共计 226 天，实际应计算至被申请人全部付清之日）；

（2）给付申请人为实现债权支出的费用，暂定为 507028 元，其中保全保险公司保费 52028 元，法院保全费 5000 元，律师费 45 万元；

2. 第二被申请人、第三被申请人对上述款项承担连带清偿责任；

3. 由被申请人承担本案仲裁所有费用。

（二）第一被申请人答辩意见及事实和理由

2

第一被申请人的代理人在第二次庭审中提交了书面答辩意见，并进行了口头答辩，其主要答辩意见如下：

1.《借款合同》和《回购担保协议》存在《中华人民共同国合同法》第 52 条第 2 项规定的合同无效情形，即申请人与第二被申请人、第三被申请人恶意串通，损害了第一被申请人的利益，《借款合同》和《回购担保协议》无效，申请人无权要求第一被申请人向其支付借款本金、利息及实现债权的费用。具体理由如下：

（1）第一被申请人的公章由第二被申请人保管和使用，《借款合同》中第一被申请人印章的加盖未经第一被申请人审批同意，且第一被申请人对《借款合同》的签署不知情。

（2）《借款合同》项下的资金并未进入第一被申请人的账户。申请人所提供的 5000 万元借款均汇至北京多乐智慧科技有限公司在平安银行开立的账户上，第一被申请人从未指示申请人将款项汇至北京多乐智慧科技有限公司账户，第一被申请人也未从北京多乐智慧科技有限公司收到过任何款项。

（3）申请人对上述情况是知情的。

2.在《借款合同》第四条约定了发放借款的前提条件，只有第一被申请人持续满足发放借款的前提条件，申请人才有义务代理发放借款，其中第六项前提条件是，第一申请人或其指定的代收付资金方己在懒财网合作机构开立资金存款账户。申请人需在借款发放前提条件满足之后一个时间段内，将借款金额发放至第一被申请人在懒财网合作银行开立的资金存款账户。申请人与第二被申请人恶意串通，损害第一被申请人利益，将借款发放至北京多乐智慧科技有限公司的账户上，不符合《借款合同》的约定，《借款合同》应当被认定为无效。

3.第一被申请人公章自第一被申请人成立之日起至 2017 年 10 月 16 日均由徐展春专门管理，徐展春是第二被申请人专门负责印章保管的人员。

（三）第二被申请人答辩意见及事实和理由

第二被申请人的代理人在第二次庭审中进行了口头答辩，并在庭后提交了书面代理意见，其主要答辩意见如下：

1.申请人并非本案的适格当事人，无权作为债权人向被申请人主张债权。

（1）根据《借款合同》的约定，网络投资人与第一被申请人才是《借款合同》项下债权债务关系的双方当事人，申请人没有提供证据证明网络投资人授权其作为代理人向借款人及担保人主张权利，申请人无权以《借款合同》为依据向被申请人主张债权。

（2）即使假设申请人是《借款合同》项下的债权人，因其已将该笔债权转让给韬蕴资本集团有限公司，其不再是本案的适格当事

3

人，无权向被申请人主张《借款合同》项下的债权。

申请人与韬蕴资本集团有限公司于 2017 年 7 月 14 日签订的《债权转让协议》，其已将《借款合同》项下的债权及其附属的一切权利和利益全部转让与韬蕴资本集团有限公司。申请人自《债权转让协议》生效时起即不再是本案的适格当事人，无权向被申请人主张《借款合同》项下的债权。

2.《借款合同》项下债权的还款期限尚未届满，且不存在借款提前到期的情形，申请人要求被申请人提前偿还款项缺乏事实与法律依据，应予驳回。

3. 申请人主张的罚息利率过高，违反中国人民银行的强制性规定，请求仲裁庭予以调整。

申请人与第一被申请人在《借款合同》中约定的罚息率为每日 0.05%，换算为年利率则为 18.25%。

《中国人民银行关于人民币贷款利率有关问题的通知》（银发〔2003〕251 号）第三条明确规定："逾期贷款（借款人未按合同约定日期还款的借款）罚息利率由现行按日万分之二点一计收利息，改为在借款合同载明的贷款利率水平上加收 30%-50%"，申请人与第一被申请人签订的《借款合同》即属于上述情形。根据上述规定，罚息利率只能是在贷款利率水平上加收 30%-50%，申请人与第一被申请人约定的贷款利率为每年 7.5%，加收 30%-50%，应为 9.75%-11.25%。

本案中，申请人与第一被申请人约定的罚息利率高达 18.25%，比法律规定的最高罚息还要高出 60%，属于无效约定，对被申请人不公平，申请仲裁庭对于违反法律强制性规范的罚息利率予以调低。

4. 利息与罚息是两个不同的法律概念，在《借款合同》项下的借款期限内支付的是利息，借款逾期后收取的是罚息，申请人主张被申请人应当自 2017 年 3 月 15 日起既支付利息，又支付罚息，缺乏事实与法律依据，应予驳回。

利息与罚息是两个截然不同的法律概念，法律对其各自的计算期间有着明确的规定。根据《合同法》的规定，债务人在借款期限内应当按照借款合同约定的借款利率向债权人支付利息，若债务人未按照约定的期限返还借款的，债权人才可以自还款期限届满之日起按照约定或者国家有关规定向债务人主张逾期利息，即罚息。

本案中，《借款合同》项下债权的还款期限尚未届满，且不存在借款提前到期的情形。在还款期限内，债权人应当根据《借款合同》第三条第三款的约定，按照年利率 7.5%的标准向债务人计收利息。至 2017 年 12 月 2 日还款期限届满后，若债务人未还清本金，债权人才有资格依法计收罚息。申请人在第一项仲裁请求中主张被申请人既支付自 2017 年 3 月 15 日至 2017 年 9 月 15 日的利息，又支付自 2017

4

年3月15日至2017年10月27日的罚息，无事实与法律依据，无故加重被申请人的负担，依法应予驳回。

5.申请人在仲裁请求中主张的实现债权的费用属于不当加重被申请人的负担，该部分费用不应由被申请人承担。

6.被申请人承担担保责任的条件尚未成就，申请人无权要求第二被申请人承担担保责任。

（1）主合同《借款合同》项下债权的还款期限尚未届满，且不存在借款提前到期的情形，此种状态下，申请人无权要求被申请人承担从合同项下的担保责任。

（2）申请人未按照《回购担保协议》的约定向被申请人发出书面《回购通知书》，被申请人承担担保责任的条件尚未成就。

（四）第三被申请人答辩意见及事实和理由

第三被申请人的代理人在第二次庭审中进行了口头答辩，并在庭后提交了书面代理意见，其提出的答辩意见与第二被申请人的上述答辩意见相同，并补充提出如下答辩意见：

《回购担保协议》中关于第三被申请人以个人身份为第二被申请人的回购义务承担无限连带责任的约定系通过格式条款将公司的有限责任无限化至法定代表人个人身上，应属无效，第三被申请人不应向申请人承担担保责任。

我国《公司法》明确规定，公司以其自有的全部财产对公司的债务承担责任。本案中，第二被申请人与申请人签署了《回购担保协议》，约定其为第一被申请人与申请人直接的借款承担连带保证责任和回购义务，这是公司的有限责任。而申请人将原第二被申请人的法定代表人即第三被申请人列入《回购担保协议》，要求其为第二被申请人的回购义务承担连带责任，此乃通过格式条款将公司的有限责任无限化至法定代表人个人身上。仲裁庭应当对交易主体间事实上的不平等给予适当的平衡，对不合理条款进行规制，以求实质正义。

（五）当事人举证及质证情况

申请人为支持其仲裁请求，向仲裁庭提交了如下证据材料：

证据1，《借款合同》，拟证明申请人和第一被申请人之间的借贷关系，借款金额5000万元，利率7.5%，对于还款时间和提前还款都做了明确约定；

证据2，《回购担保协议》，拟证明第二被申请人和第三被申请人，为申请人与第一被申请人之间的债权债务关系提供连带责任担保；

证据3，转款凭证，拟证明申请人已经向被申请人给付了出借款项，履行了出借义务；

证据4，收款确认书，拟证明的内容同证据3；

5

证据 5，保全费收据，拟证明申请人为实现债权支出了 5000 元保全费用；

证据 6，保险费发票，拟证明申请人为实现债权支付保险公司保费，用以保全被申请人的财产；

证据 7，律师费发票，拟证明为了保全财产，申请人支付律师费，发票金额总计 45 万元；

证据 8，律师代理合同拟证明申请人为本案花费律师费 45 万元；

证据 9，《代收代付协议》，拟证明被申请人已收款 5000 万元，申请人已履行借款发放义务；

证据 10，签约现场照片，第一被申请人明知涉案借款事宜，其 CEO 雷振剑在签约现场；

证据 11，授权委托书，拟证明申请人主张债权参加仲裁获得原债权人同意；

证据 12，债权催收函，拟证明申请人 2017 年 5 月 17 日通知借款提前到期，保证人应承担保证责任。

第一被申请人对申请人提交的证据提出如下质证意见：

对于证据 1 至证据 4，真实性均予以认可，但是对第一被申请人无效；

对于证据 5 至证据 8，真实性均予以认可，不认可保险费、保全费、律师费与本案的关联性。

对于证据 9，真实性认可，不认可证明目的；

对于证据 10，真实性认可，关联性不认可。照片仅仅是照了一下第一被申请人的办公环境，特别是大门，那个地方是没有闸机的，是任何人都可以拍照的；这些照片并不足以和《借款合同》签订形成关联关系，本案没有其他的证据可以证明照片就是在合同签订时拍摄的；在《借款合同》签署页，有第一被申请人公章以及一个名叫"高飞"的人名章，这两个章都不在第一被申请人管理范围内，"高飞"是第一被申请人当时挂名的董事长，他的职位是乐视视频总裁，属于乐视总部的一个人；

对于证据 11 和证据 12，第一被申请人未提出质证意见。

第二被申请人对申请人提交的证据提出如下质证意见：

对于证据 1 至证据 4，真实性均予以认可，不认可证明目的，未能证明谁有资格主张债权及什么时候可以主张债权，申请人不具备主张权利的主体资格，申请人主张提前还款的证据不足，不应当将企业承担的法律责任转嫁由法定代表人承担。

对于证据 5 至证据 8，真实性均予以认可，但实现债权的费用应当由申请人自行承担，《借款合同》的利息本来就比银行的 4.7%的贷款利率高出将近一倍，申请人可以依据合同取得较高的利益，而实

6

现债权的费用是其主张债权应当支出的必要费用，所谓实现债权的费用约定由借款人和担保人承担，加重了借款人和担保人的经济负担，变相地提高了利率的获利标准；

对于证据 9，真实性认可；

对于证据 10，真实性认可，证明目的认可；

对于证据 11 和证据 12，第二被申请人未提出质证意见。

第三被申请人对申请人提交的证据亦提出了质证意见，对于证据 1 至证据 10，第三被申请人的质证意见与第二被申请人的质证意见相同，对于证据 11 和证据 12，第三被申请人未提出质证意见。

第一被申请人提出如下证据：

证据 1，印章交接单，拟证明第一被申请人公章以及合同章，在交接日 2017 年 10 月 16 日之前，由第二被申请人管理。印章移交人也就是交接单上的签署人徐展春，是第二被申请人印章及档案管理部员工；

