# EXHIBIT 2





# 借 款 合 同

CERTIFIED TRUE COPY

TO SZE CHING
中国法律职业资格证
A20108100000011



合同编号：XYJK-2016003-01-JKHT

2016 年 12 月 1 日

# 目　录

借款合同 .................................................................................................................. 2

第一条　　借款金额 .............................................................................................. 2

第二条　　借款期限 .............................................................................................. 3

第三条　　借款用途和本息支付方式 .................................................................. 3

第四条　　借款的发放 .......................................................................................... 4

第五条　　还款 ...................................................................................................... 5

第六条　　偿债保障机制 ...................................................................................... 6

第七条　　后续债权转让 ...................................................................................... 6

第八条　　甲方的权利和义务 .............................................................................. 6

第九条　　乙方的权利、义务 .............................................................................. 7

第十条　　甲方声明与承诺 .................................................................................. 7

第十一条　违约责任 .............................................................................................. 7

第十二条　合同的变更、转让、解除或终止 ...................................................... 8

第十三条　法律适用及争议的解决 ...................................................................... 8

第十四条　其他条款 .............................................................................................. 8

2

# 借款合同

合同编号：XYJK-2016003-01-JKHT

## 借款人（甲方）：乐视体育文化产业发展（北京）有限公司

## 资产托管方/代理出借人（乙方）：上海懒财资产管理有限公司

## 鉴于：

1、 甲方拟通过北京懒财信息科技有限公司（"懒财科技"）运营的互联网金融信息服务平台懒财网（域名 www.lancai.cn，以下简称"懒财网"）实现借款融资。

2、 乙方同意与甲方及懒财科技签署编号为：XYJK-2016003-02-WTGL 的《委托管理暨融资合作协议》（见本协议附件一），并同意在该协议下与甲方达成特定收益权（以下简称"标的权益"）全权托管安排，和基于托管安排由懒财科技向用户向甲方提供借款。乙方作为资产受托管理方，根据《委托管理暨融资合作协议》约定履行代理还款、债权管理等职能及提供偿债保障服务。

3、 为便于懒财网用户进行债权投资，乙方作为代理借款发放人/借款合同签署方。懒财网通过提供信息服务，协助作为懒财网用户的网络投资人（以下简称"网络投资人"）与甲方之间形成债权债务关系。

4、 现就乙方基于代理受托管理标的权益安排代理向甲方发放借款事宜，各方经协商一致，订立本合同，以资共同遵守。

第一条    借款金额

乙方代理懒财网特定用户向甲方发放借款的金额不超过人民币（下同）伍仟

3

万元整（￥50,000,000.00）。实际借款金额、初始借款人明细及起始日期以懒财网合作机构的资金存管系统电子交易记录为准。

第二条　　借款期限

（一）本合同约定借款期限为 12 个月。

（二）如甲方预期可能无法偿还当期本金或利息，应于到期日前至少提前十日或知悉出现可能造成无法按期还款的事由后一个工作日内知会乙方，双方协商通过合法合规方式解决潜在债务违约风险。

（三）借款提前到期

发生如下情形之一的，甲方应提前偿还全部借款：（1）甲方对其向乙方提供的关于设立权益托管安排的相关资料（包括不限于转播权合同、甲方依法享有标的权益的证明资料）被篡改或伪造，或拒绝配合乙方按约定享有的知情权，拒绝提供必要信息和协助的；（2）甲方、担保方（如有，下同）、回购义务方（如有，下同）嫌重大违法经营活动被监管机构调查或涉嫌违法犯罪被监管机构调查或被立案侦查；（3）甲方或担保方、回购义务方发生重大债务违约、财务恶化、失踪等实质性影响甲方履行还款义务及/或担保方、回购义务方履行担保义务的情形，严重危及懒财网平台用户投资安全的，或回购义务方违反回购约定的；或（4）甲方违反相关《委托管理暨融资合作协议》的约定提出提前终止委托的，或相关《委托管理暨融资合作协议》因任何原因终止、失效、被撤销、暂停履行。

借款提前到期触发后，乙方有权通知甲方借款立即到期，甲方应按乙方通知立即偿还借款。如甲方未按通知及时、足额偿还借款本金、利息，乙方有权依据《委托管理暨融资合作协议》以托管资产实施偿债保障措施，及按法律规定主张其他救济措施。

