# EXHIBIT 3

合同编号：XYJK-2016003-05-HGDB

CERTIFIED TRUE COPY

TO SZE CHING
中国法律职业资格证
A20108100000011

回 购 担 保 协 议

合同签订地：北京



甲方：上海懒财资产管理有限公司

乙方：乙方一：乐视控股（北京）有限公司

乙方二：贾跃亭

丙方：乐视体育文化产业发展（北京）有限公司

鉴于：

1、丙方已自 LETV SPORTS CULTURE DEVELOP（HONG KONG）Co. Limited 受让标的收益权（定义见《收益权凭证》），且丙方与甲方于 2016 年 __12__ 月 __1__ 日签订编号为 XYJK-2016003-01-JKHT 的《借款合同》（包括其附件《委托管理暨融资服务合作协议》），丙方将标的收益权再转让予甲方并设立托管安排，由甲方为丙方提供短期流动性借款；

2、乙方一同意并承诺，为以上丙方与甲方之间的借款承担不可撤销的连带保证责任和回购义务；乙方二同意并承诺以个人身份为乙方一上述义务承担无限连带责任；

3、在乙方（包括乙方一和乙方二，下同）同意并承诺为丙方提

合同编号：XYJK-2016003-05-HGDB

供回购和担保的前提下，甲方同意为丙方提供流动性借款；

4、为确保丙方按甲方与丙方签订的《借款合同》的约定偿还甲方的借款，乙方同意对丙方于《借款合同》项下义务（包括但不限于丙方不履行或履行不符合《借款合同》约定）向甲方提供不可撤销连带责任担保。


根据《中华人民共和国合同法》和有关法律法规之规定，经协议各方公平、自愿、平等协商，各方一致同意按以下条款签订本协议。

一、有关用词定义

1、回购：指当满足本协议约定的条件时，甲方向乙方发出书面《回购通知书》，乙方应在收到甲方发出的回购标的收益权通知之日起十日内依约向甲方支付回购价款，履行回购义务。

2、权益及分销权：丙方与 NBA Hong Kong Operations Limited 签订，授权赛事包括：2016/17 赛季 – 2020/21 赛季 NBA 常规赛（平均每天 2 场）、全部季后赛和总决赛赛事、全部全明星周末内容、季前赛（每赛季最多 14 场）以及 VR 和 AR 节目（每赛季至少一场赛事由乐视体育现场制作，在 NBA 官方协助下）。授权平台为 OTT 服务、PC 端和移动端；授权地域为香港和澳门（香港可开发商业场所、住宅和个人用户；澳门仅限开发住宅和个人用户） 。此合约前三年，NBA 保留授权给一家免费第三方平台每周直播一场 NBA 比赛（不包含全明星赛、分区决赛和总决赛）的权利，此比赛可点播，但这场比赛需是当周的第二级别选择赛事。

此版权原值 112,000,000.00 美元，摊销期限自 2016 年 10 月至 2021 年 6 月共计 57 个月，截至 2016 年 10 月 31 日摊销明细如下：

| 原值（美元） | 摊销年限（月） | 月摊销额（美元） | 累计摊销额（美元） | 净值（美元） |
|---|---|---|---|---|
| 112,000,000.00 | 57.00 | 1,964,912.28 | 1,964,912.28 | 110,035,087.72 |

3、回购价款：丙方尚未清偿的所有借款、《借款合同》项下尚未清偿的本金、利息、罚息、逾期利息、复利和丙方应付违约金、甲方实现债权的其它费用等（包括但不限于律师费、诉讼费、差旅费）；货物的所有权或价值遭到的侵害或损失。

