Bethany Stevens (SBN 245672)
bstevens@wscllp.com
Amanda Walker (SBN 252380)
awalker@wscllp.com
WALKER STEVENS CANNOM LLP
500 Molino Street, Suite 118
Los Angeles, California 90013
Telephone: (213) 712-9145
Fax: (213) 403-4906

Michael Ng (SBN 237915)
michael.ng@kobrekim.com
Daniel Zaheer (SBN 237118)
daniel.zaheer@kobrekim.com
KOBRE & KIM LLP
150 California Street, 19th Floor
San Francisco, California 94111
Telephone: (415) 582-4800

Christopher Cogburn*
*pro hac vice to be filed
christopher.cogburn@kobrekim.com
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 488 1200

*Attorneys for Petitioner*
*Shanghai Lan Cai Asset*
*Management Co, Ltd.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **SHANGHAI LAN CAI ASSET MANAGEMENT CO, LTD.,**<br><br>Petitioner,<br><br>v.<br><br>**JIA YUETING**,<br><br>Respondent. | Civil Case No. 2:18-cv-10255<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S *EX PARTE* APPLICATION FOR RIGHT-TO-ATTACH ORDER AND WRIT OF ATTACHMENT OR, IN THE ALTERNATIVE, FOR TEMPORARY PROTECTIVE ORDER** |

# TABLE OF CONTENTS

**INTRODUCTION** ................................................................................ 1

**BACKGROUND** .................................................................................. 2

**ARGUMENT** ...................................................................................... 7

  **I.   The Court should issue an *ex parte* right-to-attach order and writ of attachment.** ...................................................................................... 7

    *A.   SLC's claim against Jia is one upon which an attachment may issue.* ........ 8

    *B.   SLC has established the probable validity of its claim against Jia.* .............. 9

    *C.   SLC does not seek the attachment for any purpose other than recovering on its claim against Jia.* ........................................................................... 9

    *D.   The property SLC seeks to attach is not exempt from attachment.* ............ 10

    *E.   SLC will suffer great or irreparable injury if the Court delays attachment until SLC's Motion can be heard on notice.* ..................................................... 10

    *F.   The amount SLC seeks to attach is greater than zero.* .............................. 12

  **II.  In the alternative, the Court should grant a temporary protective order to preserve the status quo as to Jia's assets in California pending the resolution of SLC's application on notice to Jia.** ........................................... 12

**CONCLUSION** ................................................................................. 14

# TABLE OF AUTHORITIES

## Cases

*Bd. of Trustees of Laborers Health and Welfare Trust Fund for N. Cal. v. CEM Builders, Inc.*, 2018 WL 1071171 (N.D. Cal. Feb. 27, 2018) ............................. 12

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*,
415 U.S. 423 (1974) ................................................................................. 7

*Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co., Div. of Goodyear Tire & Rubber Co.*,
112 F. Supp. 2d 1178 (C.D. Cal. 2000) ................................................. 9

*Seung Woo Lee v. Imaging3, Inc.*,
283 F. App'x 490 (9th Cir. 2008) .......................................................... 9

*Sunriver Trading Co. Ltd. v. Double D Trade Co., LLC*,
2008 WL 5395744 (E.D. Cal. Dec. 23, 2008) ................................ 11, 12

## Statutes

9 U.S.C. § 207 ................................................................................................ 9

California Civil Procedure Code § 483.010 ................................................. 8

California Civil Procedure Code § 485.010 ............................................... 11

California Civil Procedure Code § 485.210 .......................................... 7, 14

California Civil Procedure Code § 485.220 .......................................... 11, 13

California Civil Procedure Code § 486.020 ............................................... 13

California Civil Procedure Code §§ 485.010–485.610 ......................... 7, 8

California Civil Procedure Code 487.010 ............................................ 5, 11

California Commercial Code § 8102 .......................................................... 10