证据 2，国家企业信用信息公示系统查询结果，拟证明北京多乐智慧科技有限公司的注册资本金仅有 50 万元，北京多乐智慧科技有限公司和第一被申请人之间不存在任何关系，且该公司目前仍然处于持续经营状态；

证据 3，关于懒财网股权变化和投资情况的媒体报道，拟证明第二被申请人在 2016 年 8 月投资懒财网，当时懒财网宣布完成 1.8 亿元的 B 轮融资，该融资由乐视控股（北京）有限公司领投，君联资本跟投。懒财网与第二被申请人和乐视体系之间关系密切，并且懒财对于第二被申请人以及乐视相关公司的关联情况和经营管理情况，应当是知情的；

证据 4，乐视员工信息查询结果，拟证明徐展春（印章交接单签署人）是第二被申请人行政部印章及档案管理部员工；

证据 5，《债权转让协议》，拟证明申请人与韬蕴资本集团有限公司于 2017 年 7 月 14 日在北京市朝阳区签署了《债权转让协议》，约定第一被申请人与申请人签署的《借款合同》债权本金 5000 万元，以 5000 万元整的对价，转让给韬蕴资本集团有限公司，申请人并没有申请仲裁的权利基础。

申请人对第一被申请人提交的证据提出如下质证意见：

对于证据 1，真实性无法确认，证明目的不认可。第一被申请人想要证明其在 2017 年 10 月 16 日之前对印章没有管理权，从而否定这份合同是其真实意思表示，印章的使用和内部审批属于第一被申请人内部的决策行为，不应当对外部第三人发生效力，不应当以自己内部决策瑕疵来否认《借款合同》非其真实意思表示。《借款合同》是到第一被申请人的办公场所签署的，第一被申请人知晓《借款合同》

7

签署的事实；

对于证据 2，真实性认可，证明目的不认可。北京多乐智慧科技有限公司虽然只有 50 万元注册资本，但并不妨碍其代理第一被申请人接受申请人发放的借款 5000 万元，不同意追加北京多乐智慧科技有限公司作为本案的第三人；

对于证据 3，真实性认可，证明目的不认可，懒财网与第二被申请人和乐视体系在 2016 年 8 月有投资和被投资的关系，第一被申请人和第二被申请人是关联公司，如果第一被申请人认为第二被申请人串通损害其利益，那也是他们内部的不当决策所造成的，内部不当决策行为造成的不利后果，不应该由善意的申请人承担；

对于证据 4，真实性无法确认，假定这份证据是真实的，对于证明目的也不认可。第一被申请人和第二被申请人之间应该是有关联关系，第二被申请人对第一被申请人印章的使用，应当是获得了第一被申请人的授权；

对于证据 5，真实性无法确认，证明目的不认可。

第二被申请人对第一被申请人提交的证据提出如下质证意见：

对于证据 1，真实性无法确认，证明目的不认可；

对于证据 2，真实性认可，证明目的不认可；

对于证据 3，不符合电子证据的形式性要件，真实性无法确认；

对于证据 4，对该证据的合法性存疑；

对于证据 5，真实性认可，证明目的的认可。

第三被申请人对第一被申请人提交的证据亦提出了质证意见，其质证意见与第二被申请人的质证意见相同。

第二被申请人提出如下证据：

证据 1，申请人与韬蕴资本集团有限公司于 2017 年 7 月 14 日签署的《债权转让协议》，拟证明即使假设申请人是《借款合同》项下的债权人，其已将《借款合同》项下的债权及其附属的一切权利和利益全部转让与韬蕴资本集团有限公司。申请人自《债权转让协议》生效时起即不再是本案的适格当事人，无权向被申请人主张《借款合同》项下的债权；

证据 2，申请人与第一被申请人及北京懒财信息科技有限公司于 2016 年 12 月 1 日签订的《委托管理及融资合作协议》，拟证明本案的借款行为是真实有效发生的，《借款合同》系列共有 6 份文件，是个完整的证据链条，相关协议均为各方真实意思表示，履行了相应签约及履行手续，不存在第一被申请人所说的申请人与第二被申请人在其不知情的情况下恶意串通的情形；

证据 3，第一被申请人与 LETV SPORTS CULTURE DEVELOP（HONG KONG）Co. Limited 于 2016 年 12 月 1 日签订的《收益权转让协议》，

8

拟证明的内容同证据 2；

证据 4，第一被申请人与 LETV SPORTS CULTURE DEVELOP（HONG KONG）Co. Limited 于 2016 年 12 月 1 日签订的《收益权凭证》，拟证明的内容同证据 2。

申请人对第二被申请人提交的证据提出如下质证意见：

对于证据 1，真实性无法确认，证明目的不认可；

对于证据 2 至证据 4，真实性均予以认可。

第一被申请人对第二被申请人提交的证据提出如下质证意见：

对于证据 1，真实性认可，证明目的认可；

对于证据 2 至证据 4，真实性均予以认可，证明目的不认可。

第三被申请人对第二被申请人提交的证据提出如下质证意见：

对于证据 1，真实性认可，证明目的认可；

对于证据 2 至证据 4，真实性均予以认可。

第三被申请人未向仲裁庭提交证据材料。

## 二　仲裁庭意见

根据本案当事人提交的有效证据并结合庭审情况，仲裁庭现就仲裁庭意见分述如下：

（一）关于《借款合同》和《回购担保协议》的效力

第一被申请人主张，《借款合同》和《回购担保协议》存在《中华人民共和国合同法》第 52 条第 2 项规定的合同无效情形，第一被申请人的公章由第二被申请人保管和使用，《借款合同》中第一被申请人印章的加盖未经第一被申请人审批同意，且第一被申请人对《借款合同》的签署不知情，即申请人与第二被申请人、第三被申请人恶意串通，损害了第一被申请人的利益，《借款合同》和《回购担保协议》无效。

仲裁庭查明，《借款合同》和《回购担保协议》均加盖了第一被申请人的公章，对该公章的真实性，各方当事人均未提异议。《合同法》第 49 条规定，行为人没有代理权、超越代理权或者代理权终止后以被代理人的名义订立合同，相对人有理由相信行为人有代理权的，该代理行为有效。仲裁庭认为，第一被申请人将其公章交由第二被申请人保管和使用，则申请人可合理认为第一被申请人已经授予第二被申请人代理权；即使第一被申请人不认可授予第二被申请人代理权，第二被申请人在《借款合同》和《回购担保协议》加盖第一被申请人公章的行为，亦构成《合同法》第 49 条规定的表见代理，该代理行为有效。仲裁庭认为，本案并无证据证明申请人和第二被申请人恶意串通损害第一被申请人的利益，《借款合同》和《回购担保协议》

9

并不存在《合同法》第 52 条规定的合同无效的情形，《借款合同》和《回购担保协议》是各方当事人真实意思表示，合法有效。

（二）关于申请人是否有权主张《借款合同》项下债权

第一被申请人主张，根据《借款合同》的约定，网络投资人与第一被申请人才是《借款合同》项下债权债务关系的双方当事人，申请人没有提供证据证明网络投资人授权其作为代理人向借款人及担保人主张权利，申请人无权以《借款合同》为依据向被申请人主张债权。

仲裁庭查明，申请人与第一被申请人签订的《借款合同》约定，申请人代理懒财网特定用户向第一被申请人发放借款的金额不超过 5000 万元整，实际借款金额、初始借款金额、初始借款人明细及起始日期以懒财网合作机构的资金存管系统电子交易记录为准（《借款合同》第一条）；申请人应当按照《借款合同》的约定代理发放借款，按照出借人授权、为出借人利益代理出借人集中管理债权并与第一被申请人沟通联络，但乙方并非债权债务关系的一方或担保方（《借款合同》第九条第一款）。仲裁庭认为，《借款合同》上述条款表明，申请人已经向第一被申请人充分披露，申请人是代理懒财网特定用户"发放借款"和"集中管理债权"，如果对合同条款进行文义解释，"集中管理债权"理应包括依法采取法律措施向借款人主张债权收回借款。仲裁庭认为，申请人以自身名义代理懒财网特定用户发放借款并回收借款，符合互联网金融中常见的业务模式，本案中亦无任何证据证明申请人无权代理懒财网特定用户发放借款并回收借款。仲裁庭认为，第一被申请人主张申请人无权以《借款合同》为依据行使债权，既无法律依据，亦无合同依据，仲裁庭对该主张不予支持。

三位被申请人均主张，申请人与韬蕴资本集团有限公司于 2017 年 7 月 14 日签订的《债权转让协议》，其已将《借款合同》项下的债权及其附属的一切权利和利益全部转让与韬蕴资本集团有限公司。申请人自《债权转让协议》生效时起即不再是本案的适格当事人，无权向被申请人主张《借款合同》项下的债权。

仲裁庭查明，第一被申请人、第二被申请人提交的申请人与韬蕴资本集团有限公司于 2017 年 7 月 14 日签订的《债权转让协议》约定，申请人将其在《借款合同》项下的债权转让给韬蕴资本集团有限公司，韬蕴资本集团有限公司同意受让（《债权转让协议》鉴于条款、第一条、第二条第 1 款）；自韬蕴资本集团有限公司支付完转让对价款后，申请人不再享有标的债权及其附属的一切权利和利益，包括但不限于基于标的债权收取利息的权利（《债权转让协议》第二条第 4 款）。仲裁庭特别注意到，《债权转让协议》第二条第 6 款明确约定，申请人同意标的债权转让后，申请人以债权人的身份代韬蕴资本集团有限公司向第一被申请人主张债权。《合同法》第 80 条第 1 款规定，"债

权人转让权利的，应当通知债务人。未经通知，该转让对债务人不发生效力"。仲裁庭认为，第一被申请人、第二被申请人提交的申请人与韬蕴资本集团有限公司签订的《债权转让协议》为复印件，仲裁庭无法核实《债权转让协议》的真实性；假设《债权转让协议》是真实的，则申请人亦有权依据《债权转让协议》第二条第 6 款的约定向第一被申请人主张债权；本案中，并无证据证明申请人向第一被申请人发出债权转让通知，通知第一被申请人仅向受让人韬蕴资本集团有限公司履行债务，因此该转让对第一被申请人不发生效力。仲裁庭认为，三位被申请人主张自《债权转让协议》生效时起申请人无权主张《借款合同》项下的债权，既无法律依据，亦无合同依据，仲裁庭对该主张不予支持。

根据上述分析，仲裁庭认为，申请人有权主张《借款合同》项下债权。

（三）关于借款本金的偿还

申请人请求，第一被申请人向申请人偿还借款本金 5000 万元。

第一被申请人主张，申请人并未将《借款合同》项下 5000 万元借款资金汇入第一被申请人的账户，而是汇入北京多乐智慧科技有限公司在平安银行开立的账户上，第一被申请人从未指示申请人将款项汇至北京多乐智慧科技有限公司账户。申请人将借款发放至北京多乐智慧科技有限公司的账户上，不符合《借款合同》关于发放借款的前提条件的约定。

仲裁庭查明，《借款合同》第四条借款发放的前提条件进行了如下约定："除乙方（申请人，仲裁庭注）全部或部分放弃外，只有甲方（第一被申请人，仲裁庭注）持续满足下列前提条件，乙方才有义务代理发放借款"。仲裁庭认为，依据上述约定，要求第一被申请人满足借款发放的前提条件才发放借款，是申请人的权利，并不构成申请人的义务。