第三条　　借款用途和本息支付方式

（一）借款用途：借款用于补充甲方日常运营流动性资金。

（二）本金偿还：借款发放满 12 个月之日一次性偿还全部本金。

在提前十个工作日书面通知乙方的前提下，甲方可以提前偿还借款，否则甲方应向乙方额外支付提前还款本金金额千分之五的补偿费。

4

（三）　借款利率

本合同项下的借款年利率为 7.5%。

甲乙双方一致同意，乙方指定【新疆骑士联盟股权投资有限公司】作为本项目的财务顾问与甲方另行签署《财务顾问协议》并向甲方收取服务费。

（四）　利息结算日（以下简称"结算日"）：

结算日为每年的 3 月 15 日、6 月 15 日、9 月 15 日、12 月 15 日和甲方归还借款本金之日。

（五）　利息支付日（以下简称"支付日"）

若结算日为工作日，则支付日和结算日为同一日；若结算日为非工作日，则支付日为结算日后第一个工作日。

（六）　计息

1、　本合同项下的借款按日计息，日利率 = 年利率/365。

2、　借款利息的计算公式为：

借款利息 = 借款的本金余额×借款起始日起至借款人占用该笔借款金额的最后占用日之间的实际天数×日利率。

在借款期限内，借款的本金余额发生变化的，应分段计算并累计相加。

（七）　罚息

若甲方逾期偿还借款，债权人有权加计每日万分之五的罚息，直至该违约行为或情况不存在为止。

第四条　借款的发放

（一）发放借款的前提条件

除乙方全部或部分放弃外，只有甲方持续满足下列前提条件，乙方才有义务代理发放借款：

1、　本合同已依法生效且持续有效；

2、　甲方、乙方、懒财科技已签署附件一《委托管理暨融资合作协议》

4

5

并签署关于标的权益的交割证明函；

3、　甲方没有发生本合同及《委托管理暨融资合作协议》所约定的任一违约事项；

4、　标的权益未发生可能导致托管安排无法实施的重大不利变化；

5、　如经乙方同意，甲方拟委托其他代为收取借款资金和支付委托认购款项，相关代收代付协议已签署并生效；

6、　甲方（或甲方指定的代收代付资金方，如适用）已在懒财网合作机构开立资金存管账户。

7、　相关担保方/增信方就本协议下借款的《保证合同》、《回购担保合同》已签署生效。

（二）乙方需在上述借款发放前提条件满足之日（不含该日）起三个工作日内，将本合同项下借款金额（扣除约定的平台服务费用后，如适用）代理相关债权人发放至甲方在懒财网合作银行开立的资金存管账户。前述划转完成后，乙方履行完毕代理发放借款义务。

**第五条　还款**

（一）在托管安排正常存续、借款合同正常履行的情况下，甲方将借款本息偿还至如下账户（以下简称"还款账户"）：

　　　账户名：北京懒财信息科技有限公司

　　　账　号：8000 0023 2765

　　　开户行：上海华瑞银行股份有限公司

（二）在乙方按本合同第二条第（二）款约定宣布借款立即到期情况下，甲方应按乙方通知将借款本金、应付利息及任何按约定应付的其他款项支付至还款账户中，用于实现借款的全部清偿。甲方应于接到乙方通知之日起十五日内支付前述款项。

（三）自愿提前还款：

1、　甲方有权提前偿还全部或部分借款。

2、 如标的权益的借款方提前还款，则各方同意借款提前到期，乙方将所得对价用于向债权人支付本金。如有剩余，扣除应由甲方负担的费用后向甲方返还；如不足以覆盖甲方应付金额，甲方按乙方通知要求补足。

**第六条　　偿债保障机制**

1、 为保障甲方按时、足额还款，甲方将标的权益全权委托乙方管理。乙方为出借人债权实现提供偿债保障服务，乙方具体权限和可采取的措施按照附件一《委托管理暨融资合作协议》执行。

2、 如甲方于借款到期日（包括自然到期和提前到期）或利息支付日未能偿还本金和/或利息，乙方有权于次日宣布终止权益托管安排，要求担保方履行担保义务、要求赎回义务人立即赎回标的权益，或自行处分标的权益将处分所得用于向债权人偿付，及采取法律法规允许的其他救济措施。

**第七条　　后续债权转让**

甲方知悉并认可，本协议下债权将会在懒财网的网络投资人间进行转让，并在懒财网系统对债权转让进行登记。甲方有权向乙方提出查询请求，有权知悉截至某一时点最终实益债权人的名单和债权份额。