**二、担保方式、期间和范围**

1、担保方式

（1）乙方提供的担保方式为连带责任担保，当丙方没有履行或者没有全部履行其在《借款合同》下债务时，甲方有权直接要求乙方承担担保责任。

（2）如果有其他保证人对《借款合同》债权提供担保的，担保人之间关系为连带共同担保。

（3）如果存在其它担保方式对《借款合同》债权提供担保的，甲方要求乙方承担担保责任时，乙方必须履行担保义务，不得以存在其他担保方式为由对债权进行抗辩。

（4）如果全部或部分借款由丙方清偿以后，发生丙方破产被清算或者其它诉讼、仲裁事项，而根据法律规定或者依据有效判决、裁

定书该全部或部分清偿无效，乙方仍应对该全部或部分应付款项承担担保义务。

2、担保期间

（1）丙方履行《借款合同》项下债务期限为 12 个月，具体起始日期和终止日期由《借款合同》确定。

（2）担保期间为两年，自被担保债务清偿期限届满之日起开始起算。

3、乙方担保的范围是丙方没有按照《借款合同》的约定履行义务，给甲方造成的损失，包括：

（1）丙方未按照《借款合同》的约定按时、足额缴纳本金、利息、罚息、保险费、保证金、赔偿金以及丙方应支付的其它费用；

（2）权益及分销权的所有权或价值遭到损害。

（3）甲方为实现以上权益而支出的全部费用，包括但不限于律师费、诉讼费、差旅费等。


三、回购方式

1、当回购条件成立时，甲方向乙方发出书面《回购通知书》。自《回购通知书》发出之日起的十日内由乙方向甲方一次性支付全部回购价款。

2、回购条件：

出现《借款合同》规定的借款到期事由（包括正常到期和提前到期）之时，具体按借款合同约定，包括但不限于：丙方延迟支付利息

或本金，而使得甲方债权到期未能及时收回，丙方根据约定向甲方支付罚息后、逾期 15 日仍未履行或者未全部履行的；丙方可能被依法宣告破产、解散、清算的。满足前述任一情形，回购条件即成立。回购条件的成立与协议所指权益及分销权的状况如何无关（包括但不限于丢失、毁损等）。

3、当乙方履行完回购义务后，甲方应将权益及分销权相应权益转让(包括所有权)给乙方一。双方明确同意：鉴于权益及分销权在丙方的实际占有控制下，而甲方又无法对权益及分销权实施有效监控，甲方不向乙方作实物交付，甲方仅以向乙方交付权益及分销权债权转让通知和配合乙方办理转移手续的形式向乙方交付权益及分销权。甲方应配合乙方办理本协议项下权益及分销权回购的全部手续并承担标的收益权变更产生的全部税费、手续费。甲方持有的《收益权凭证》相应失效。

4、乙方履行完回购义务后，甲方不得对权益及分销权进行任何限制或妨害乙丙方行使权益及分销权，否则应赔偿乙丙方所受经济损失。

### 四、各方的权利和义务

1、当满足本协议约定的条件时，甲方应及时向乙方发出《回购通知书》；

2、甲方收齐乙方的回购款项后 5 个工作日内向乙方交付权益及分销权债权转让通知，并配合乙方办理手续；

3、担保期间内，甲方有权对乙方的资金和财产状况进行监督，乙方有义务进行必要的配合。

4、对于丙方延迟付款，而使得甲方与丙方之间的债权到期未能及时收回的，甲方对丙方处以罚息，且丙方继续承担付款责任或根据本协议由乙方履行回购责任；

5、在回购条件成就时，乙方须承担起担保责任，负责向甲方支付价款，回购权益及分销权；

6、乙方对丙方资料的真实性、完整性，权益及分销权的真实性负责，若因上述原因导致甲方损失的，由乙方承担全部赔偿责任；

7、乙方应督促丙方向甲方按《借款合同》的约定向甲方支付利息及本金并协助催收。对于丙方若出现违约行为，乙方承担第一回购担保责任并无条件回购；

8、本合同有效期内，发生下列情况之一，乙方应及时书面通知甲方：

（1）乙方出售、赠与、出租、出借、转移或以其他方式处分其主要资产；

（2）乙方的财务状况严重恶化、或借贷高利贷尚未清偿、或卷入重大的诉讼、仲裁、刑事及其他法律纠纷；

（3）乙方的重大资产有可能被查封、扣押、冻结或强制执行或被采取查封、扣押等财产保全或执行措施的，或因其他原因可能损毁、灭失；

（4）乙方可能被依法宣告破产、解散、清算；

（5）乙方在中国人民银行、中国银行业监督管理委员会或中国银行业协会设立或批准设立的信用数据库中出现不良信用记录；

（6）发生其他足以影响其清偿债务能力或可能丧失担保能力的情况。

9、乙方承诺在通讯及联系地址发生变更时3天内及时书面通知甲方，乙方提供送达地址不准确或未及时提供变更后的地址，导致相关文书无法送达或及时送达的，乙方自行承担由此产生的法律后果。