**INTRODUCTION**

As explained in the Petition (Dkt. No. 1) and supporting Memorandum (Dkt. No. 1-1) filed by Petitioner Shanghai Lan Cai Asset Management Co, Ltd. ("SLC"), this is a straightforward action to confirm an arbitration award (the "Final Award") entered in January 2018 against Respondent Jia Yueting and two corporate entities in which Jia had a significant financial interest at the time of the underlying transaction: LeTV Sports Culture Develop (Beijing) Co., Limited ("LeTV") and TV Plus Holdings (Beijing) Limited ("TV Plus" and, together with Jia and LeTV, the "Arbitration Respondents").  The Final Award—issued by a duly constituted Tribunal in the People's Republic of China—found the Arbitration Respondents jointly and severally liable for their failure to repay principal and interest on a loan extended to LeTV, which Jia and TV Plus guaranteed.  None of the Arbitration Respondents has made any attempt to set aside the Final Award in the People's Republic of China, and their time for doing so has long since expired. The Final Award, then, is a binding financial obligation for which all three Arbitration Respondents—including Jia—are responsible.

It has been nearly a year since the Final Award was issued, and Jia and the other Arbitration Respondents still refuse to pay SLC what it is owed.  In light of Jia's recalcitrance in the face of this undisputed financial obligation, SLC hereby applies, on an *ex parte* basis, for two orders permitting it to levy immediately on Jia's property pending confirmation of the Final Award.  *First*, SLC seeks a right-to-attach order recognizing SLC's right to levy against all property located within or otherwise subject to jurisdiction in California which Jia owns, whether directly or through the use of shell entities over which Jia exercises complete control. *Second*, SLC seeks a writ of attachment in the amount of $11,037,858.52

(¥75,940,466.03)[1] against the following California-sited property owned by Jia (collectively, the "Attachment Property"):

- Jia's 33-percent ownership interest in Faraday & Future Inc., a California corporation;

- Real estate at the following addresses, all of which is owned by Jia through a California-registered shell entity named Ocean View Drive, Inc. ("Ocean View"):

  - REDACTED PER L.R. 5.2-1 ;

  - 11 Marguerite Drive, Rancho Palos Verdes, California, 90275;

  - 19 Marguerite Drive, Rancho Palos Verdes, California, 90275; and

  - 91 Marguerite Drive, Rancho Palos Verdes, California, 90275.

If the Court declines to issue these attachment orders on an *ex parte* basis, SLC requests, in the alternative, that the Court enter a temporary protective order restraining Jia from taking any steps to transfer, conceal, reduce, encumber, or otherwise make unavailable the Attachment Property until SLC's application can be heard on notice to Jia.  Should the Court choose to grant this alternative relief, SLC also requests that the Court set a hearing date and briefing schedule to ensure that the application is promptly resolved and the temporary protective order remains in place no longer than is necessary.

## BACKGROUND

On December 1, 2016, SLC entered into a pair of agreements setting forth the terms under which it would extend a loan of ¥50 million to LeTV for a term of 12 months.  One of those agreements (the "Loan Contract") provided the terms under which the loan funds would be disbursed by SLC and repaid by LeTV, while the other agreement (the "Guarantee") made Jia and TV Plus, as guarantors, jointly

---

[1] The exchange rate of US $1 + CNY ¥6.88 is adopted in this paragraph, which was obtained from Google on December 10, 2018.

1  and severally liable for any default by LeTV under the Loan Contract. (*See* First

2  Declaration of Jian Kang in Support of Petition to Confirm Arbitration Award

3  ("First Kang Decl."), Dkt. No. 1-2, Ex. 1 at 2; *see generally id*. Exs. 2, 3.)