仲裁庭查明，2016 年 12 月 2 日，申请人通过北京懒财信息科技有限公司的账户将 5000 万元款项分 6 笔汇入北京多乐智慧科技有限公司的账户。仲裁庭查明，2016 年 12 月 2 日，第一被申请人与北京多乐智慧科技有限公司共同向申请人出具《收款确认通知书》，确认收到申请人委托北京懒财信息科技有限公司的账户支付的 5000 万元借款。

依据仲裁庭查明的上述事实，仲裁庭认为，申请人已经依据《借款合同》的约定向第一被申请人发放了 5000 万元借款。

仲裁庭查明，《借款合同》第二条约定，借款期限为 12 个月，按照该约定，截至 2017 年 12 月 2 日借款期限届满。仲裁庭认为，依据《借款合同》的约定，借款期限届满后，第一被申请人有义务向申

11

请人归还借款本金和利息。

本案并无任何证据证明，2017年12月2日借款期限届满后，被申请人向申请人归还过任何借款本金。

仲裁庭认为，申请人请求第一被申请人向其偿还借款本金5000万元，符合《借款合同》的约定，仲裁庭对该仲裁请求予以支持。

（四）关于借款利息的仲裁请求

申请人请求，第一被申请人向申请人给付利息1890410.96元（计算方式：5000万×7.5%×184/365。利息计算请求自2017年3月15日至2017年9月15日共计184天，实际应计算至被申请人全部付清之日）。

仲裁庭查明，《借款合同》第三条约定，借款年利率为7.5%，日利率=年利率/365，利息结算日为每年的3月15日、9月15日、12月15日和第一被申请人归还本金之日，若第一被申请人逾期偿还借款，债权人有权加计每日万分之五的罚息，直至该违约行为或情况不存在为止。

在庭审过程中，申请人确认，2017年3月15日之前，第一被申请人应当支付的利息已经给付，2017年3月15日之后第一被申请人未向申请人支付过利息。本案中没有任何证据证明，2017年3月15日之后被申请人向申请人支付过利息。

仲裁庭认为，申请人关于利息的仲裁请求符合《借款合同》的约定，仲裁庭予以支持，即第一被申请人应向申请人支付借款利息，借款利息应以5000万元为基数，按年利率7.5%自2017年3月15日计至本息全部结清之日，暂计至2017年9月15日为1890410.96元（5000万×7.5%×184/365）。

（五）关于罚息的仲裁请求

申请人请求第一被申请人支付罚息565万元（计算方式：50000000×0.05%×226，计算期间暂定为2017年03月15日至2017年10月27日共计226天，实际应计算至被申请人全部付清之日）。

仲裁庭查明，申请人与第一被申请人签署的《借款合同》约定，借款期限为12个月（《借款合同》第二条）；若第一被申请人逾期偿还借款，债权人有权加计每日万分之五的罚息，直至该违约行为或情况不存在为止（《借款合同》第三条）。

仲裁庭查明，2016年12月2日，申请人按照《借款合同》的约定发放了5000万元借款，《借款合同》第二条约定，借款期限为12个月，按照该约定，截至2017年12月2日借款期限届满。

本案无充分证据证明申请人向第一被申请人送达过提前回收贷款的通知，本案亦无充分证据证明申请人有权提前收回贷款，仲裁庭认为，依据《借款合同》的上述约定，2017年12月2日借款期限届

满后，第一被申请人未按时归还借款本息才构成第一被申请人逾期偿还借款，申请人才有权加计罚息。

关于罚息标准，第二被申请人和第三被申请人主张，申请人与第一被申请人在《借款合同》中约定的罚息利率为每日万分之五，换算为年利率则为 18.25%，违反中国人民银行的强制性规定，属于无效约定。《中国人民银行关于人民币贷款利率有关问题的通知》（银发[2003]251 号）第三条明确规定："逾期贷款（借款人未按合同约定日期还款的借款）罚息利率由现行按日万分之二点一计收利息，改为在借款合同载明的贷款利率水平上加收 30%-50%"。根据上述规定，罚息利率只能是在贷款利率水平上加收 30%-50%，申请人与第一被申请人约定的贷款利率为每年 7.5%，加收 30%-50%，应为 9.75%-11.25%。申请人与第一被申请人约定的罚息利率，对被申请人不公平，申请仲裁庭予以调低。第二被申请人和第三被申请人还主张，利息与罚息是两个不同的法律概念，申请人主张被申请人应当自 2017 年 3 月 15 日起既支付利息，又支付罚息，缺乏事实与法律依据。

《合同法》第 207 条规定，"借款人未按照约定的期限返还借款的，应当按照约定或者国家有关规定支付逾期利息"。仲裁庭认为，依据《合同法》的规定，借贷双方有权对逾期罚息进行约定；《中国人民银行关于人民币贷款利率有关问题的通知》（银发[2003]251 号）亦未禁止借贷双方对罚息利率另行约定。

《最高人民法院关于审理民间借贷案件适用法律若干问题的规定》第 29 条规定，"借贷双方对逾期利率有约定的，从其约定，但以不超过年利率 24%为限"；第 30 条规定，"出借人与借款人既约定了逾期利率，又约定了违约金或者其他费用，出借人可以选择主张逾期利息、违约金或者其他费用，也可以一并主张，但总计超过年利率 24%的部分，人民法院不予支持"。参考最高人民法院上述司法解释的规定，仲裁庭认为，借款逾期后，出借人对利息、加计的罚息有权一并主张，但应以不超过年利率 24%为限。本案借款的年利率为 7.5%，逾期加计的罚息按每日万分之五计算折合年利率为 18.25%，两者相加已经超过年利率 24%，仲裁庭认为，罚息利率应调低至年利率 16.5%。

根据以上仲裁庭意见，对于申请人请求第一被申请人向其支付罚息，仲裁庭予以部分支持，仲裁庭认为，第一被申请人应向申请人支付罚息，罚息应以 5000 万元为基数，按年利率 16.5%自 2017 年 12 月 2 日（不含当日）计至本息全部结清之日。

（六）关于实现债权费用

申请人请求第一被申请人向其给付为实现债权支出的费用 507028 元，其中保全保险公司保费 52028 元，法院保全费 5000 元，

律师费 45 万元。

仲裁庭查明，《借款合同》第十四条第（一）款约定，申请人为实现债权而实际发生的一切费用（包括但不限于诉讼费、仲裁费、财产保全费、差旅费、执行费、评估费、拍卖费、公证费、送达费、公告费、律师费等，如有）均由第一被申请人承担。仲裁庭认为，上述约定是申请人与被申请人真实意思表示，不违反法律行政法规的强制性规定，依法有效。仲裁庭查明，申请人为实现债权，支出财产保全费 5000 元、财产保全责任保险费 52028 元、律师费 45 万元，以上费用合计 507028 元。

被申请人主张，申请人在仲裁请求中主张的实现债权的费用属于不当加重被申请人的负担，该部分费用不应由被申请人承担。仲裁庭认为，申请人支出的实现债权的费用是因为被申请人而导致的，被申请人不承担上述费用的主张无合同依据，也无法律依据，仲裁庭不予认可。

仲裁庭认为，申请人关于实现债权费用的仲裁请求，符合《借款合同》上述约定，仲裁庭予以支持，第一被申请人应向申请人支付申请人为实现债权支出的费用 507028 元。

（七）关于第二被申请人、第三被申请人对第一被申请人债务连带清偿责任的仲裁请求

仲裁庭查明，申请人与三位被申请人签订的《回购担保协议》约定：第二被申请人同意并承诺，为第一被申请人与申请人之间的借款承担不可撤销的连带保证责任和回购义务；第三被申请人同意并承诺以个人身份为第二被申请人上述义务承担无限连带责任（《回购担保协议》鉴于条款第 2 项）；在第二被申请人和第三被申请人同意并承诺为第一被申请人提供回购和担保的前提下，申请人同意为第一被申请人提供流动性借款（《回购担保协议》鉴于条款第 3 项）；为确保第一被申请人按申请人与第一被申请人签订的《借款合同》的约定偿还申请人的借款，第二被申请人和第三被申请人同意对第一被申请人于《借款合同》项下义务（包括但不限于第一被申请人不履行或履行不符合《借款合同》约定）向申请人提供不可撤销连带责任担保（《回购担保协议》鉴于条款第 4 项）。

仲裁庭查明，《回购担保协议》明确约定了担保方式，第二被申请人和第三被申请人提供的担保方式为连带责任担保，当第一被申请人没有履行或者没有全部履行其在《借款合同》下债务时，申请人有权直接要求第二被申请人和第三被申请人承担担保责任（《回购担保协议》第二条第 1 款）。

仲裁庭查明，《回购担保协议》明确约定了担保范围，第二被申请人和第三被申请人担保的范围是第一被申请人没有按照《借款合

14

同》的约定履行义务，给申请人造成的损失，包括：第一被申请人未按照《借款合同》的约定按时、足额缴纳本金、利息、罚息、保险费、保证金、赔偿金以及第一被申请人应支付的其它费用；申请人为实现以上权益而支出的全部费用，包括但不限于律师费、诉讼费、差旅费等（《回购担保协议》第二条第 3 款）。

第二被申请人和第三被申请人主张，被申请人承担担保责任的条件尚未成就，申请人无权要求被申请人承担担保责任。仲裁庭认为，依据《回购担保协议》的上述约定，一旦《借款合同》履行期限届满，第一被申请人未按约定履行《借款合同》项下债务，则第二被申请人和第三被申请人承担担保责任的条件已经成就，因此，第二被申请人和第三被申请人上述答辩主张无合同依据，亦无法律依据，仲裁庭不予支持。

第三被申请人还主张，《回购担保协议》中关于第三被申请人以个人身份为第二被申请人的回购义务承担无限连带责任的约定系通过格式条款将公司的有限责任无限化至法定代表人个人人身上，应属无效，被申请人三不应向申请人承担担保责任。仲裁庭认为，第三被申请人和第二被申请人是相互独立的民事主体，第三被申请人为第二被申请人的回购义务承担连带责任是其真实意思表示，不违反法律行政法规的强制性规定，依法有效；另外，从《回购担保协议》的上述约定看，第三被申请人为第一被申请人在《借款合同》项下的债务承担连带责任，是其真实意思表示，不违反法律行政法规的强制性规定，依法有效；第三被申请人主张《回购担保协议》约定的相关条款是无效的格式条款，并无事实依据和法律依据。仲裁庭认为，第三被申请人上述答辩主张无合同依据，亦无法律依据，仲裁庭不予支持。

申请人请求，第二被申请人、第三被申请人对第一被申请人上述债务承担连带清偿责任，仲裁庭认为，该项请求符合《回购担保协议》的约定，符合《担保法》关于连带责任保证的相关规定，仲裁庭予以支持。

（八）关于仲裁费用的承担

申请人请求，由被申请人承担本案仲裁费用。根据仲裁规则第五十一条第（二）款的规定，结合本案实际情况，仲裁庭认为，本案仲裁费应全部由被申请人承担。

## 三　裁　　决

根据上述事实和理由，本案仲裁庭裁决如下：

（一）第一被申请人向申请人偿还借款本金 5000 万元；

（二）第一被申请人向申请人支付借款利息，借款利息应以 5000

万元为基数，按年利率 7.5%自 2017 年 3 月 15 日（不含当日）计至本息全部结清之日，暂计至 2017 年 9 月 15 日为 1890410.96 元；