各方确认在保障甲方知情权的前提下，鉴于交易特殊性和便利各方的考虑，后续债权转让在懒财网系统中保存供甲方随时查阅的记录即视为向甲方发出书面债权转让通知。

**第八条　　甲方的权利和义务**

（一）有权要求乙方按照合同约定发放借款。

（二）按照本合同的约定提款并足额清偿借款本息，承担本合同约定的各项费用，包括但不限于公证、鉴定、评估、登记等事项的费用（如有）。

（三）促使甲方保证维持本合同项下标的权益托管安排的真实、合法、有效和可执行。

（四）甲方为法人的，变更住所、通讯地址、营业范围、法定代表人等工商登记

事项的，应在有关事项变更后三日内书面通知乙方。

（五）遵守本合同的其他规定。

第九条　乙方的权利、义务

（一）按照本合同的约定代理发放借款，按照出借人授权、为出借人利益代理出借人集中管理债权并与甲方沟通联络，但乙方并非债权债务关系的一方或担保方。

（二）乙方托管服务及费用及收取方式：乙方受托管理标的权益和履行偿债保障职责，并有权收取托管服务费用，具体按照《委托管理暨融资服务协议》执行。

（三）遵守本合同规定的其他义务。

第十条　甲方声明与承诺

甲方向乙方做出如下的声明与承诺，乙方可依赖该等声明与承诺发放本合同项下的借款：

（一）甲方签署与履行本合同项下的义务符合法律、行政法规、规章和甲方章程或内部组织文件的规定，且已获得公司内部有权机构及/或国家有权机关的批准及合法授权。

（二）甲方提供了真实、准确、完整的用户信息及融资信息；

（三）甲方如实提供了在所有网络借贷信息中介机构未偿还借款信息；

（四）甲方保证融资项目真实、合法，并按照约定用途使用借贷资金，不用于出借及高风险投资等其他目的；

（五）按照约定向乙方如实报告影响或可能影响出借人权益的重大信息；

（六）确认自身具有与借款金额相匹配的还款能力并按照合同约定还款。

第十一条　违约责任

（一）任何一方违反本合同的约定，均应向守约方承担违约责任，并赔偿因其违约给对方造成的直接损失。

（二）如甲方到期未偿还借款，则执行担保措施（如有），及按附件一《委托管

理暨融资合作协议》约定执行偿债保障措施。

**第十二条　合同的变更、转让、解除或终止**

（一）本合同签署后，任何一方不得擅自变更和解除本合同。

（二）本合同的变更需经各方协商一致并达成书面协议。

（三）乙方有权将其在本合同项下的权利、义务转让给第三方,但必须通知甲方；未经其他方同意,甲方不得将其在本合同项下的权利、义务转让给第三方。

（四）本合同在以下情况下可被解除或终止：

  1、　经本协议各方协商一致达成书面协议；

  2、　一方严重违反本合同，或违反本合同并经他方要求后在三日内仍然未予以纠正，他方有权解除或终止合同；

  3、　根据有关法律规定或本合同的其他规定解除或终止。

**第十三条　法律适用及争议的解决**

（一）本合同适用中华人民共和国法律。

（二）本合同在履行过程中发生争议，可以通过协商解决，协商不成，任何一方均可向北京仲裁委员会提请仲裁。

**第十四条　其他条款**

（一）费用的承担

  下列费用由甲方承担：

  1、　本合同有关的登记、保管、鉴定、公证等费用（如有）；

  2、　乙方为实现债权而实际发生的一切费用（包括但不限于诉讼费、仲裁费、财产保全费、差旅费、执行费、评估费、拍卖费、公证费、送达费、公告费、律师费等，如有）均由甲方承担。

（二）通知事项

  1、除非本合同另有约定，本合同项下各方之间的一切通知均可通过传真、邮递、快递，或各方同意的其他方式送达以下地址：

甲方：乐视体育文化产业发展（北京）有限公司

　　　地址：北京市朝阳区酒仙桥北路 7 号 电通创意广场 13 号楼

　　　电话：010-50963767

　　　传真：

乙方：　上海懒财资产管理有限公司

　　　地址：北京市朝阳区大屯路东路 317 号金泉时代大厦 3 单元 2210 室

　　　邮编：100106

　　　电话：（010）84874006

　　　传真：（010）84874586

　　2、一方的通讯地址或联系方式如发生变动，应立即书面通知他方，因未及时通知而造成的损失由通讯地址或联系方式变动方自行承担。

（三）权利保留

　　　一方在本合同项下的权利并不影响和排除其根据法律、法规和其它合同所享有的任何权利。任何对违约或延误行为施以任何宽容、宽限、优惠或延缓行使本合同项下的任何权利，均不能视为对本合同项下权利、权益的放弃或对任何违反本合同行为的许可或认可，也不限制、阻止和妨碍对该权利的继续行使或对其任何其它权利的行使，也不因此导致一方对另一方承担义务和责任。