## 六、保密

各方对本协议履行过程中所接触或获知的对方的任何商业信息均有保密义务，除非有明显的证据证明该等信息属于公知信息或者事先得到对方的书面授权。该等保密义务在本合同终止后仍然继续有效。任一方因违反该等义务而给对方造成损失的，均应当赔偿对方的相应损失。

## 七、违约责任

乙方不按照本协议约定承担回购责任、支付回购款或者违反本协议约定的其它义务的，每天应向甲方支付应付逾期金额__0.05__%的违约金，因此给甲方造成经济损失且违约金数额不足以弥补所受损失的，应赔偿甲方的实际经济损失包括债权、利息、违约金、赔偿金以及实现债权的合理费用（包括公证、评估、鉴定、拍卖、诉讼或仲裁、送达、财产保全、执行、律师代理、差旅费等合理费用）。

八、特别声明

1、乙方清楚的知悉甲方与丙方合作背景，并确认对丙方资产、债务、信用等情况、是否具备签订主协议主体资格和权限已充分了解。

2、乙方完全了解《借款合同》及附件的内容，乙方签署本协议时，已经取得乙方董事会、股东会的书面同意。

九、 合同变更

1、 在本合同有效期间，甲、乙、丙任何一方均不得擅自变更或解除本合同。需变更时，须经各方协商同意，达成书面协议。

2 、在本合同有效期间，如果甲方与丙方协商变更《借款合同》条款（包括权益及分销权金额、还款方式、还款计划、债务履行期限的起始日或截止日等），未加重丙方债务的，乙方同意仍由其以回购方式对变更后的《借款合同》项下的借款、本金、利息、逾期利息和丙方应付违约金承担连带担保责任。若甲方与丙方协议变更主合同加重丙方的债务的，除另有约定外，乙方仅就变更前的《借款合同》项下的债务承担连带担保责任。

3、 尽管有上述约定，本合同有效期内，因国家法律、法规及银监会、人民银行等机构有关规定调整或变化且适用于《借款合同》，包括利率调整等，导致《借款合同》变更的，乙方仍应当按本合同约定继续承担担保责任。

十、合同终止

1、在借款期限内，在甲方审批同意的情况下，丙方提前还款终止《借款合同》。

2、乙方履行回购承诺；

3、借款期届满，丙方偿清所有应付借款款项未出现违约情形的。

十一、其它

1、本协议自甲、乙、丙三方签字及盖章之日起生效。

2、本协议一式八份，各方各执二份，具有同等法律效力。

3、凡当事人之间因本协议发生的或与其有关的任何争议，应协商解决。协商不成的，应提交北京仲裁委员会仲裁，按照申请时该会有效的仲裁规则进行仲裁。仲裁是终局的，对各方均有约束力。

4、三方在协议履行过程中向对方发出或者提供的所有通知、往来文件、文书（包括司法或仲裁文书）、资料等，均以本协议所列明的地址、传真、电子邮件送达。一方如果迁址、变更电话或变更指定联络人，应当在变更之日起5日内以书面方式通知另一方；未履行书面通知义务的，一方按原地址、原指定联络人邮寄相关材料或通知相关信息即视为已履行送达义务。当面交付上述材料的，在交付之时视为送达；以邮寄、短信、电邮方式交付的，寄出、发出或者投邮之日即视为送达。

合同编号：XYJK-2016003-05-HGDB

附件：

1、《借款合同》（编号：XYJK-2016003-01-JKHT）；

2、《回购通知书》；

（以下无正文，为签字盖章部分）

甲方 ： 上海懒财资产管理有限公司（公章）

　　　　法定代表人/授权代表人（签字或签章）



乙方一 ： 乐视控股（北京）有限公司（公章）

　　　　　法定代表人/授权代表人（签字或签章）



乙方二 ： _____（亲笔签名）

　　　　　　（贾跃亭）



丙方 ： 乐视体育文化产业发展（北京）有限公司（公章）

　　　　法定代表人/授权代表人（签字或签章）

日期：2016 年_12__月_1_日



# CERTIFICATION

TransPerfect is globally certified under the standards ISO 9001:2015 and ISO 17100:2015. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