4     The Loan Contract called for LeTV to repay the ¥50 million principal in a

5  single lump-sum payment at the conclusion of the 12-month term (on December 2,

6  2017), while settling outstanding interest on each of five dates (the "Interest

7  Settlement Dates"): December 15, 2016, March 15, 2017, June 15, 2017, and

8  September 15, 2017.  (*Id.* Ex. 2 art. 3(II), (IV).)  The Loan Contract provided for

9  an annual interest rate of 7.5 percent.  (*Id.* art. 3(III).)  In the event of a default by

10 LeTV, an additional "0.05 percent per day" would accrue under the Loan Contract

11 until the default was cured.  (*Id.* art. 3(VII).)  And, under the Guarantee, Jia and

12 TV Plus would be jointly and severally liable to SLC.

13    LeTV made the interest payments required on the first two Interest

14 Settlement Dates, but failed to make the payment due on June 15, 2017, and has

15 since failed to make all subsequent payments due under the Loan Contract.  In light

16 of LeTV's default, SLC referred the matter to arbitration before the Beijing

17 Arbitration Commission, consistent with arbitration clauses in both the Loan

18 Contract and the Guarantee.  Article 13 of the Loan Contract provided:

19    (I)   The Contract shall be governed by the laws of the People's Republic
20          of China.

21    (II)  Any dispute arising from the performance of the [Loan] Contract may
22          be resolved through consultation, failing which either Party may bring
23          such dispute for arbitration by the Beijing Arbitration Commission.

24 (First Kang Decl. Ex. 2 art. 13.)  Similarly, the Guarantee provided:

25          Any dispute arising from or in connection with this [Guarantee] shall
26          be settled through negotiation by the parties hereto, failing which,
27          shall be submitted to Beijing Arbitration Commission for arbitration
28          in accordance with the prevailing rules of arbitration of such

3

commission.  The arbitration award shall be final, binding upon each

party.

(First Kang Decl. Ex. 3 art. 11.3.)  On June 28, 2017, the Beijing Arbitration

Commission accepted SLC's request for arbitration against Jia and the other two

Arbitration Respondents.

The Arbitration was conducted in Beijing under the Beijing Arbitration

Commission rules.  (First Kang Decl. Ex. 1 at 1.)  Following the submission and

cross-examination of evidence at a hearing—at which Jia, through counsel,

actively participated—the Tribunal issued the Final Award.  The Tribunal

unanimously concluded that LeTV defaulted on its obligations under the Loan

Contract by failing to repay both the principal and any interest accrued after March

15, 2017.  (*Id.* at 15–16.)  The Tribunal also found LeTV liable for post-default

interest at an annual rate of 16.5 percent—less than the post-default rate provided

by the Loan Contract—to be calculated from December 2, 2017, and for SLC's and

the Tribunal's costs and expenses, calculated at ¥502,028 and ¥319,740,

respectively.  (*Id.* at 16–18.)  In addition, the Tribunal concluded that the

Guarantee rendered Jia and TV Plus jointly and severally liable for the amounts

awarded against LeTV.  (*Id.* at 19–20.)

The Tribunal ordered the Arbitration Respondents to pay to SLC, within 10

days of the date of service of the Final Award, the following amounts:

- ¥50 million, representing the principal disbursed to LeTV under the Loan
  Contract;

- principal interest at an annual rate of 7.5 percent to be calculated from
  March 15, 2017;

- post-default interest at an annual rate of 16.5 percent to be calculated from
  December 2, 2017;

- ¥507,028, representing SLC's arbitration costs; and

- ¥319,740, representing arbitration expenses disbursed by SLC to the

4

1    Beijing Arbitration Commission.

2  (*Id.* at 21–22.)  Jia and the other Arbitration Respondents were therefore due to pay

3  SLC on February 1, 2018.  Yet, as of the date of this filing—nearly a full year

4  later—they have neither paid SLC nor indicated any intent to do so in the near

5  future.

6    SLC brings this action to collect on the Final Award by having it recognized

7  as a United States judgment.  SLC, however, has little reason to believe that Jia

8  will show this Court's judgment any greater respect than he has shown the Final

9  Award; to the contrary, there are compelling reasons to believe that Jia can and

10  will take steps to make assets subject to this Court's jurisdiction unavailable for

11  enforcement purposes.  Among other things, courts in Jia's native China—where

12  he is believed to have a personal indebtedness in excess of $500 million—have

13  placed him on a nationwide list of "Discredited Persons" used to track and enforce

14  consumption restrictions on the country's worst debt defaulters.  (Second

15  Declaration of Jian Kang dated December 10, 2018, filed concurrently herewith

16  "Second Kang Decl.") Ex. 1.)  In addition, Jia is a respondent in another award-