（三）第一被申请人应向申请人支付罚息，罚息应以 5000 万元为基数，按年利率 16.5%自 2017 年 12 月 2 日（不含当日）计至前述本息全部结清之日；

（四）第一被申请人应向申请人支付申请人为实现债权支出的费用 507028 元；

（五）第二被申请人、第三被申请人对上述第（一）项、第（二）项、第（三）项、第（四）项裁决项下第一被申请人对申请人的债务承担连带清偿责任；

（六）本案仲裁费 319740 元（已由申请人全额预交），全部由被申请人承担，被申请人应直接向申请人支付申请人代其垫付的仲裁费 319740 元。

上述被申请人应向申请人支付的款项，被申请人应于本裁决书送达之日起 10 日内支付完毕。逾期履行的，按照《中华人民共和国民事诉讼法》第二百五十三条的规定，加倍支付延迟履行期间的债务利息。

本裁决为终局裁决，自作出之日起生效。



首席仲裁员(签字)：

仲　裁　员(签字)：

仲　裁　员(签字)：

2018 年 1 月 22 日于北京



# CERTIFICATION

TransPerfect is globally certified under the standards ISO 9001:2015 and ISO 17100:2015. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

| | |
|---|---|
| File Name(s): | 裁决书（乐视体育偿转） |
| Source Language(s): | Simplified Chinese (CN) |
| Target Language(s): | English (US) |

*Authorized Signature:*



*Name:*   Sylvia Lau

*Title:*   Project Assistant

*Date:*   27 Nov 2018

## LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

# Award of the Beijing Arbitration Commission

(2018) Jing Zhong Cai Zi No. 0146

| | | |
|---|---|---|
| Claimant: | Shanghai Lan Cai Asset Management Co., Ltd. | |
| Residential address: | Rm 1049, Building 6, No. 112-118 Gao Yi Road, | |
| | Baoshan District Shanghai City | |
| Legal representative: | Liao Zhida | General Manager |
| Entrusted agent: | Sun Fei | Staff member of Shanghahi Lan Cai Asset Management Co., Ltd. |
| | Li Bin | Staff member of Shanghahi Lan Cai Asset Management Co., Ltd. |

| | | |
|---|---|---|
| Respondent: | LeTV Sports Culture Develop (Beijing) Co., Ltd. | |
| Residential address: | 1103, Level 10, Building 3, No. 105 Yao Jia Yuan Road, | |
| | Chaoyang District Beijing City | |
| Legal representative: | Lei Zhenjian | General Manager |
| Entrusted agent: | Li Yuan | Staff member of this company |

| | | |
|---|---|---|
| Respondent: | TV Plus Holdings (Beijing) Limited | |
| Residential address: | 1102, Level 10, Building 3, No. 105 Yao Jia Yuan Road, | |
| | Chaoyang District Beijing City | |
| Legal representative: | Wu Meng | Manager |
| Entrusted agent: | Zou Yi | Beijing Zhong Shu Law Offices |

| | | |
|---|---|---|
| Respondent: | Jia Yueting | |
| ID card No.: | 14262319731215081X | |
| Residential address: | No. 31, Jie Fang West Road, Yaodu District, Lifen City, Shanxi Province | |
| Entrusted agent: | Zou Yi | Beijing Zhong Shu Law Offices |

[seal:] Beijing Arbitration Commission Cross-page Seal

The Beijing Arbitration Commission (hereinafter referred to as the "Commission") has, in accordance with the Arbitration Application submitted by Claimant Shanghai Lan Cai Asset Management Co., Ltd. (hereinafter referred to as "Claimant") to the Commission as well as the arbitration terms in the Loan Contract and the Repurchase Guarantee Agreement executed by and between the Claimant and Respondent LeTV Sports Culture Develop (Beijing) Co., Ltd. (hereinafter referred to as "1st Respondent"), Respondent TV Plus Holdings (Beijing) Limited (hereinafter referred to as "2nd Respondent") and Respondent Jia Yueting (hereinafter referred to as "3rd Respondent". The 1st, 2nd and 3rd Respondents are hereinafter collectively referred to as "Respondents") and the provisions of the relevant laws, accepted on June 28, 2017 the dispute arbitration case arising between the Claimant and the Respondents from the abovementioned contracts (hereinafter referred to as the "Case"). Case code: (2017) Jing Zhong An Zi No. 1504.

This Case shall be governed by the *Arbitration Rules of the Beijing Arbitration Commission* implemented from April 1, 2015 (hereinafter referred to as "arbitration Rules").

After having accepted this Case, documents such as the Notification of Acceptance, Arbitration Rules and Roster of Arbitrators have been served upon the Claimant in accordance with the provisions of the Arbitration Rules; and documents such as the Request for Submission of Answer, Arbitration Application, evidentiary materials of the Claimant, Arbitration Rules and Roster of Arbitrators have been served upon the Respondents in accordance with the Arbitration Rules.

Due to the failure of both parties to nominate an arbitrator within the required timeframe, and the failure of both parties to jointly nominate a chief arbitrator within the required timeframe, in accordance with the Arbitration Rules of the Commission, the Director of the Commission has nominated Mr. Wu Shengchun to act as chief arbitrator for this Case, and Ms. Kang Le and Mr. Han Xu to act as arbitrators for this Case, to form an arbitration tribunal on September 21, 2017, and apply the normal procedures to the hearing of this Case. The Commission has, in accordance with the Arbitration Rules, served upon both parties Notification of Formation of the Tribunal and Notification of Tribunal Hearing. On the same day, the Arbitration Tribunal decided to conduct tribunal hearing of this Case on October 27, 2017. The Commission has served upon both parties the Notification of Formation of the Tribunal and Notification of Tribunal Hearing in accordance with the provisions of the Arbitration Rules, and neither party has raised any oppositions to the members of the arbitration tribunal, nor has any request for recusal has been raised.

The arbitration tribunal has reviewed all the materials for arbitration submitted by the parties, and conducted the first tribunal hearing of this Case in Beijing on October 27, 2017. The agent of the Claimant attended the hearing, and the Respondents failed to appear before the tribunal without a justifiable cause despite having been advised in writing to do so by the Commission, the arbitration tribunal conducted a default hearing in the said first tribunal hearing. On December 1, 2017, the arbitration tribunal conducted a second tribunal hearing of this Case, where both the Claimant and the Respondents attended by way of their agents. The Claimant stated their arbitration claims and the facts and reasons which such claims were based upon. The Respondents answered the claims. The parties produced their evidence and performed cross-examination of their evidence. The arbitration tribunal conducted investigation of the facts related to this Case, and organized the parties for a debate.

Prior to the conclusion of the hearing, both the Claimant and the Respondents delivered their final statements of opinions.

This Case has now been concluded. The arbitration tribunal has rendered this Award in accordance with the details and related evidentiary materials in the tribunal hearing as well as the relevant laws and the Arbitration Rules after panel discussions.

The details of this Case, opinions of the arbitration tribunal and the Award are separately set forth as follows:

## I. Details of the Case

(I) Arbitration claims of the Claimant

The Claimant said that on December 1, 2016, the Claimant executed a Loan Contract with the 1st Respondent, providing that the Claimant will lend to the 1st Respondent a loan of 50 million yuan (RMB, same as below), at the annual interest rate of 7.5%, and the principal of this loan shall be repaid in a lump sum payment by the expiry date of the loan, with interest payment to be made on a quarterly basis; and on the same day, the 1st Respondent, 2nd Respondent and 3rd Respondent jointly executed a Repurchase Guarantee Agreement with the Claimant, whereby the 2nd Respondent and 3rd Respondent will be, on a voluntary basis, severally and jointly liable for providing guarantee for the 1st Respondent's performance of their obligation of repayment under the Loan Contract, and the term of such guarantee shall be 2 years commencing from the expiry date by which the debt being guaranteed has been repaid in full.

Upon execution of the Loan Contract and the Repurchase Guarantee Agreement, the Claimant paid the loan of 50 million yuan by way of bank transfer to the bank account designated by the 1st Respondent.

In accordance with the provisions of the agreements between the parties, the Claimant requested early full repayment of the principal, and full payment of all overdue interest amounting to 945,205.48 yuan, from the 1st Respondent, along with any interest accrued on the delay in performance, and sought resolutions with the Respondents through many ways. However, the Respondents shirked with a variety of excuses, and the abovementioned payments have yet to be made to date.

The Claimant raised the following arbitration claims:

1. the 1st Respondent shall pay to the Claimant:

(1) principal of the loan of 50 million yuan, with payment of interest of 945,205.48 yuan (commencing from March 15, 2017 to, tentatively, June 15, 2017, and in fact such interest shall be accrued till the date of full payment of all the principal and interest); and

(2) the cost of realization of the debt claims shall tentatively be determined as 1,083,000 yuan;

2. the 2nd Respondent and 3rd Respondent shall be held severally and jointly liable for full payment of the abovementioned amounts; and

3. the Respondents shall be jointly responsible for all the costs incurred in the arbitration of this Case.

During the first tribunal hearing, the Claimant orally requested changes to their arbitration claims and, on October 31, 2017, the Claimant applied for changes to their arbitration claims in writing, and such application was accepted by the arbitration tribunal.

The final arbitration claims of the Claimant are:

1. the 1st Respondent shall pay to the Claimant:

(1) the principal of 50 million yuan, with payment of interest of 1,890,410.96 yuan (method of calculation: 5,000 x 7.5% x 184/365, for a total of 184 days commencing from March 15, 2017 to September 15, 2017, and in fact such interest shall be accrued till the date of full payment by the Respondents), and payment of penalty interest of 5.65 million yuan (method of calculation: 500,000,000 x 0.05% x 226, for a period of tentatively 226 days in total commencing from March 15, 2017 to October 27, 2017, and in fact such interest shall be accrued till the date of full payment by the Respondents); and

(2) the Claimant shall be paid the expenses for realizing such debt claims, which are tentatively determined as 507,028 yuan, including the premium of 52,028 yuan payable to the preservation and insurance provider, cost of preservation of 5,000 yuan payable to the court, and legal fees of 450,000 yuan;

2. the 2nd Respondent and 3rd Respondent shall be held severally and jointly liable for full payment of the abovementioned amounts; and

3. the Respondents shall be responsible for all the costs of the arbitration of this Case.