（四）本合同自各方法定代表人或授权代表人签字或加盖人名章并加盖公章之日起生效。

（五）本合同未尽事宜，适用《委托管理暨融资合作协议》相关约定；此外，各方可另行达成书面协议，作为本合同附件。本合同的任何附件、修改或补充均构成本合同不可分割的组成部分，与本合同具有同等法律效力。

（六）本合同一式贰份，各方各执壹份。各份文本具有同等法律效力。

　　　甲方已阅读本合同所有条款。甲方确认乙方已经就本合同做了相应的条款说明。甲方对本合同条款的含义及相应的法律后果已全部通晓并充分理解。

（以下无正文）

9

10

本页无正文，为编号为 XYJK-2016003-01-JKHT 的《借款合同》签章页

甲方：乐视体育文化产业发展（北京）有限公司（公章）



法定代表人或授权代表人（签字或签章）

2016 年 12 月 1 日

乙方：上海懒财资产管理有限公司（公章）



法定代表人或授权代表人（签字或签章）

2016 年 12月 1 日



11

[logo:] lancai.cn

# Loan Contract

Contract No.: XYJK-2016003-01-JKHT

December 1, 2016

[seal:] [illegible]
[seal:] [illegible]

12

# Table of Contents

Article I.          Amount of the Loan ........................................................................ 2
Article II.         Term of the Loan .......................................................................... 3
(I)                 The term of the loan as agreed herein shall be 12 months................... 3
(III)               Acceleration of the Loan................................................................. 3
Article III.        Use of the Loan and Payment Method of the Principal and Interest ................... 4
(I)                 Use of the Loan: The loan shall be used to supplement Party A's working capital in its day-to-day operations.......................................................... 4
(III)               Interest Rate of the Loan.................................................................. 4
(V)                 Interest Payment Date (hereinafter referred to as "**Payment Date**") ................. 4
(VII)               Penalty Interest ............................................................................ 5
Article IV.         Disbursal of the Loan...................................................................... 5
Article V.          Repayment ................................................................................... 6
Article VI.         Debt Repayment Guarantee Mechanism ............................................ 7
Article VII.        Subsequent Transfer of Creditor's Rights .......................................... 7
Article VIII.       Rights and Obligations of Party A..................................................... 7
Article IX.         Rights and Obligations of Party B ..................................................... 8
Article X.          Representations and Warranties of Party A ......................................... 8
Article XI.         Liabilities for Breach of Contract ..................................................... 9
Article XII.        Modification, Assignment, Rescission, or Termination of the Contract ............ 9
Article XIII.       Governing Laws and Dispute Resolution ........................................... 10
Article XIV.        Miscellaneous ............................................................................. 10

[seal:] [illegible]
[seal:] [illegible]

1

**13**

Loan Contract

Contract No.: XYJK-2016003-01-JKHT

Borrower (Party A): LeTV Sports Culture Develop (Beijing) Co., Ltd.

Trustee of Assets/Lending Agent (Party B): Shanghai Lancai Assets Management Co., Ltd.

**Whereas:**

1. Party A intends to raise funds by borrowing money through Lancai.cn (domain name: www.Lancai.cn, hereinafter referred to as "**Lancai.cn**"), the Internet financial information service platform operated by Beijing Lancai Information Technology Co., Ltd. ("**Lancai Technology**").

2. Party B agrees to execute the No. **XYJK-2016003-02-WTGL** Entrusted Management and Financing Cooperation Agreement (as attached hereto in Annex I) with Party A and Lancai Technology, and agrees to enter into a discretionary trust with Party A thereunder in connection with certain rights to yields (hereinafter referred to as the "**Underlying Interests**") and for Lancai Technology to provide the loan to Party A based on such a trust. Party B, as the trustee of assets, will perform such functions as making repayment in the capacity of an agent and management of creditor's rights and provide the debt repayment guarantee service as agreed in the Entrusted Management and Financing Cooperation Agreement.

3. To facilitate the debt investment by the users of Lancai.cn, Party B will serve as the lending agent / signatory of the loan contract(s). By providing information services, Lancai.cn will assist the online investors (hereinafter referred to as the "**Online Investors**") who are the users of Lancai.cn, to enter into the creditors-debtor relationship with Party A.