File Name(s):          05-回购担保协议

Source Language(s):    Simplified Chinese (CN)

Target Language(s):    English (US)

Authorized Signature:

Name:   *Sylvia Lau*

Title:   *Project Assistant*

Date:   *27 Nov 2018*

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

# Repurchase Guarantee Agreement

**Contract signed in: Beijing**

Party A:    Shanghai Lancai Asset Management Co., Ltd.

Party B:    Party B-1: LeTV Holdings (Beijing) Co., Ltd.

　　　　　 Party B-2: Jia Yueting

Party C:    LeTV Sports Culture Develop (Beijing) Co., Limited

WHEREAS:

　　1. Party C has obtained the right to receive the revenue of the underlying interests (as defined in the Certificate of Revenue Rights) from LETV SPORTS CULTURE DEVELOP (HONG KONG) Co. Limited, and Party C and Party A entered into the Loan Contract on <u>December 1</u>, 2016 (No. XYJK-2016003-01-JKHT) (including its annex "Entrusted Management and Financing Services Cooperation Agreement"), and Party C has reassigned the right to receive the revenue of the underlying interests to Party A and set up a trust in which Party A provides the short-term liquidity loans to Party C;

　　2. Party B-1 agrees and undertakes to assume irrevocable joint and several guarantee liability and repurchase obligations for the aforesaid loan provided to Party C by Party A; Party B-2 agrees and undertakes to assume in his personal capacity the unlimited joint and several liability for Party B-1's foregoing obligations;

　　3. Party A agrees to provide liquidity loans to Party C conditional upon that Party B (including Party B-1 and Party B-2, similarly hereinafter) shall agree and undertake to fulfill the repurchase and provide guarantee for Party C;

　　4. In order to ensure that Party C repays the loans granted by Party A as agreed in the Loan Contract between Party A and Party C, Party B agrees to provide an irrevocable joint and several guarantee in favor of Party A for Party C's obligations under the Loan Contract (including but not limited those arising from Party C's non-performance of or non-compliance with the Loan Contract).

[seal:] [illegible]

[seal:] [illegible]

[seal:] [illegible]

NOW IT IS HEREBY AGREED as follows through negotiation on the fair, voluntary and equal basis in accordance with the *Contract Law of the People's Republic of China* and relevant laws and regulations:

### I. Definitions

1. "Repurchase": it means that when the conditions stipulated in this agreement are met, Party A shall issue a written Repurchase Notice to Party B, and Party B shall, within ten days from the date of receiving such notice from Party A requesting the repurchase of the right to receive the revenue of the underlying interests, pay the Repurchase Money to Party A as agreed to fulfill its repurchase obligation.

2. "Equity and Distribution Rights": Under an agreement, Party C has been licensed by NBA Hong Kong Operations Limited for broadcasting NBA regular seasons (average 2 games per day), all playoffs and Finals, all All-Star weekend events, pre-seasons (up to 14 games per season) and related VR and AR programs (at least one event per season shall be produced by LeTV Sports, with the official assistance of the NBA) in 2016/17 - 2020/21. The platforms covered by the license are OTT service, PC and mobile terminals; the areas covered by the license are Hong Kong and Macao (commercial, residential and individual users allowed in Hong Kong; only residential and individual users allowed in Macao). For the first three years of the agreement, the NBA reserves the right to authorize a free third-party platform to broadcast one NBA game each week (excluding All-Star games, Divisional Finals and Finals).   This game may be made available on demand, provided that the game shall be the second-level selected event in the week.

The original value of the aforesaid royalties US$112,000,000.00 shall be amortized over 57 months commencing from October 2016 to June 2021. The details of the amortization as at October 31, 2016 are as follows:

| Original value (US$) | Amortization period (month) | Monthly amortization amount (US$) | Cumulative amortization amount (US$) | Net value (US$) |
|---|---|---|---|---|
| 112,000,000.00 | 57.00 | 1,964,912.28 | 1,964,912.28 | 110,035,087.72 |

3.   "Repurchase Money": All the outstanding loans owed by Party C, the outstanding principal, interest, penalty interest, overdue interest, compound interest and Party C's liquidated damages under the Loan Contract, and other costs incurred by Party A for the realization of its creditor's rights (including but not limited to attorney fees, litigation costs and travel expenses); and infringement or loss of ownership or value of goods.