17  confirmation petition filed in this District, which—like SLC's petition—stems

18  from Jia's failure to follow through on his obligations as a guarantor for unrepaid

19  loans.  (Second Kang Decl. Ex. 2.)  To ensure that this Court's judgment is not

20  thwarted by Jia, SLC seeks to attach, on an *ex parte* basis, the Attachment

21  Property, which falls into two broad categories.

22    The first category of Attachment Property is Jia's 33-percent ownership

23  interest in Faraday & Future Inc., which, as a "security" within the meaning of

24  California Civil Procedure Code 487.010(c)(10), is subject to attachment by this

25  Court.  Faraday & Future Inc. is owned by a Cayman Islands-registered joint

26  venture named Smart King Ltd. ("Smart King"), in which Jia has a 33-percent

27  interest.  (Second Kang Decl. Ex. 3 ¶ 47.)  That 33-percent interest is controlled by

28  Jia through a pair of shell entities incorporated in the British Virgin Islands: FF

Peak Holding Limited and FF Top Holding Limited (together, the "BVI Shells"). (*Id.* ¶¶ 47, 57.)  The BVI Shells, in turn, are held by an acquaintance of Jia's named Lian Bossert.  (*Id.* ¶ 59.)  But evidence adduced in an arbitration proceeding between Smart King and one of Jia's joint-venture partners demonstrates that, notwithstanding the multilayered ownership structure and Jia's transfer to Bossert of *custody* over his interest in the BVI Shells, Jia has retained *beneficial ownership* of his 33-percent interest in Smart King and, in turn, of his 33% interest in Faraday & Future Inc.  (*Id.* ¶¶ 100–02.)  Jia thus has a claim to 33 percent of the equity in Faraday & Future Inc. and, as a California corporation, this Court has jurisdiction to attach that equity to secure any judgment it enters on SLC's behalf.

The second category of Attachment Property is a group of three real estate properties located at:

- REDACTED PER L.R. 5.2-1 ;
- 19 Marguerite Drive, Rancho Palos Verdes, California, 90275; and
- 91 Marguerite Drive, Rancho Palos Verdes, California, 90275.

SLC believes that Jia owns these properties through the Ocean View entity. (Second Kang Decl. ¶ 10.)  The information supporting that belief includes the fact that one of the Ocean View properties (at REDACTED PER L.R. 5.2-1 ) is Jia's home address, along with the fact that, according to records filed with the California Secretary of State, Jia acted as the CEO of Ocean View until 2017, when he resigned and was replaced by Chaoying Deng.  (Second Kang Decl. Exs. 4, 5.) Deng, it should be noted, is the mother of Lian Bossert—the agent to whom Jia transferred custody of his ownership interest in Faraday & Future Inc.  Thus, because Jia is the beneficial owner of these properties, all of which are located within California, SLC requests that the Court also attach those properties to secure SLC's pending judgment.

**ARGUMENT**

**I.  The Court should issue an *ex parte* right-to-attach order and writ of attachment.**

Federal Rule of Civil Procedure 64 empowers federal courts to grant "every remedy . . . that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Subsection (b) of that rule lists "attachment" among the remedies that federal courts may grant.  *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 436 n.10 (1974) (discussing "long-settled" rule "that in all cases in federal court . . . state law is incorporated to determine the availability of prejudgment remedies for the seizure of person or property to secure satisfaction of the judgment ultimately entered"). California Civil Procedure Code §§ 485.010–485.610 sets forth the procedure for obtaining a writ of attachment on an *ex parte* basis.  "Upon the filing of the complaint or at any time thereafter, the plaintiff may apply pursuant to this article for a right to attach order and a writ of attachment by filing an application for the order and writ with the court in which the action is brought."  Cal. Civ. Proc. Code § 485.210(a).  To obtain an *ex parte* writ of attachment, a petitioner must satisfy the court that:

- the petitioner's claim "is one upon which an attachment may be issued";
- the petitioner "has established the probable validity of the claim upon which the attachment is based";
- the petitioner is not seeking the attachment "for the a purpose other than the recovery upon" that claim;
- "the property sought to be attached . . . is not exempt from attachment";
- the petitioner "will suffer great or irreparable injury . . . if the issuance

7

of the order is delayed until the matter can be heard on notice"; and

- "[t]he amount to be secured by the attachment is greater than zero." *Id.* § 485.220(a).