(II) Opinions, facts and reasons provided by the 1st Respondent in their answer

The agent of the 1st Respondent submitted their written opinions in answering the claims in the second tribunal hearing, and provided oral defense, the primary opinions of which are set forth below:

1. the Loan Contract and the Repurchase Guarantee Agreement fall under the circumstances of invalid of contracts specified in Article 52 Item 2 of the *Contract Law of the People's Republic of China*, i.e., the Claimant and the 2nd Respondent and 3rd Respondent maliciously colluded in breach of the interests of the 1st Respondent, which shall render the Loan Contract and the Repurchase

Guarantee Agreement invalid, and the Claimant having no right to demand payment from the 1st Respondent of the loan principal and interest as well as the expenses for realization of the debt claims. The detailed reasons are listed as below:

(1) the official seal of the 1st Respondent was kept and used by the 2nd Respondent, and the affixing of the seal of 1st Respondent to the Loan Contract was not approved or consented to by the 1st Respondent, who had no knowledge of the execution of the Loan Contract;

(2) the funds under the Loan Contract have not yet arrived at the account of the 1st Respondent. The loan of 50 million yuan provided by the Claimant was transferred to the bank account maintained by Beijing Duo Le Zhi Hui Technology Co., Ltd. at Ping An Bank, but the 1st Respondent has never instructed the Claimant to transfer the loan to the account of Beijing Duo Le Zhi Hui Technology Co., Ltd., and the 1st Respondent has also never received any amount from Beijing Duo Le Zhi Hui Technology Co., Ltd.; and

(3) the Claimant knows about the above details;

2. Article 4 of the Loan Contract provided for the prerequisites to the release of the loan. Only by continually meeting the prerequisites to the release of loan will the 1st Respondent oblige the Claimant to act as the agent in releasing the loan. The prerequisites in Article 6 require that the 1st Respondent or their designated money receiving and paying agent shall have opened a fund deposit account with a collaborating agency of Lan Cai Net. The Claimant is required to, with a period of time from the satisfaction of the prerequisites to the release of the loan, released the loan to the fund deposit account opened by the 1st Respondent at the collaborating bank of Lan Cai Net. The Claimant and the 2nd Respondent maliciously colluded in breach of the interests of the 1st Respondent, by releasing the loan to the account of Beijing Duo Le Zhi Hui Technology Co., Ltd., which is incompliant with the provisions of the Loan Contract, which shall be found invalid; and

3. the official seal of the 1st Respondent was managed specially by Xu Zhanchun from the date of incorporation of the 1st Respondent to October 16, 2017, and Xu Zhanchun was a staff member of the 2nd Respondent specially in charge of the keeping of their official seal.

(III) Opinions, facts and reasons provided by the 2nd Respondent in their answer

The agent of the 2nd Respondent provided oral defense in the second tribunal hearing, and submitted their written proxy statement of opinions after the hearing, where the primary opinions of their defense are set forth below:

1. the Claimant is a not a qualified party to this Case, having no right to raise debt claims to the Respondents as a creditor,

(1) in accordance with the provisions of the Loan Contract, nobody but the network investor and the 1st Respondent are the parties to the debt-claim relationship under the Loan Contract, and the Claimant has not provided evidence that the network investor has authorized them to act as their agent

to make claims of rights to the borrower and the guarantor. The Claimant has no right to make debt claims to the Respondents based on the Loan Contract;

(2) even if we assume that the Claimant were the creditor under the Loan Contract, due to the fact that they have transferred their creditor's rights to Tao Yun Capital Group Co., Ltd., they are no longer a qualified party to this Case, with no right to make debt claims to the Respondents under the Loan Contract;

The Debt Assignment Agreement executed by and between the Claimant and Tao Yun Capital Group Co., Ltd. on July 14, 2017 has already assigned the debts under the Loan Contract and all of their subordinated rights and interests to Tao Yun Capital Group Co., Ltd. The Claimant shall, from the commencement of the Debt Assignment Agreement, no longer be a qualified party to this Case, having no right to make debt claims to the Respondents under the Loan Contract;

2. the debts under Loan Contract have not become due for repayment, and there are no such circumstances rendering the loan becoming due earlier. The Claimant's request that the Respondents shall make early repayment is based on neither facts nor the law, and shall be rejected;

3. the Claimant has demanded an excessive amount of penalty interest, which is in violation of the mandatory requirements of the People's Bank of China. We request the arbitration tribunal to re-adjust that;

The Claimant and the 1st Respondent agreed to the penalty interest rate as 0.05% in the Loan Contract, which can be converted to an annual rate of 18.25%

Article 3 of the *Notification of the People's Bank of China regarding the Issues related to RMB Loan Interest* (Yin Fa [2003] No. 251) clearly provides that: "Penalty interest on any overdue loans (loans where the borrower fails to make repayment by the date specified in the contract) will be changed from the current daily rate of 2.1 ten-thousandths to 30%-50% in addition to the loan interest rate indicated in the loan contracts", which describes the case of the Loan Contract executed by and between the Claimant and the 1st Respondent. In accordance with the above provisions, penalty interest may only be an additional 30%-50% to the loan interest rate, which, as agreed to by and between the Claimant and the 1st Respondent, is 7.5% p.a., which, along with the additional 30%-50%, shall be 9.75% - 11.25%;

In this Case, the Claimant and the 1st Respondent agreed to a high penalty interest rate of 18.25%, 60% over the ceiling rate required by the law, which shall be an invalid agreement, unfair to the Respondents. We request the arbitration tribunal to lower this penalty interest which is in violation of the mandatory requirements of the law;

4. interest and penalty interest are two different legal concepts. The one payable within the term of the loan under the Loan Contract is interest, and the one payable on any overdue loan is penalty interest. The Claimant's request that the Respondents shall pay both interest and penalty interest from March 15, 2017 is based on neither facts nor the law, and shall be rejected;

Interest and penalty interest are two completely different legal concepts. The law contains clear requirements for their respective period of accrual. In accordance with the provisions of the *Contract Law*, the debtor shall pay interest to the creditor in accordance with the loan interest rate set forth in the loan contract within the term of the loan. Only if the debtor fails to repay the loan by the deadline specified may the creditor demand interest on overdue repayment, i.e., penalty interest, from the debtor in accordance with the contract or related regulations of the state from the due date of repayment.

In this Case, repayment of the debts under the Loan Contract has not become due, and there are no circumstances rendering the loan becoming due earlier. During the term of repayment, the creditor shall, in accordance with the provisions of Article 3 Paragraph 3 of the Loan Contract, demand interest from the debtor at the annual rate of 7.5%. Only if the debtor fails to repay in full the principal by the due date of repayment falling on December 2, 2017 will the creditor become entitled to demand penalty interest in accordance with the law. The Claimant's request in their first arbitration claim that the Respondents shall pay both the interest for the period from March 15, 2017 to September 15, 2017 and the penalty interest for the period from March 15, 2017 to October 27, 2017, is based on neither facts nor the law, giving unjustifiable additional burden to the Respondents, and shall be rejected;

5. The expenses requested in the Claimant's arbitration claim for realization of debt claims are unjustifiable burdens to the Respondents, and they shall be not assumed by Respondents; and

6. The conditions for the Respondents to be held liable for the guarantee have not yet been met, and the Claimant has no right to request the 2nd Respondent be held liable for the guarantee;

(1) The debts under the Loan Contract, which is the master contract, have not yet become due, and there are no circumstances rendering the loan becoming due earlier. In this case, the Claimant has no right to request the Respondents be held responsible for the guarantee under the contract; and

(2) The Claimant has failed to issue a Notification of Repurchase in writing in accordance with the provisions of the Repurchase Guarantee Agreement, and the conditions for the Respondents to be held responsible for the guarantee have not yet been met.

(IV) Opinions, facts and reasons provided by the 3rd Respondent in his answer

The agent of the 3rd Respondent provided oral defense in the second tribunal hearing, and submitted their written proxy statement of opinions after the hearing, where the opinions of their defense are the same to those provided by the 2nd Respondent as above, and the following supplementary opinions of defense are also provided:

The provisions in the Repurchase Guarantee Agreement that hold the 3rd Respondent personally responsible for the unlimited, several and joint liability for the 2nd Respondent's repurchase obligation were made by lifting the limitation on corporate liabilities in standard terms to

the effect that the legal representative will personally assume unlimited liabilities. These provisions shall be invalid. The 3rd Respondent shall not be responsible for providing guarantee to the Claimant.

The *Company Law* of China clearly provides that a company shall be liable for its debts with all of its own property. In this Case, the 2nd Respondent executed a Repurchase Guarantee Agreement with the Claimant, providing that the 2nd Respondent will be severally and jointly liable for providing guarantee for, and assume the obligation of repurchase of, the direct loan between the 1st Respondent and the Claimant. These are the limited liabilities of the company. The Claimant, however, included the 3rd Respondent, namely the legal representative of the original 2nd Respondent, into the Repurchase Guarantee Agreement, requesting him to be severally and jointly liable for the repurchase obligation of the 2nd Respondent. This is lifting the limitation on corporate liabilities in standard terms to the effect that the legal representative will personally assume unlimited liabilities. The arbitration tribunal shall appropriately balance the factual inequality between the transacting parties, and rule out unreasonable terms, in order to seek substantive justice.

(V) Production and cross-examination of evidence by the parties

To support their arbitration claims, the Claimant submitted to the arbitration tribunal the following evidentiary materials:

Evidence 1, the Loan Contract, which is intended to show the loan relationship between the Claimant and the 1st Respondent, the loan of 50 million yuan lent at the interest rate of 7.5%, as well as the clear provisions regarding the time of repayment and early repayment;

Evidence 2, the Repurchase Guarantee Agreement, which is intended to show that the 2nd Respondent and the 3rd Respondent shall be severally and jointly liable for providing guarantee for the debt-claim relationship between the Claimant and the 1st Respondent;

Evidence 3, voucher of money transfer, which is intended to show that the Claimant has already performed their loan obligation by pay the loan to the Respondents;

Evidence 4, confirmation letter of payment, which is intended to show the same contents as Evidence 3;

Evidence 5, receipt of preservation fees, which is intended to show that the Claimant has paid preservation fees of 5,000 yuan for realization of the debt claims;

Evidence 6, invoice of insurance premium, which is intended to show that the Claimant paid premium to an insurance company for realization of the debt claims, in order to preserve the property of the Respondents;

Evidence 7, invoice of legal fees, which is intended to show that for the preservation of property, the Claimant paid legal fees, with the total invoice amount of 450,000 yuan;

[seal:] Beijing Arbitration Commission Cross-page Seal

Evidence 8, the Legal Agency Agreement, which is intended to show that the Claimant paid legal fees of 450,000 yuan for this Case;

Evidence 9, the Payment and Receipt Agency Agreement, which is intended to show that the Respondents have already received the payment of 50 million yuan, and the Claimant has already performed their obligation of loan release;

Evidence 10, photos of the scene of contract execution. The 1st Respondent is clearly aware of the loan matter involved in this Case. Lei Zhenjian, their CEO, is at the scene of contract execution;

Evidence 11, the Power of Attorney, which is intended to show that the Claimant made their debt claims and participated in the arbitration with the consent of the original creditor;

Evidence 12, the Letter of Debt Collection, which is intended to show that the Claimant advised on May 17, 2017 that the loan had become early due, and the guarantor shall be liable for providing guarantee.

The 1st Respondent provided the following opinions of cross-examination regarding the evidence submitted by the Claimant:

Evidence 1 to 4 shall be recognized for its authenticity, but invalid to the 1st Respondent;

Evidence 5 to 8 shall be recognized for its authenticity, but insurance premium, preservation fees and legal fees will not be recognized for relevance to this Case;

Evidence 9 shall be recognized for its authenticity, but its purpose of proof will not be recognized;

Evidence 10 shall be recognized for its authenticity, but not recognized for relevance. The photos were merely taken of the office environment of the 1st Respondent, especially the main door, where there was not a gate machine allowing everybody to take photos of it. These photos are not sufficient to any relevance to the execution of the Loan Contract. There is no other evidence in this Case capable of showing that the photos were taken when the contract was signed. The signature page of the Loan Contract bears the official seal of the 1st Respondent and the name seal of someone call "Gao Fei". Neither of these seals were managed by the 1st Respondent, and "Gao Fei" was then the nominal Chairman of Board of Directors of the 1st Respondent, whose position was President of LeTV, being a member of the LeTV headquarters;

The 1st Respondent did not expressed opinions of cross-examination of Evidence 11 and 12.