4. Now, therefore, the Parties has entered into this Contract on the matters in connection with Party B's issuing loans to Party A as an agent under the trust for the Underlying Interests for mutual compliance.

**Article I.       Amount of the Loan**

The amount of the loan to be issued by Party B on behalf of the certain users of Lancai.cn shall not exceed RMB (hereinafter inclusive) fifty million (RMB 50,000,000.00). The actual loan amount, the details of the initial borrower(s), and the commencement date shall be subject to the

[seal:] [illegible]
[seal:] [illegible]

2

14

electronic transaction records kept in the fund depository system of the cooperative institution of Lancai.cn.

**Article II.      Term of the Loan**

(I)      The term of the loan as agreed herein shall be 12 months.

(II)     Where Party A anticipates to be unable to repay the principal or interest of the current period, it shall notify Party B of the same at least ten days prior to the repayment due date or one business day after knowing the incident that may result in its inability to make repayment as scheduled, so that the Parties may resolve the potential risk of debt default in a legal and compliant manner through consultation.

(III)    Acceleration of the Loan

Party A shall prepay the entire loan upon the occurrence of any of the following circumstances: (1) where Party A refuses to provide the necessary information or assistance in relation to any tampered or forged materials (including but not limited to,  the Broadcasting Right Contract, the materials evidencing Party A's legitimate entitlement to the Underlying Interests) that it has provided to Party B for the establishment of the trust for the interest(s), or refuses to cooperate in terms of the information right to which Party B is entitled as agreed; (2) where Party A, the guarantor (if any, hereinafter inclusive), or the repurchase obligor (if any, hereinafter inclusive) is subject to the investigation by regulators due to any suspected major illegal operating activities or subject to the inspection by regulators or put on file for investigation  due to any suspected breach of law or crime; (3) where Party A, the guarantor, or the repurchase obligor defaults on any major debts, experiences financial deterioration, or disappears, and in the event of any other circumstance materially impacting the performance of the repayment obligations by Party A and/or the performance of the guarantee obligations by the guarantor or the repurchase obligor that seriously jeopardize the investment security of the users of Lancai.cn, or where the repurchase obligor breaches the repurchase agreement; or (4) where Party A requests to terminate the trust in breach of the provisions of the Entrusted Management and Financing Cooperation Agreement, or where the relevant Entrusted Management and Financing Cooperation Agreement is terminated, voided, rescinded, or suspended for any reason.

After the acceleration of the maturity of the loan is triggered, Party B has the right to notify Party A that the loan becomes due immediately, and Party A shall repay the loan pursuant to the notice of Party B immediately. Where Party A fails to make timely and full repayment of the loan principal and interest pursuant to such notice, Party B has the right to implement the debt repayment guarantee measures with the assets in trust pursuant to the Entrusted

[seal:] [illegible]
[seal:] [illegible]

3

**15**

Management and Financing Cooperation Agreement, and to claim other remedies as provided by laws.

**Article III.    Use of the Loan and Payment Method of the Principal and Interest**

(I)      Use of the Loan: The loan shall be used to supplement Party A's working capital in its day-to-day operations.

(II)     Repayment of the Principal: The principal shall be repaid in one lump sum on the expiry date of 12 months after the issuance of the loan. Party A may prepay the loan provided that a written notice shall be given to Party B ten business days in advance; otherwise, Party A shall pay to Party B an additional compensation fee amounting to 0.5 percent of the prepaid principal.

(III)    Interest Rate of the Loan

The annual interest rate of the loan hereunder shall be 7.5% per annum.

Party A and Party B unanimously agree that Party B shall appoint [Xinjiang Knight Union Equity Investment Co., Ltd.] as the financial advisor for this project to execute a separate Financial Advisory Agreement with Party A and collect service fees from Party A.

(IV)    Interest Settlement Date (hereinafter referred to as "**Settlement Date**")

The Settlement Dates shall be March 15, June 15, September 15, December 15 of each year, and the date on which Party A repays the principal.

(V)     Interest Payment Date (hereinafter referred to as "**Payment Date**")

Where the Settlement Date falls on a business day, the Payment Date shall be the same as the Settlement Date; where the Settlement Date falls on any day other than a business day, the Payment Date shall be the first business day after the Settlement Date.

(VI)    Interest Calculation

1.   The interest of the loan hereunder shall be calculated on a daily basis, where the daily interest rate = the annual interest rate/365.