[seal:] [illegible]

[seal:] [illegible]

[seal:] [illegible]

## II.  Method, Term and Scope of Guarantee

1.  Method of Guarantee

(1)  Party B shall provide a joint and several guarantee, pursuant to which Party A has the right to directly demand Party B fulfilling the guarantee liability as and when Party C fails to settle the whole or any part of its debts under the Loan Contract.

(2)  In the case of other guarantors providing guarantee for the loan under the Loan Contract, all guarantors shall become liable for the joint and several guarantee.

(3)  In the case of other guarantees provided for the loan under the Loan Contract, Party B must fulfill its guarantee obligations as Party A may demand, and must not lodge a plea against the creditor's rights on the grounds that there are other guarantee methods available.

(4)  Where, after all or any part of the loan is repaid by Party C, the repayment is invalidated in whole or in part according to law or by a judgment or arbitration in force in connection with the liquidation of Party C due to bankruptcy or any other litigation or arbitration, Party B shall still fulfill the guarantee obligations for the whole or such part of the payment due.

2.  Term of Guarantee

(1)  The loan to be granted to Party C under the Loan Contract shall have a term of 12 months, and the specific start date and termination date are subject to the provisions in the Loan Contract.

(2)  The term of guarantee shall be two years, commencing from the expiration date of the guaranteed debt.

3.  Party B shall be liable for the guarantee to indemnify against any losses incurred by Party A arising from Party C's failure to perform its obligations as stipulated in the Loan Contract, including:

(1)  any principal or interest that Party C fails to settle on time or in full as agreed in the Loan Contract, and any penalty interest, insurance premium, security deposit, indemnity and other expenses payable by Party C;

(2)  any damage in ownership or value the interests and Distribution Rights; and

(3)  all expenses incurred by Party A to exercise the aforesaid right, including but not limited to attorney fees, court costs and travel expenses.

[seal:] [illegible]

[seal:] [illegible]

[seal:] [illegible]

Agreement No. XYJK-2016003-05-HGDB

### III.   Repurchase Method

1.   When the repurchase conditions are established, Party A will issue a written Repurchase Notice to Party B. Party B shall pay the full Repurchase Money in a lump sum to Party A within ten days from the date of issuance of the Repurchase Notice.

2.   Repurchase Conditions:

Subject to the provisions of the Loan Agreement, any maturity matter for the loan (including normal maturity and acceleration of maturity) as specified therein is established, including but not limited to: Party C delays payment of any interest or the principal, so that Party A's claim cannot be recovered in time upon its expiration, and Party C shall pay the penalty interest to Party A as agreed but fails to pay it in whole or in part when it becomes overdue for 15 days; and Party C may be declared bankrupt, dissolved or liquidated according to law. If any of the foregoing is satisfied, the repurchase condition is established. The establishment of the repurchase conditions is irrespective of the status of the Usufruct and Distribution Rights (including but not limited to any loss or damage thereof).

3.   Upon fulfillment of the repurchase obligations of Party B, Party A shall transfer the rights and interests under the Usufruct and Distribution Rights (including the ownership) to Party B-1. The parties expressly agree that in view of the fact that Party A is unable to effectively monitor the Usufruct and Distribution Rights which are under actual possession and control by Party C, Party A shall only deliver the Usufruct and Distribution Right in the form of the Notice of Claim Transfer in connection therewith together with assistance to Party B in effecting the transfer procedures, instead of a physical delivery, to Party B. Party A shall assist Party B in effecting all procedures for the repurchase of the Usufruct and Distribution Right as agreed hereunder, and all taxes and fees arising from the transfer of the Usufruct shall be borne by Party A. Upon completion of the procedures, the Usufruct Certificate held by Party A shall become void accordingly.