As shown in SLC's Petition (Dkt. No. 1) and supporting Memorandum (Dkt. No. 1-1), as well as the First and Second Declarations of Jian Kang and all exhibits attached thereto, each of these requirements is satisfied here. Accordingly, SLC respectfully requests that this Court issue a right-to-attach order and writ of attachment in its favor. *See* Cal. Civ. Proc. Code § 485.220(a) (providing that "[t]he court . . . ***shall*** issue a right to attach order" upon finding foregoing elements satisfied (emphasis added)).

### A. SLC's claim against Jia is one upon which an attachment may issue.

Under California law, a claim may be secured by writ of attachment if it is (1) a "claim . . . for money based upon contract"; (ii) the amount of the claim is "fixed or readily ascertainable" in an amount no less than $500; (iii) the claim is unsecured; and (iv) the claim arises out of the respondent's commercial (rather than "personal, family, or household") conduct. Cal Civ. Proc. Code § 483.010 (a). Each of these elements is satisfied here.

*First*, SLC's claim seeks money damages and is "based upon" two related contracts: the Loan Contract and the Guarantee. (*See* Petition at ¶ 11; First Kang Decl. ¶ 5 and Exs. 2–3.) Jia's liability under the Final Award stems from his failure to fulfill his obligations under the Guarantee, which were triggered by LeTV's breach of the Loan Contract. *Second*, because the Final Award renders Jia liable to SLC for a sum certain plus a fixed interest rate, the amount to be attached is readily ascertainable; as of the date of this filing, it is ¥75,940,466.63 (approximately $11,037,858.52.) (First Kang Decl. ¶ 10.) *Third*, SLC's claim against Jia is unsecured. (Second Kang Decl. ¶ 11.) And *fourth*, SLC's claim against Jia arises out of commercial conduct—namely, Jia's guarantee of a loan

which, under the Loan Contract, was to be "used to supplement [LeTV's] working capital in its day-to-day operations."  (First Kang Decl. Ex. 2 at 4.)  Accordingly, SLC's claim against Jia is one for which California law authorizes attachment as a provisional remedy.

### B. SLC has established the probable validity of its claim against Jia.

To establish the "probable validity" of the claim for which attachment is sought, a plaintiff or petitioner need only "show that it is more likely than not [that] it will obtain a judgment" on the claim for which the attachment is sought. *Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co., Div. of Goodyear Tire & Rubber Co.*, 112 F. Supp. 2d 1178, 1182 (C.D. Cal. 2000).  SLC's claim Jia easily surpasses this standard: because the Tribunal already resolved the question of Jia's liability when it issued the Final Award, all that remains for this Court to do is confirm that award by entering judgment on its terms in favor of SLC and against Jia.  The Final Award is governed by the New York Convention.  As SLC's Petition (Dkt. No. 1) and supporting Memorandum (Dkt. No. 1-1) explain at length, there are only seven narrow grounds on which a court may decline to confirm such an award, and there can be little doubt that none of those grounds apply here.  *See Seung Woo Lee v. Imaging3, Inc.*, 283 F. App'x 490, 492 (9th Cir. 2008) ("The grounds for the court's refusal or deferral of recognition or enforcement of an arbitration award are limited to the seven grounds listed in Article V of the New York Convention."); 9 U.S.C. § 207 (providing that where none of grounds listed in New York Convention applies, "[t]he court *shall* confirm the award").

### C. SLC does not seek the attachment for any purpose other than recovering on its claim against Jia.

SLC seeks this attachment for one purpose: to recover on its claim against Jia, which has remained unpaid for nearly a years since the Final Award was

9

1  issued.  (Second Kang Decl. ¶ 12.)