The 2nd Respondent expressed the following opinions of cross-examination as to the evidence submitted by the Claimant.

[seal:] Beijing Arbitration Commission Cross-page Seal

Evidence 1 to 4 shall all be recognized for its authenticity, and not for its purpose of proof. It has not been evidenced who shall be qualified to make the debt claims and when to do so. The Claimant is not so qualified to make the claims, and the Claimant's early repayment claim is not backed by sufficient evidence. Legal responsibilities of a company shall not be transferred to its legal representative.

Evidence 5 to 8 shall be recognized for its authenticity, but the expenses for realization of the debt claims shall be assumed by the Claimant themselves. The interest under the Loan Contract is already double the amount based on the bank's loan interest rate of 4.7%. The Claimant is able to receive higher interests in accordance with the contract, but the expenses for realization of the debt claims are the necessary costs the Claimant is supposed to pay in making their debt claims. The provision that the so-called expenses for realization of debt claims shall be assumed by the borrower and the guarantor imposed additional economic burden on the borrower and the guarantor, which is a disguised way of increasing the benefits receivable from the interest rate;

Evidence 9 shall be recognized for its authenticity;

Evidence 10 shall be recognized for its authenticity, and its purpose of proof; and

The 2nd Respondent did not express opinions of cross-examination of Evidence 11 and 12.

The 3rd Respondent expressed his opinions of cross-examination of the evidence submitted by the Claimant, and expressed same opinions of cross-examination to the 2nd Respondent's as to Evidence 1-10, but did not express opinions of cross-examination of Evidence 11 and 12.

This 1st Respondent produced the following evidence:

Evidence 1, receipt of seals, which is intended to show that the official seal and the contract seal of the 1st Respondent were managed by the 2nd Respondent prior to the date of handover, October 16, 2017. The person taking over the seals, namely Xu Zhanchun who signed the handover receipt, is a staff member of the Seals and Archives Department of the 2nd Respondent;

Evidence 2, Results of inquiry at the National Enterprise Information Disclosure System, which are intended to show that the registered capital of Beijing Duo Le Zhi Hui Technology Co., Ltd. is only 500,000 yuan, and Beijing Duo Le Zhi Hui Technology Co., Ltd. is not related in any manner to the 1st Respondent, and this company is currently still a going concern;

Evidence 3, media reporting of the shareholding changes to Lan Cai Net and the status of their investments, which is intended to show that the 2nd Respondent invested in Lan Cai Net in August 2016, when Lan Cai Net announced completion of Round B financing in amount of 180 million yuan, and TV Plus Holdings (Beijing) Limited led the investment in this financing, followed by Jun Lian Capital. There is a close relationship between Lan Cai Net and the 2nd Respondent and the LeTV system, and Lan Cai should be aware of the association between as well as the management of the 2nd Respondent and companies related to LeTV;

Evidence 4, results of inquiries about LeTV employee information, which are intended to show that Xu Zhanchun (signatory of the seals handover receipt) is a staff member of Administrative Division Seals and Archives Department of the 2nd Respondent;

Evidence 5, the Debt Assignment Agreement, which is intended to show that the Claimant executed a Debt Assignment Agreement in Chaoyang District, Beijing on July 14, 2017 with Yun Tao Capital Group Co., Ltd., providing that under the Loan Contract executed by and between the Claimant and the 1st Respondent, the principal of the debt is 50 million yuan, which is assigned to Yun Tao Capital Group Co., Ltd. as consideration, and the Claimant's arbitration application is not based on any rights.

The Claimant expressed the following opinions of cross-examination as to the evidence submitted by the 1st Respondent:

Evidence 1 cannot be recognized for authenticity, and shall not be recognized for purpose of proof. The 1st Respondent intends to show that they had no power to manage the seals prior to October 16, 2017, and hence denies that the contract was an expression of their true intent. The use of the seals and approval of contents are internal decisions of the 1st Respondent, which shall not have effect on an outside third party. They should not deny that the Loan Contract was an expression of their true intent due to their defective internal decisions. The Loan Contract was executed in the office premises of the 1st Respondent, who is aware of the fact of the execution of the Loan Contract;

Evidence 2 shall be recognized for its authenticity, but not recognized for its purpose of proof. Though the registered capital of Beijing Duo Le Zhi Hui Technology Co., Ltd. is only 500,000 yuan, they will not be stopped from acting as on behalf of the 1st Respondent to receive the loan of 5 million yuan released by the Claimant. We do not agree to add Beijing Duo Le Zhi Hui Technology Co., Ltd. as third person to this Case;

Evidence 3 shall be recognized for its authenticity, and not recognized for its purpose of proof. Lan Cai Net was in an investor-investee relationship with the 2nd Respondent and the LeTV system in August 2016. The 1st Respondent and the 2nd Respondent are associated companies. If the 1st Respondent believes the 2nd Respondent colluded to damage their interests, that was a result of their bad internal decision making, and no adverse consequences of bad internal decisions shall be assumed by the good-faith Claimant.

Evidence 4 cannot be recognized for its authenticity. Even if this evidence were assumed to be authentic, it will not be recognized for its purpose of proof. The 1st Respondent should be associated to the 2nd Respondent, and the use by the 2nd Respondent of the seals of the 1st Respondent is likely to have been authorized by the 1st Respondent; and

Evidence 5 cannot be recognized for its authenticity, and shall not be recognized for its purpose of proof.

10        [seal:] Beijing Arbitration Commission Cross-page Seal

The 2nd Respondent expressed the following opinions of cross-examination of the evidence submitted by the 1st Respondent:

Evidence 1 cannot be recognized for its authenticity, and shall not be recognized for its purpose of proof;

Evidence 2 shall be recognized for its authenticity, but not recognized for its purpose of proof.

Evidence 3 does not conform to the formal requirements for electronic evidence, and cannot be recognized for its authenticity;

Evidence 4 shall be doubted as to its legality;

Evidence 5 shall be recognized for its authenticity and purpose of proof.

The 3rd Respondent also expressed opinions of cross-examination of the evidence submitted by the 1st Respondent, which were the same to those of the 2nd Respondent.

The 2nd Respondent produced the following evidence:

Evidence 1, the Debt Assignment Agreement executed by and between the Claimant and Tao Yun Capital Group Co., Ltd. on July 14, 2017, which is intended to show that even if the Claimant were a credited under the Loan Contract, they have already assigned the debts under the Loan Contract and all of their subordinated rights and interests to Tao Yun Capital Group Co., Ltd. The Claimant shall, from the commencement of the Debt Assignment Agreement, no longer be a qualified party to this Case, having no right to make debt claims to the Respondents under the Loan Contract;

Evidence 2, the Entrusted Management and Finance Collaboration Agreement executed by and between the Claimant and the 1st Respondent as well as Beijing Lan Cai Information Technology Co., Ltd. on December 1, 2016, which is intended to show that the loan lending in this Case has truly and effectively taken place. The Loan Contract pack consists of 6 documents, which form a complete chain of evidence, with all the related agreements being expressions of true intent by the parties. The relevant contracts were signed and performed, ruling out any circumstances alleged by the 1st Respondent that the Claimant maliciously colluded with the 2nd Respondent without their knowledge;

Evidence 3, the Usufruct Assignment Agreement executed by and between the Claimant and LETV SPORTS CULTURE DEVELOP (HONG KONG) Co. Limited on December 1, 2016, which is intended to show the same contents as Evidence 2;

Evidence 4, the Voucher of Usufruct executed by and between the 1st Respondent and LETV SPORTS CULTURE DEVELOP (HONG KONG) Co. Limited on December 1, 2016, which is intended to show the same contents as Evidence 2.

The Claimant expressed the following opinions of cross-examination of the evidence submitted by the 2nd Respondent:

Evidence 1 cannot be recognized for its authenticity, and shall not be recognized for its purpose of proof; and

Evidence 2 to 4 shall be recognized for its authenticity, and shall not be recognized for its purpose of proof.

The 1st Respondent expressed the following opinions of cross-examination of the evidence submitted by the 2nd Respondent:

Evidence 1 shall be recognized for its authenticity and purpose of proof; and

Evidence 2 to 4 shall be recognized for its authenticity, and shall not be recognized for its purpose of proof.

The 3rd Respondent expressed the following opinions of cross-examination of the evidence submitted by the 2nd Respondent:

Evidence 1 shall be recognized for its authenticity and purpose of proof; and

Evidence 2 to 4 shall be recognized for its authenticity.

The 3rd Respondent has not submitted his evidentiary materials to the arbitration tribunal.


## II. Opinions of the Arbitration Tribunal

In accordance with the valid evidence submitted by the parties to this Case and by taking into consideration details of the tribunal hearing, the arbitration tribunal now provides its opinions as follows:

(I) Regarding the validity of the Loan Contract and the Repurchase Guarantee Agreement

The 1st Respondent claims that the Loan Contract and the Repurchase Guarantee Agreement fall under the circumstances of invalid of contracts specified in Article 52 Item 2 of the *Contract Law of the People's Republic of China*, the official seal of the 1st Respondent was kept and used by the 2nd Respondent, and the affixing of the seal of 1st Respondent to the Loan Contract was not approved or consented to by the 1st Respondent, who had no knowledge of the execution of the Loan Contract, i.e., the Claimant and the 2nd Respondent and 3rd Respondent maliciously colluded in breach of the interests of the 1st Respondent, which shall render the Loan Contract and the Repurchase Guarantee Agreement invalid.

[seal:] Beijing Arbitration Commission Cross-page Seal

The arbitration tribunal has found through investigation that the official seal of the 1st Respondent has been affixed to both the Loan Contract and the Repurchase Guarantee Agreement. None of the parties have raised any objections to the authenticity of this official seal. Article 49 of the *Contract Law* provides that where the feasor enters into a contract in the name of the principal with no power of attorney, by going beyond its power of attorney or after termination of its power attorney, and the counterparty has reasons to believe that the feasor did so with power of attorney, such act of agency shall be valid. The arbitration tribunal believes that given the 1st Respondent placed its official seal into the management of the 2nd Respondent and for their use, the Claimant may reasonably believe that the 1 Respondent has granted the 2nd Respondent power of attorney; and even if the 1st Respondent does not recognize such granting of power of attorney to the 2nd Respondent, the 2nd Respondent, by affixing the official seal of the 1st Respondent to the Loan Contract and the Repurchase Guarantee Agreement, has acted as apparent agent as defined under Article 49 of the *Contract Law*, and such act shall be valid. The arbitration tribunal deems that no evidence in this Case shows malicious collusion between the Claimant and the 2nd Respondent in breach of the interests of the 1st Respondent, and [therefore] no circumstances of invalid contracts under Article 52 of the *Contract Law* have taken place. Both the Loan Contract and the Repurchase Guarantee Agreement are expressions of the true intents of the parties, which shall be valid.