2.   The formula for the calculation of the loan interest shall be:

[seal:] [illegible]
[seal:] [illegible]

4

16

Interest on the loan= the outstanding balance of the loan principal * the Actual number of days from the commencement date of the loan to the last day on which the borrower occupies the loan * Daily interest rate.

During the term of the loan, the interest shall be calculated on a separate basis and added up where the outstanding balance of the principal of the loan changes.

(VII)   Penalty Interest

Where Party A is overdue in repayment of the loan, the creditors has the right to charge a penalty interest of 0.05 percent per day until such default or circumstance no longer exists.

**Article IV.    Disbursal of the Loan**

(I)     Preconditions for the Disbursal of the loan

Except for Party B's waiver in whole or in part, Party B shall only be obligated to act as an agent for the disbursal of the loan if Party A continues to meet the following preconditions:

1.   The Contract has been legally in force and continues to remain in force according to laws;

2.   Party A, Party B, and Lancai Technology have signed the Entrusted Management and Financing Cooperation Agreement as attached hereto in Annex I and signed the certificate for the closing of the Underlying Interests;

3.   Party A has not done any breach of the provisions as provided in this Contract and the Entrusted Management and Financing Cooperation Agreement;

4.   There is no material adverse changes in the Underlying Interests that may render the implementation of the trust arrangement impracticable;

5.   Where Party A intends to entrust any other party to collect the borrowed funds and pay the entrusted subscription amounts on its behalf with the consent of Party B, the relevant collection and payment agreement shall have been executed and become effective;

6.   Party A (or the party designated by Party A for the collection and payment of funds on its behalf, if applicable) has opened a fund depository account at a cooperative institution of Lancai.cn;

[seal:] [illegible]
[seal:] [illegible]

5

**17**

7. The Guarantee Contract, the Repurchase Guarantee Contract in connection with the loan hereunder have been signed by the relevant guarantor / credit enhancement provider and have become effective.

(II) Party B shall, within three business days from the date on which the aforesaid preconditions for the disbursal of the loan are satisfied (exclusive), disburse the amount of the loan hereunder (after deducting any platform service fee as agreed, if applicable) on behalf of the relevant creditors to the fund depository account opened by Party A at the cooperative bank of Lancai.cn. The performance of Party B's obligation to act as an agent to disburse the loan shall be fulfilled upon the completion of the aforesaid disbursement.

## Article V.    Repayment

(I) Where the trust exists normally, and the Loan Agreement is performed normally, Party A will repay the loan principal and interest to the following account (hereinafter as the "**Repayment Account**"):

| | |
|---|---|
| Account Name: | Beijing Lancai Information Technology Co., Ltd. |
| Account No.: | 800000232765 |
| Bank Name: | Shanghai Huarui Bank Co., Ltd. |

(II) Where Party B announces that the loan becomes due and payable with immediate effect pursuant to the provisions of Article II (II) hereof, Party A shall, in accordance with Party B's notice, pay the loan principal, interest payable, and any other amount payable as agreed to the Repayment Account for the full settlement of the loan. Party A shall pay the aforesaid amount within fifteen days from the date of receipt of the notice from Party B.

(III) Voluntary Prepayment

1. Party A has the right to repay all or part of the loan in advance.

2. In the event of prepayment by the borrower of the Underlying Interests, the Parties agree that the loan shall become due in advance and Party B will use the considerations received to repay the principal to the creditors. If there is any surplus, the amount of the surplus after deducting the expenses to be borne by Party A, shall be returned to Party A; if it is insufficient to cover the amount payable by Party A, Party A shall make up the shortfall in accordance with Party B's notice.

[seal:] [illegible]
[seal:] [illegible]

6

**18**

**Article VI.     Debt Repayment Guarantee Mechanism**

1.  To ensure the timely and full repayment by Party A, Party A shall entrust the Underlying Interests to Party B for a discretionary trust. Party B shall provide the debt repayment guarantee service for the realization of the creditor's rights of the lenders, and Party B's specific authority and measures available shall be as provided in the Entrusted Management and Financing Cooperation Agreement in Annex I.

2.  If Party A fails to repay the principal and/or interest on the due date of the loan (including natural maturity and early maturity) or the interest payment date, Party B shall have the right to announce the termination of the trust of the Underlying Interests on the following day, request the guarantor to perform the guarantee obligation, request the redemption obligor to immediately redeem the Underlying Interests, or dispose the Underlying Interests by itself and use the proceeds to repay the creditors, and take other remedies permitted by laws and regulations.