4.   Upon fulfillment of the repurchase obligations of Party B, Party A shall not restrict or impede Party B and Party C howsoever from exercising the Usufruct and Distribution Rights, or otherwise shall indemnify Party B and C against any resultant financial loss.

[seal:] [illegible]

[seal:] [illegible]

[seal:] [illegible]

### IV.    Rights and Obligations of the Parties

1.    When the conditions provided herein are satisfied, Party A shall issue a written Repurchase Notice to Party B in time;

2.    Party A shall, within 5 business days after receiving Repurchase Money in full from Party B, deliver to Party B the Notice of Claim Transfer in connection with the Usufruct and Distribution Rights, and assist Party B in effecting the transfer procedures;

3.    During the term of guarantee, Party A has the right to supervise Party B's funding and property status, for which Party B has the obligation to provide assistance as necessary;

4.    In case of a delay of Party C in repayment that results in a failure of Party A in recovering its claims from Party C in time upon maturity, Party A has the right to impose a penalty interest on Party C, and Party C shall remain liable for repayment or otherwise Party B shall fulfill the repurchase obligations hereunder;

5.    Upon establishment of the repurchase conditions, Party B shall fulfill its guarantee obligations for paying Party A the Repurchase Money in order to repurchase the Usufruct and Distribution Rights;

6.    Party B is responsible for the truthfulness and completeness of the information provided by Party C and the authenticity of the Usufruct and Distribution Rights, and shall be liable for all damages incurred by Party A in connection therewith;

7.    Party B shall urge Party C to pay interest and principal to Party A as agreed in the Loan Contract and assist in the collection thereof. In case of a breach of contract by Party C, Party B shall fulfill the repurchase guarantee liability in the first instance to effect the repurchase unconditionally;

[seal:] [illegible]

[seal:] [illegible]

[seal:] [illegible]

8. During the validity period hereof, Party B shall issue a written notice to Party A promptly in any of the following circumstances:

(1) Party B sells, donates, leases, lends, transfers or otherwise disposes of its major assets;

(2) Party B's financial position has seriously deteriorated or has an outstanding amount of any usury or becomes involved in any major litigation, arbitration, criminal or other legal disputes;

(3) Party B's major assets may be seized, attached, frozen or enforced, or may become a subject to property preservation or enforcement measures such as seizure or attachment, or may be damaged or lost due to other reasons;

(4) Party B may be declared bankrupt, dissolved or liquidated according to law;

(5) Party B has a bad credit record in the credit database established or approved by the People's Bank of China ("PBOC"), China Banking Regulatory Commission ("CBRC") or China Banking Association; or

(6) Other circumstances that may lead to an impairment of its solvency or a potential loss of its capacity to guarantee.

9. Party B undertakes to notify Party A in writing within 3 days of any change in its correspondence and contact address. If Party B fails to provide an accurate address for service or the changed address in time, causing a failure of service in time or at all, Party B shall bear the legal consequences arising therefrom.

## VI.   Confidentiality

Each party hereto has a duty of confidentiality with respect to any business information of the other party that is accessible or known during the performance of this Agreement, unless there is obvious evidence that such information has already been known in the public domain or a prior authorization in writing has been obtained from the other party. Such confidentiality obligations shall survive the termination of this Agreement. A party causing losses to the other party due to its breach of such obligations shall indemnify the other party against the corresponding losses.

[seal:] [illegible]

[seal:] [illegible]

[seal:] [illegible]

## VII.   Liability for Breach of Contract

In the event that Party B fails to fulfill the repurchase obligations hereunder, to pay the Repurchase Money or violates other obligations hereunder, Party B shall pay the liquidated damages to Party A as calculated as <u>0.05%</u> of the overdue amount on a daily basis; and, if a financial loss that Party A has correspondingly incurred cannot be fully covered by the liquidated damages, Party B shall indemnify Party A against Party A's actual financial losses including claims, interest, liquidated damages, indemnity and reasonable expenses for the realization of claims (including the costs for notarization, appraisal, assessment, auction, litigation or arbitration, service, property preservation, enforcement, attorney fees, travel expenses, and other reasonable costs).

## VIII.   Special Statement

1.      Party B is clearly aware of the background of the cooperation between Party A and Party C, and confirms that it has full knowledge of Party C's assets, debts and credit standing, and whether it has the capacity and authority to enter into the Loan Contract.