2          **D. The property SLC seeks to attach is not exempt from**

3          **attachment.**

4          SLC seeks to attach two categories of Jia's property subject to jurisdiction in

5  California.  The first category encompasses Jia's ownership interest in a California

6  corporation, Faraday & Future Inc.  California Civil Procedure Code § 487.010(c)

7  lists types of property that are subject to attachment by California courts, including

8  "securities."  Cal. Civ. Proc. Code § 487.010(c)(10).  This statute defines

9  "security" by reference to the broad definition set forth in California Commercial

10  Code § 8102(a)(15), which encompasses any "obligation of an issuer or a share,

11  participation, or other interest in an issuer or in property or an enterprise of an

12  issuer," so long as it satisfies three straightforward requirements:

13          • it is "represented by a security certification" or "the transfer of it may

14              be registered" in the issuer's books;

15          • it is (or can be divided into) "a class or series of shares, participations,

16              interests, or obligations"; and

17          • it is either "of a type . . . dealt in or traded on securities exchanges or

18              securities markets" or "is a medium for investment" and expressly

19              provides that it is governed by the California Commercial Code.

20  All of these requirements are satisfied here.

21          The second category of property SLC seeks to attach is real estate owned by

22  Jia through a California-registered holding company, Ocean View Drive Inc.  This,

23  too, is subject to attachment under the California Civil Procedure Code, which

24  permits attachment against "[i]nterests in real property except leasehold estates

25  with unexpired terms of less than one year."  Cal. Civ. Proc. Code § 487.010(c)(1).

26          **E.  SLC will suffer great or irreparable injury if the Court delays**

27          **attachment until SLC's Motion can be heard on notice.**

28  To obtain a right-to-attach order and writ of attachment on an *ex parte* basis,

10

an applicant for attachment must demonstrate a likelihood that "great or irreparable injury" would result if the attachment is delayed until the application can be heard on notice to the adverse party.  Cal. Civ. Proc. § 485.010(a).  Section 485.010 lists several circumstances that are sufficient to support and inference of great or irreparable injury; two of those circumstances are present here.

First, Section 485.010(b)(1) instructs that the great-or-irreparable-injury requirement is satisfied where the applicant presents evidence from which "it may be inferred that there is a danger that the property sought to be attached would be concealed, substantially impaired in value, or otherwise made unavailable to levy if issuance of the order were delayed until the matter could be heard on notice."  Jia is a Chinese national with ties to several other jurisdictions; as noted above, he is the beneficial owner and controller of several corporations in offshore jurisdictions like the British Virgin Islands and the Cayman Islands.  Given Jia's unwillingness to pay his debt to SLC (and, evidently, to many other debtors), SLC justifiably fears that Jia will liquidate his interest in some or all of the Attachment Property and transfer it to persons or entities that are beyond the jurisdiction of this Court. *Sunriver Trading Co. Ltd. v. Double D Trade Co., LLC*, 2008 WL 5395744, at *4 (E.D. Cal. Dec. 23, 2008) (finding likelihood of irreparable harm in part due to applicant's declaration that "Defendants will transfer all funds to Russia, that is, beyond the court's jurisdiction, if notice is provided").

Second, Section 485.010(b)(2) provides that this requirement is also satisfied if, "[u]nder the circumstances of the case, it may be inferred that the defendant has failed to pay the debt underlying the requested attachment and the defendant is insolvent in the sense that the defendant is generally not paying his or her debts as those debts become due, unless the debts are subject to a bona fide dispute."  Although Jia is reported to be an individual of immense wealth, his record of paying creditors—especially recently—is very poor.  As noted previously, Jia is the defendant in another award-confirmation action pending in this very District.