(II) Regarding whether or not the Claimant has claims to the debts under the Loan Contract

The 1st Respondent claims that in accordance with the provisions of the Loan Contract, nobody but the network investor and the 1st Respondent are the parties to the debt-claim relationship under the Loan Contract, and the Claimant has not provided evidence that the network investor has authorized them to act as their agent to make claims of rights to the borrower and the guarantor. The Claimant has no right to make debt claims to the Respondents based on the Loan Contract

The arbitration tribunal has found through investigation that the Loan Contract executed by and between the Claimant and the 1st Respondent provides that the Claimant will act on behalf of the specific users of Lan Cai Net to release a loan of no more than 50 million yuan to the 1st Respondent, and the electronic transaction records in the fund deposit system of the collaborating agency of Lan Cai Net shall prevail as to the actual amount of the loan, initial amount of the loan, details of initial borrower and the start and end dates (Article 1 of the Loan Contract); the Claimant shall act as the agent to release the loan in accordance with the provisions of the Loan Contract, manage debts in a centralized manner and communicate and liaise with the 1st Respondent in accordance with borrower's authorization, in the interest of the borrower and on behalf of the borrower, but Party B is a party or the guarantor to the debt-claim relationship (Article 9 Paragraph 1 of the Loan Contract). The arbitration tribunal deems that the above terms of the Loan Contract indicate that the Claimant has already fully disclosed to the 1st Respondent that the Claimant "releases the loan" and "manages debts in a centralized manner" on behalf of the specific users of Lan Cai Net. If we apply semantic interpretation to the contractual terms, "mana[ging] debts in a centralized manner" is supposed to include taking legal measures to make debt claims to the borrower for recovery of the loan in accordance with the law. The arbitration tribunal deems that the Claimant acting in their own name to release the loan and recover the loan on behalf of the specific users of Lan Cai Net conforms to the common mode of business in Internet finance. No evidence in this Case shows that the Claimant has

no right to release and recover the loan on behalf of the specific users of Lan Cai Net. The arbitration tribunal deems that the 1st Respondent's allegation that the Claimant has no right to excise rights as creditor based on the Loan Contract is grounded on neither the law nor the contract, which will not be supported by the arbitration tribunal.

All three Respondents claim that the Debt Assignment Agreement executed by and between the Claimant and Tao Yun Capital Group Co., Ltd. on July 14, 2017 has already assigned the debts under the Loan Contract and all of their subordinated rights and interests to Tao Yun Capital Group Co., Ltd. The Claimant shall, from the commencement of the Debt Assignment Agreement, no longer be a qualified party to this Case, having no right to make debt claims to the Respondents under the Loan Contract.

The arbitration tribunal has found through investigation that the Debt Assignment Agreement executed by and between the Claimant and Tao Yun Capital Group Co., Ltd. on July 14, 2017, submitted by the 1st Respondent and the 2nd Respondent, provides that the Claimant will assign their creditor's rights under the Loan Contract to Tao Yun Capital Group Co., Ltd., who has agreed to accept the same (Whereas clauses, Article 1 and Article 2 Paragraph 1 of the Debt Assignment Agreement); upon full payment of the consideration for the assignment by Tao Yun Capital Group Co., Ltd., the Claimant will no longer be entitled to the subject debts and all of their subordinated rights and interests, including but not limited to the right to receive interest based on the subject debts (Article 2 Paragraph 4 of the Debt Assignment Agreement). The arbitration tribunal specially notes the clear provisions in Article 2 Paragraph 6 of the Debt Assignment Agreement that when the Claimant has agreed to assign the subject debts, the Claimant shall make debt claims to the 1st Respondent as the creditor on behalf of Tao Yun Capital Group Co., Ltd. Article 80 Paragraph 1 of *Contract Law* provides that, "Where a creditor transfers his/her rights, he/she shall notify the debtor. In case of failure to give such notification, the transfer will not be effective to the debtor". the arbitration tribunal believes that the Debt Assignment Agreement executed by and between the Claimant and Tao Yun Capital Group Co., Ltd. submitted by the 1st Respondent and 2nd Respondent is a photocopy, whose authenticity cannot be verified by the arbitration tribunal; assuming that the Debt Assignment Agreement was real, Claimant shall also have the right to make claims to the 1st Respondent in accordance with the provisions of Article 2 Paragraph 6 of the Debt Assignment Agreement; in this Case, no evidence shows that the Claimant provided a notification of debt assignment to the 1st Respondent that the 1st Respondent shall only service the debts to assignee Tao Yun Capital Group Co., Ltd., so this transfer is not effective to the 1st Respondent. The arbitration tribunal believes that the three Respondents' claim that the Claimant will have no claims to the debts under the Loan Contract from the commencement of the Debt Assignment Agreement is based on neither the law nor the contract, which will not be supported by the arbitration tribunal.

From the foregoing analysis, the arbitration tribunal believes the Claimant shall have claims to the debts under the Loan Contract.

(III) Regarding the repayment of the loan principal

The Claimant requests that the 1st Respondent repay to the Claimant the loan principal of 50 million yuan.

The 1st Respondent claims that the loan funds of 50 million yuan under the Loan Contract have not yet been transferred by the Claimant to the account of the 1st Respondent, but instead to the bank account maintained by Beijing Duo Le Zhi Hui Technology Co., Ltd. at Ping An Bank, and that the 1st Respondent has never instructed the Claimant to transfer the loan to the account of Beijing Duo Le Zhi Hui Technology Co., Ltd. This release of the loan to the account of Beijing Duo Le Zhi Hui Technology Co., Ltd. by the Claimant does not conform to the provisions of the Loan Contract on the prerequisites to release of the loan.

The arbitration tribunal has found through investigation that Article 4 of the Loan Contract provides prerequisites to the release of the loan as follows: "Except for any waiver by Party B (Claimant, noted by the arbitration tribunal) in whole or in part, only if Party A (1st Respondent, noted by the arbitration tribunal) continues to meet the following prerequisites will Party B be obliged to act as the agent to release the loan." The arbitration tribunal deems that in accordance with the above provisions, the loan will not be released until the 1st Respondent has met the prerequisites for release of the loan. This is a right of the Claimant, and does not constitute an obligation of the Claimant.

The arbitration tribunal has found through investigation that on December 2, 2016, the Claimant transferred the funds of 50 million yuan in 6 tranches to the account of Beijing Duo Le Zhi Hui Technology Co., Ltd. via the account of Beijing Lan Cai Information Technology Co., Ltd. The arbitration tribunal found that on December 2, 2016, the 1st Respondent and Beijing Duo Le Zhi Hui Technology Co., Ltd. jointly issued to the Claimant an Acknowledgement of Receipt of Payment, confirming receipt of the loan of 50 million yuan which the Claimant entrusted to be paid from the account of Beijing Lan Cai Information Technology Co., Ltd.

From the above facts found by the arbitration tribunal, the arbitration tribunal believes that the Claimant has already released the loan of 50 million yuan based on the provisions of the Loan Contract.

The arbitration tribunal has found through investigation that Article 2 of the Loan Contract requires the term of the loan to be 12 months. Based on this requirement, the loan will expire by December 2, 2017. The arbitration tribunal deems that in accordance with the provisions of the Loan Contract, upon expiration of the loan, the 1st Respondent will be obliged to return the loan principal to the Claimant with interest payment.

No evidence in this Case shows that upon expiration of the loan on December 2, 2017, the Respondents have returned any principal of the loan to the Claimant.

The arbitration tribunal believes that the Claimant's request that the 1st Respondent repay to them loan principal of 50 million yuan is in compliance with the provisions of the Loan Contract, which arbitration claim will be supported by the arbitration tribunal.

(IV) The arbitration claim regarding loan interest

The Claimant requests payment from the 1st Respondent to the Claimant of interest of 1,890,410.96 yuan (method of calculation: 50 million x 7.5% x 184/365, for a total of 184 days commencing from March 15, 2017 to September 15, 2017, and in fact such interest shall be accrued till the date of full payment by the Respondents).

The arbitration tribunal has found through investigation that Article 3 of the Loan Contract provides for the annual interest rate of loan shall be 7.5%, daily interest rate = annual interest rate/365, and the interest payment dates shall be March 15, September 15, December 15 and the date of repayment of the principal by the 1st Respondent. If the 1st Respondent fails to repay the loan when due, the creditor shall have the right to charge penalty interest at the daily rate of 5 ten-thousandths, until such default or circumstance has ceased to take place.

During the tribunal hearing, the Claimant confirmed that prior to March 15, 2017, the 1st Respondent had already paid the due interest, and since March 15, 2017, the 1st Respondent has never paid interest to the Claimant. No evidence in this Case shows that the Respondents have paid interest to the Claimant since March 15, 2017.

The arbitration tribunal believes that the Claimant's arbitration claim regarding interest conforms to the provisions of the Loan Contract, which will be supported by the arbitration tribunal, that means the 1st Respondent shall pay loan interest to the Claimant, based on the 50 million yuan at the annual interest rate of 7.5% commencing from March 15, 2017 to the date of full payment of both principal interest, which is tentatively set as September 15, 2017, as of which the interest payment will be 1,890,410.96 yuan (50 million x 7.5% x 184/365).

(V) The arbitration claim regarding penalty interest

The Claimant requests payment by the 1st Respondent of penalty interest of 5.65 million yuan (method of calculation: 500,000,000 x 0.05% x 226, for a period of tentatively 226 days in total commencing from March 15, 2017 to October 27, 2017, and in fact such interest shall be accrued till the date of full payment by the Respondents).

The arbitration tribunal has found through investigation that the Loan Contract executed by and between the Claimant and the 1st Respondent requires the term of the loan to be 12 months (Article of the Loan Contract); and if the 1st Respondent fails to repay the loan when due, the creditor shall have the right to charge penalty interest at the daily rate of 5 ten-thousandths, until such default or circumstance has ceased to take place (Article 3 of the Loan Contract).

The arbitration tribunal has found through investigation that on December 2, 2016, the Claimant released the loan of 50 million yuan in accordance with the provisions of the Loan Contract. Article 2 of the Loan Contract provides that the term of the loan shall be 12 months. Based on this provision, the loan will expire on December 2, 2017.

No sufficient evidence in this Case shows that the Claimant served on the 1st Respondent notification of early recovery of the loan, and no sufficient evidence in this Case shows that the Claimant has the right to early recover the loan. The arbitration tribunal deems that in accordance with the above provisions of the Loan Contract, after expiration of the loan on December 2, 2017, overdue repayment of the loan by the 1st Respondent will be constituted only if they fail to repay the loan principal and interest on time, and only in that case will the Claimant have the right to charge penalty interest.

Regarding the standard of penalty interest, the 2nd Respondent and the 3rd Respondent claim that the Claimant and the 1st Respondent agreed to the daily rate of penalty interest as 5 ten-thousandths in the Loan Contract, which can be converted to an annual rate of 18.25%, which is in violation of the mandatory requirements of the People's Bank of China and shall be invalid. Article 3 of the *Notification of the People's Bank of China regarding the Issues related to RMB Loan Interest* (Yin Fa [2003] No. 251) clearly provides that: "Penalty interest on any overdue loans (loans where the borrower fails to make repayment by the date specified in the contract) will be changed from the current daily rate of 2.1 ten-thousandths to 30%-50% in addition to the loan interest rate indicated in the loan contracts". In accordance with the above provisions, penalty interest may only be an additional 30%-50% to the loan interest rate, which, as agreed to by and between the Claimant and the 1st Respondent, is 7.5% p.a., which, along with the additional 30%-50%, shall be 9.75% - 11.25%. The penalty interest rate agreed to by and between the Claimant and the 1st Respondent is unfair to the Respondents, and arbitration tribunal was requested to lower it. The 2nd Respondent and the 3rd Respondent further claim that interest and penalty interest are two different legal concepts. The Claimant's request that the Respondents shall pay both interest and penalty interest from March 15, 2017 is based on neither facts nor the law.