**Article VII.     Subsequent Transfer of Creditor's Rights**

Party A knows and acknowledges that the creditor's rights hereunder will be transferred among the Online Investors of Lancai.cn, with the transfer of creditor's rights to be registered in the system of Lancai.cn. Party A has the right to put forth inquiry requests to Party B and to know the name list of the ultimate beneficial creditors and their shares of creditor's rights as of a certain point in time.

The Parties confirm that, with the information right of Party A guaranteed, in consideration of the particularities of the transaction and for the convenience of the Parties, a written notice of the transfer of creditor's rights shall be deemed to have been served to Party A where the records of any subsequent transfer of creditor's rights are maintained in the system of Lancai.cn and can be accessed by Party A at any time.

**Article VIII.   Rights and Obligations of Party A**

(I)     Party A shall have the right to request Party B to disburse the loans as agreed in the Contract.

(II)    Make withdrawals and full repayment of the loan principal and interest as agreed herein, bear all the expenses as provided herein, including, without limitation, the costs of notarization, appraisal, assessment, registration, etc. (if any).

[seal:] [illegible]
[seal:] [illegible]

7

**19**

(III)   To prompt Party A to ensure the authenticity, legality, validity, and enforceability of the trust of the Underlying Interests hereunder.

(IV)   Where Party A is a legal person, in the event of any change in its industrial and commercial registration entries such as the domicile, mailing address, business scope, legal representative, etc., it shall notify Party B in writing within three days after the relevant change.

(V)   To comply with the other provisions hereof.

## Article IX.   Rights and Obligations of Party B

(I)   To act as an agent to disburse the loan pursuant to the Contract, to conduct centralized management of the creditor's rights and communicate with Party A pursuant to the authorization of the lenders and for the benefits and on the behalf of the lenders; provided, however, Party B shall not be a party in the credit-debt relationship or the guarantor thereof.

(II)   Party B's Trustee Service, Fees, and Collection Method: Party B is entrusted to manage the Underlying Interests and perform the debt repayment guarantee obligations, and shall have the right to charge trustee service fees, which shall be as provided in the Entrusted Management and Financing Cooperation Agreement specifically.

(III)   To comply with the other provisions hereof.

## Article X.   Representations and Warranties of Party A

Party A hereby makes the following representations and warranties to Party B, and Party B may rely upon such representations and warranties to disburse the loan hereunder:

(I)   Party A's signing and performance of its obligations hereunder are in compliance with the laws, administrative regulations, rules, and provisions of the articles of association or internal organizational documents of Party A, and have been approved and lawfully authorized by the company's internal governing body and/or the competent authorities of the State.

(II)   Party A has provided the true, accurate, and complete user information and financing information;

[seal:] [illegible]
[seal:] [illegible]

(III)    Party A has truthfully provided the information of the outstanding loans with all the Internet lending information intermediaries;

(IV)    Party A undertakes that the financing projects are true and legitimate and that it will use the borrowed funds for the agreed purposes and will not use it for such other purposes as lending and high-risk investment;

(V)    Truthfully report to Party B any material information that affects or may affect the rights of the lenders as agreed;

(VI)    Confirm that it has the repayment ability that matches the loan amount and makes repayment as agreed in the Contract

## Article XI.    Liabilities for Breach of Contract

(I)    Where either Party defaults hereunder, such Party shall bear the liabilities for breach of contract to the non-breaching Party and shall indemnify the non-breaching Party from and against the direct losses caused by its default.

(II)    In the event that Party A fails to repay the loan when due, the guarantee measures (if any) shall be implemented, and the debt repayment guarantee measures as provided in the Entrusted Management and Financing Cooperation Agreement in Annex I shall be implemented.

## Article XII.    Modification, Assignment, Rescission, or Termination of the Contract

(I)    Neither Party may modify or terminate the Contract after the execution hereof.

(II)    Any modification to the Contract shall be made with the written agreement by the Parties reached through consultation.

(III)    Party B shall have the right to assign its rights and obligations hereunder to a third party, provided that Party A must be notified; Party A may not assign its rights or obligations hereunder to any third party without the consent of the other Party.

(IV)    The Contract may be rescinded or terminated under the following circumstances:

1.  With the written agreement by the Parties reached through consultation;

[seal:] [illegible]
[seal:] [illegible]

9

21

2. Where either Party commits any material default hereunder or breaches the Contract which hasn't been cured within three days after being so requested by the other Party, the non-breaching Party shall have the right to rescind or terminate the Contract;

3. The Contract may be rescinded or terminated pursuant to laws or other provisions hereof.

## Article XIII.   Governing Laws and Dispute Resolution

(I)     The Contract shall be governed by the laws of the People's Republic of China.