2.      Party B has full knowledge of the Loan Contract and its annex, and has obtained the written approvals of the board of directors and the shareholders' meeting of Party B when entering into this Agreement.

## IX.   Changes to the Agreement

1.      Neither Party A, Party B or Party C may alter or terminate this Agreement unilaterally during the period of validity of this contract. When a change hereof is required, a written agreement must be reached through negotiation among the parties hereto.

2.      If Party A and Party C negotiate to change the terms of the Loan Contract (including the amount of the Usufruct and Distribution Rights, repayment method, repayment plan, start date or deadline of the debt performance period, etc.) during the validity term hereof without increasing Party C's debt, Party B agrees to continue to assume the joint and several guarantee liability for the loan, principal, interest, overdue interest and liquidated damages payable by Party C under the changed Loan Contract by means of the repurchase. If Party A and Party C agree to change the Loan Contract which increases Party C's debt, Party B shall only assume the joint and several guarantee liability for the debt under the Loan Contract before the change unless otherwise agreed.

3.      Notwithstanding the foregoing, Party B shall continue to assume the guarantee liability hereunder if the Loan Contract is changed during the validity term hereof due to the adjustments or changes of national laws and regulations and relevant rules of CBRC, PBOC and other authorities, including interest rate adjustment.

[seal:] [illegible]

[seal:] [illegible]

[seal:] [illegible]

## X.     Termination

This Agreement may be terminated as and when:

1.      Within the maturity of the loan and upon consent of Party A, Party C makes an early repayment and terminates the Loan Contract;

2.      Party B has fulfilled its repurchase undertaking; or

3.      Upon maturity of the loan, Party C has paid off all of the due amount without a breach of contract.

## XI.     Miscellaneous

1.      This Agreement shall come into force upon signatures and seals by Party A, Party B and Party C.

2.      This Agreement is made in octuplicate, each party holding two counterparts which shall have the same legal force.

3.      Any dispute arising from or in connection with this Agreement shall be settled through negotiation by the parties hereto, failing which, shall be submitted to Beijing Arbitration Commission for arbitration in accordance with the prevailing rules of arbitration of such commission. The arbitration award shall be final, binding upon each party.

4.      All notices, correspondences, instruments (including judicial or arbitration documents) and materials dispatched to or provided by a party to the other party during the performance of this Agreement shall be served to the correspondence, facsimile and e-mail addresses specified herein. A party intending to change its address, telephone number or designated contact person shall notify the other parties in writing within 5 days from the date of change, failing which, the party mailing relevant materials or dispatching relevant information according to the original addresses and designated contact person shall be deemed to have fulfilled the obligation of service. Time of service for any of the aforesaid materials shall be the time of delivery if by hand, or the date of mailing, sending or posting if by mail, text message or e-mail.

[seal:] [illegible]

[seal:] [illegible]

[seal:] [illegible]

Agreement No. XYJK-2016003-05-HGDB

Annexes:

1.   Loan Contract (No. XYJK-2016003-01-JKHT);

2.   Repurchase Notice.

(The page below is for seal and signature and contains no text of main body)

Party A:      Shanghai Lancai Asset Management Co., Ltd. (corporate seal)

              [seal:] Corporate seal of Shanghai Lancai Asset Management Co., Ltd.

              Legal representative/authorized representative (signature or seal)

              [seal:] Personal seal of Huang Zhe

Party B-1:    LeTV Holdings (Beijing) Co., Ltd. (corporate seal)

              [seal:] Corporate seal of LeTV Holdings (Beijing) Co., Ltd.

              Legal representative/authorized representative (signature or seal)

              [seal:] Personal seal of Jia Yueting

Party B-2:    [signature] (signature by hand)

              (Jia Yueting)

Party C:      LeTV Sports Culture Develop (Beijing) Co., Limited (corporate seal)

              [seal:] Corporate seal of LeTV Sports Culture Develop (Beijing) Co., Limited

              Legal representative/authorized representative (signature or seal)

              [seal:] Personal seal of Gao Fei

Date: December 1, 2016

[seal:] [illegible]

[seal:] [illegible]

[seal:] [illegible]