(Second Kang Decl. Ex. 2.)  The petitioner in that proceeding seeks a judgment of over $100 million against Jia.  (*Id.* at 2.)  In addition, Jia has been added to the Chinese government's national list of debt defaulters in light of his staggering personal indebtedness there, which is believed to exceed $500 million.  (Second Kang Decl. Ex. 1.)  Taken together with Jia's failure to pay the Final Award (which has been outstanding for over 10 months), these circumstances also support a finding that great or irreparable harm will result if the attachment is delayed until Jia can be notified of SLC's efforts to secure its pending judgment.  *See, e.g.*, *Bd. of Trustees of Laborers Health and Welfare Trust Fund for N. Cal. v. CEM Builders, Inc.*, 2018 WL 1071171 (N.D. Cal. Feb. 27, 2018) (finding great-or-irreparable-injury requirement satisfied in light of, among other things, "Defendant's continued and longstanding failure to pay its debts owed to Plaintiffs"); *Sunriver Trading*, 2008 WL 5395744, at *4 (considering "apparent unwillingness of Defendant to submit to procedures intended to resolve Plaintiff's claims" in finding likelihood of irreparable harm).

### F.  The amount SLC seeks to attach is greater than zero.

As discussed above, SLC seeks an attachment in the amount of $11,037,858.52—a reasonable, conservative estimate of the value of the award converted to United States dollars—against (1) 33 percent of the equity in Faraday & Future Inc., which is valued at $1.48 billion (Second Kang Decl. Ex. 3 ¶ 101.) and (2) the properties Jia owns through the Ocean View entity, which are valued at approximately $23 million.

### II. In the alternative, the Court should grant a temporary protective order to preserve the status quo as to Jia's assets in California pending the resolution of SLC's application on notice to Jia.

For the reasons set forth above, SLC respectfully submits that it has satisfied the requirements of California Civil Procedure Code § 485.220, thereby demonstrating its right to an *ex parte* right-to-attach order and writ of attachment

12

as to the Attachment Property.  If the Court disagrees, SLC alternatively requests that the Court issue a temporary protective order to maintain the status quo until SLC's application can be heard on notice.  Such an order should do two things: (1) restrain Jia from taking any steps to transfer, conceal, reduce, encumber, or otherwise make unavailable any of the Attachment Property, whether on his own or through an agent; and (2) set a prompt briefing and hearing schedule for SLC's application to be determined on notice to Jia.

California Civil Procedure Code § 486.020 contemplates precisely this type of order as an alternative to *ex parte* attachment relief.  To that end, Section 486.020 sets forth four requirements—each of which largely mirrors a requirement for *ex parte* attachment under Section 485.210 (a)—for a temporary protective order:

- the petitioner's claim must be "one upon which an attachment may be issued";
- the petitioner must "establish[] the probable validity" of its claim;
- the temporary protective order must not be "sought for a purpose other than the recovery upon the claim" for which the attachment is sought; and
- the petitioner "will suffer great or irreparable injury" unless the temporary protective order is issued.

These requirements are satisfied for the reasons discussed in Section I, *supra*, which apply with equal force to the Court's decision whether to issue a temporary protective order.  Thus, even if the Court is unwilling to issue the *ex parte* attachment relief SLC seeks, it should at a minimum grant a protective order prohibiting Jia from taking any steps to transfer, conceal, reduce, encumber, or otherwise make unavailable any of the Attachment Property.

To promptly resolve SLC's application for attachment and ensure that the temporary protective order remains in place only as long as is necessary to

preserve the status quo, the Court should also enter a briefing schedule and a hearing date.  SLC respectfully requests that the Court set a hearing date approximately 30 days from the issuance of the temporary protective order, with opposition papers due 15 days before the hearing and reply papers due 5 days before the hearing.

## CONCLUSION

For the foregoing reasons, SLC respectfully requests that the court issue a right-to-attach order and writ of attachment as to the Attachment Property or, in the alternative, that the court enter a temporary protective order to prevent Jia from dissipating the Attachment Property until SLC's attachment application can be heard on notice to Jia.

Dated: December 10, 2018          WALKER STEVENS CANNOM LLP


                                  By:   ___/s/ Bethany Stevens_____
                                        Bethany Stevens

                                  *Attorneys for Petitioner*
                                  *Shanghai Lan Cai Asset*
                                  *Management Co, Ltd.*

MEMORANDUM IN SUPPORT OF PETITIONER'S *EX PARTE* APPLICATION