Article 207 of the *Contract Law* provides that, "In case of any failure of the borrower to repay the loan by the deadline agreed to, overdue payment interest shall apply in accordance with the contract or the relevant regulations of the state." The arbitration tribunal deems that in accordance with the provisions of the *Contract Law*, the borrower and the lender shall have the right to agree to penalty interest on overdue payment; the *Notification of the People's Bank of China regarding the Issues related to RMB Loan Interest* (Yin Fa [2003] No. 251) does not prohibit the borrower and the lender from agreeing separately to a penalty interest rate either.

Article 29 of the Regulations of the Supreme People's Court regarding the Several Issues in the Application of the Law to the Hearing of Private Lending Cases provides that, "where the borrower and the lender have agreed to an overdue interest rate, such agreement shall prevail; however, such rate shall not exceed 24% over the annual rate"; Article 30 provides that, "where the borrower and the lender have agreed to an overdue interest rate as well as default fine or other payments, the borrower may choose to claim any one or all of such overdue interest, default fine and other payments, but any excess over 24% of the annual rate will not be supported by the people's court." By referring to the provisions in the above judicial interpretation of the Supreme People's Court, the arbitration tribunal deems that once the loan has become overdue, the borrower shall have the right to claim altogether the interest and the additional interest, but in an amount not exceeding 24% of the annual interest rate. The annual interest rate on the loan in this Case is 7.5%, and the

penalty interest charged in addition on overdue payment aggregates up to an annual rate of 18.25%, based on the daily of 5 ten-thousandths. The two combined have already gone beyond the annual interest rate of 24%. The arbitration tribunal believes that this penalty interest rate shall be lowered to the annual rate of 16.5%.

From the foregoing opinions of the arbitration tribunal, the Claimant's request that the 1st Respondent should pay to them penalty interest is supported by the arbitration tribunal, and such penalty interest shall accrue on the base of 50 million yuan at the annual interest rate of 16.5% commencing from December 2, 2017 (exclusive) till the date of full payment of both the principal and interest.

(VI) Regarding the expenses for realization of the debt claims

The Claimant requests that they shall be paid by the 1st Respondent the expenses for realizing the debt claims, in amount of 507,028 yuan, including the premium of 52,028 yuan payable to the preservation and insurance provider, cost of preservation of 5,000 yuan payable to the court, and legal fees of 450,000 yuan

The arbitration tribunal has found through investigation that Article 14 Paragraph (I) of the Loan Contract provides that all expenses actually incurred by the Claimant for realization of the debt claims (including but not limited to litigation fees, arbitration fees, property preservation fees, travel expenses, enforcement fees, assessment fees, auction fees, notary fees, service fees, publication fees, legal fees, if any) shall be assumed by the 1st Respondent. The arbitration tribunal deems that the above provisions are expressions of true intents of the Claimant and the Respondents, without violation of the mandatory requirements of legal and administrative regulations, and shall be valid by the law. The arbitration tribunal has found through investigation that for realization of the debt claims, the Claimant paid property preservation fees of 5,000 yuan, property preservation liability insurance premiums of 52,028 yuan and legal fees of 450,000 yuan, amounting to 507,028 yuan.

The Respondents claim that the expenses requested in the Claimant's arbitration claim for realization of debt claims are unjustifiable burdens to the Respondents, and they shall be not assumed by Respondents. The arbitration tribunal deems that the Claimant paid the fees for realization of the debt claims as a result of the Respondents, who have no contractual or legal basis to deny liability for these fees, and the arbitration tribunal will not support this claim.

The arbitration tribunal deems that the Claimant's arbitration claim regarding the expenses for realization of the debt claims conforms to the above provisions of the Loan Contract, which will be supported by the arbitration tribunal. The 1st Respondent shall pay to the Claimant expenses of 507,028 yuan for realization of the debt claims.

(VII) Regarding the arbitration claim that the 2nd Respondent and the 3rd Respondent shall be severally and jointly liable for repayment of the debts of the 1st Respondent.

[seal:] Beijing Arbitration Commission Cross-page Seal

The arbitration tribunal has found through investigation that the Claimant and the three Respondents agreed to in the executed Repurchase Guarantee Agreement that: the 2nd Respondent agrees and undertakes to assume irrevocable several and joint liability of guarantee and obligation of repurchase of the loan between the 1st Respondent and the Claimant; the 3rd Respondent agrees and undertakes to assume personal, unlimited, several and joint liability for the above obligation of the 2nd Respondent (Whereas Clause 2 of the Repurchase Guarantee Agreement); provided that the 2nd Respondent and the 3rd Respondent agree and undertake to provide repurchase and guarantee for the 1st Respondent, the Claimant agrees to provide liquid loans to the 1st Respondent (Whereas Clause 3 of the Repurchase Guarantee Agreement); to ensure that the 1st Respondent repays the loan to the Claimant in accordance with the provisions of the Loan Contract executed by and between the Claimant and the 1st Respondent, the 2nd Respondent and the 3rd Respondent agree to provide irrevocable guarantee for the Claimant with several and joint liability in respect of the obligations of the 1st Respondent under the Loan Contract (including but not limited to non-performance by the 1st Respondent or failure of their performance to conform to the provisions of the Loan Contract) (Whereas Clause 4 of the Repurchase Guarantee Agreement).

The arbitration tribunal has found through investigation that the Repurchase Guarantee Agreement has clearly specified the manner of guarantee, and the 2nd Respondent and the 3rd Respondent shall provide guarantee with several and joint liability. When the 1st Respondent has not performed or has not fully performed their debts under the Loan Contract, the Claimant has the right to directly request the 2nd Respondent and the 3rd Respondent to assume the liability of providing guarantee (Article 2 Paragraph 1 of the Repurchase Guarantee Agreement).

The arbitration tribunal has found through investigation that the Repurchase Guarantee Agreement has clearly specified the scope of guarantee, where the 2nd Respondent and the 3rd Respondent shall provide guarantee to the 1st Respondent to the extent that the latter does not perform their obligations in accordance with the provisions of the Loan Contract causing loss to the Claimant, including: failure of the 1st Respondent to pay the principal, interest, penalty interest, insurance premium, bond, compensation as well as other amounts payable by the 1st Respondent on time and in full in accordance with the Loan Contract; and all the expenses paid by the Claimant for realization of the above rights and interests, including but not limited to legal fees, litigation fees, travel expenses, etc. (Article 2 Paragraph 3 of the Repurchase Guarantee Agreement).

The 2nd Respondent and the 3rd Respondent claim that the conditions for the Respondents to be held liable for the guarantee have not yet been met, and the Claimant has no right to request the Respondents to be held liable for the guarantee. The arbitration tribunal deems that in accordance with the above provisions of the Repurchase Guarantee Agreement, once the Loan Contract expires and the 1st Respondents has failed to perform their debts under the Loan Contract, the conditions for the 2nd Respondent and the 3rd Respondent to be held liable for providing guarantee have been met; therefore, the above claim by the 2nd Respondent and the 3rd Respondent in defense has no contractual or legal basis, which will not be supported by the arbitration tribunal.

The 3rd Respondent also claims that the provisions in the Repurchase Guarantee Agreement that hold the 3rd Respondent personally responsible for the unlimited, several and joint liability for

the 2nd Respondent's repurchase obligation were made by lifting the limitation on corporate liabilities in standard terms to the effect that the legal representative will personally assume unlimited liabilities. These provisions shall be invalid. The 3rd Respondent shall not be responsible for providing guarantee to the Claimant. The arbitration tribunal deems that 2nd Respondent and the 3rd Respondent are independent civil subjects, and it is the 3rd Respondent's expression of true intent to assume several and joint liability for the repurchase obligation of the 2nd Respondent, which is not in violation of the mandatory requirements of legal and administrative regulations, and is legal and valid; in addition, from the above provisions of the Repurchase Guarantee Agreement, it is the 3rd Respondent's express of true intent to be held severally and jointly liable for the debts of the 1st Respondent under the Loan Contract, which is not in violation of the mandatory requirements of legal and administrative regulations, and is legal and valid; and the 3 Respondent's claim that the relevant terms provided in the Repurchase Guarantee Agreement are invalid standard terms, without factual and legal basis. The arbitration tribunal deems that the above claim by the 3rd Respondent in defense has no contractual or legal basis, which will not be supported by the arbitration tribunal.

The Claimant request that that 2nd Respondent and the 3rd Respondent be severally and jointly liable for repayment of the above debts of the 1st Respondent. The arbitration tribunal deems that this request is in compliance with the provisions of the Repurchase Guarantee Agreement, the relevant provisions of the Surety Law regarding guarantee with several and joint liability, and will be supported by the arbitration tribunal.

(VIII) Regarding assumption of arbitration costs

The Claimant requests that the Respondents assume the arbitration costs for this Case. In accordance with the provisions of Article 51 Paragraph (II) of the Arbitration Rules and by taking into account the actual details of this Case, the arbitration tribunal believes that the arbitration costs for this Case shall all be assumed by the Respondents.

## III. Award

In accordance with the above facts and reasons, the arbitration tribunal has rendered the below award on this Case:

(I) the 1st Respondent shall repay principal of the loan of 50 million yuan to the Claimant;

(II) the 1st Respondent shall pay interest on the loan to the Claimant, which interest shall accrue on the base of 50 million yuan at the annual interest rate of 7.5% commencing from March 15, 2017 (exclusive) till the date of full payment of the loan and interest, which is tentatively September 15, 2017, amounting to 1,890,410.96 yuan;

(III) the 1st Respondent shall pay penalty interest to the Claimant, which shall accrue on the base of 50 million yuan at the annual interest rate of 16.5% commencing from December 2, 2017 (exclusive) till the aforementioned date of full payment of principal and interest;

(IV) the 1st Respondent shall pay to the Claimant expenses of 507,028 yuan paid for the realization of the debt claims;

(V) the 2nd Respondent and the 3rd Respondent shall be severally and jointly liable for repayment of the debts of the 1st Respondent under the above Items (I), (II), (III) and (IV) in this Award;

(VI) the arbitration costs of 319,740 yuan for this Case (which have been prepaid in full by the Claimant) shall entirely be assumed by the Respondents, who shall directly pay to the Claimant the arbitration costs of 319,740 yuan disbursed by the Claimant.

The above amounts payable by the Respondents to the Claimant shall be paid in full within 10 days from the date of service of this Award. Overdue performance will, in accordance with the provisions of Article 253 of the Civil Procedure Law of the People's Republic of China, render in double payment of the interest on the debts for the period of delayed performance.

This Award shall be final and effective as of the date of issue.

[seal:] Arbitration Commission of Beijing 1100000039785

Chief Arbitrator (signature):     [signature]

Arbitrator (signature):     [signature]

Arbitrator (signature):     [signature]

January 22, 2018 in Beijing