(II)    Any dispute arising from the performance of the Contract may be resolved through consultation, failing which either Party may bring such dispute for arbitration by the Beijing Arbitration Commission.

## Article XIV.   Miscellaneous

(I)     Assumption of Expenses

The following expenses shall be borne by Party A:

1. The registration, trust, appraisal, notary expenses (if any) relating to the Contract;

2/ All the expenses actually incurred by Party B for the realization of the creditor's rights (including, without limitation, litigation costs, arbitration costs, property preservation costs, travelling expenses, execution costs, appraisal fees, auction costs, notary fees, service fees, announcement charges, attorney fees, etc., if any) shall be borne by Party A.

[seal:] [illegible]
[seal:] [illegible]

22

(II)    Notice

1.    Unless otherwise provided herein, all the notices hereunder between the Parties may be sent to the following addresses by fax, mail, courier, or such other means as may be agreed upon by the Parties:

Party A:      LeTV Sports Culture Develop (Beijing) Co., Ltd.
Address:     Building No. 13, Diantong Creativity Square, No. 7 Jiuxianqiao N Rd., Chaoyang District, Beijing
Telephone:  010-50963767
Fax:

Party B:      Shanghai Lancai Assets Management Co., Ltd.
Address:     Unit 2210, Block 3, Jinquan Time Building, No. 317 Datun Rd E., Chaoyang District, Beijing
Post Code:   100106
Telephone:  (010) 84874006
Fax:             (010) 84874586

2.    Either Party shall promptly notify the other Party in writing of any changes in its mailing address or contact information; any losses caused by the failure of such prompt notification shall be borne by the Party whose mailing address or contact information has changed.

(III)    Reservation of Rights

The rights of a Party hereunder shall not prejudice or preclude any other rights it may have under laws, regulations, and other contracts. Neither any tolerance, indulgence, or forbearance granted in connection with any breach or delay, nor any delay in exercising any rights hereunder shall be deemed as the waiver of the rights and interests hereunder or as the permission or acknowledgment of any breach hereof, nor shall it operate to limit, prevent, or preclude any continuous exercising of such right or the exercising of any other rights, or impose any obligation or liability on one Party to another.

(IV)    The Contract shall become effective upon being executed by or affixed with the personal seal of the legal representative or authorized representative and affixed with the company seal of both Parties.

(V)    Any matters not covered herein shall be governed by the relevant provisions of the Entrusted Management and Financing Cooperation Agreement; furthermore, both Parties

[seal:] [illegible]
[seal:] [illegible]

11

23

may enter into separate written agreements as the attachments hereto. Any attachment, modification, or supplement to the Contract shall be an integral part hereof, with the same legal force and effect.

(VI)   The Contract shall be made in two original copies, with one copy to be held by each Party, each of which shall have the same legal force and effect.

Party A has read all the provisions hereof. Party A acknowledges that Party B has made the relevant explanations of the provisions hereof. Party A has full knowledge and understanding of the meanings and the corresponding legal consequences of the provisions hereof.

(The remaining of the page is left blank intentionally)

[seal:] [illegible]
[seal:] [illegible]

12

24

This page is reserved for the signature page of the No. XYJK-2016003-01-JKHT Loan Contract with no main content

Party A: LeTV Sports Culture Develop (Beijing) Co., Limited (corporate seal)

[seal:] Seal of LeTV Sports Culture Develop (Beijing) Co., Ltd.

Legal representative/authorized representative (signature or seal)

[seal:] Personal seal of Gao Fei

[hw:] *December 1*, 2016

Party B: Shanghai Lancai Asset Management Co., Ltd. (corporate seal)

[seal:] Corporate seal of Shanghai Lancai Asset Management Co., Ltd.

Legal representative/authorized representative (signature or seal)

[seal:] Personal seal of Huang Zhe

[hw:] *December 1*, 2016

[seal:] [illegible]
[seal:] [illegible]

13

25



TRANSPERFECT

# CERTIFICATION

TransPerfect is globally certified under the standards ISO 9001:2015 and ISO 17100:2015. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

| | |
|---|---|
| File Name(s): | 01-借款合同（乐体-懒财） |
| Source Language(s): | Simplified Chinese (CN) |
| Target Language(s): | English (US) |

*Authorized Signature:*



Name:   *Sylvia Lau*

Title:   *Project Assistant*

Date:   *27 Nov 2018*