**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:**  **2:18-CV-10255 SJO (MRWx)**        **DATE:** **December 13, 2018**

**TITLE:**        **Shanghai Lan Cai Asset Management Co, Ltd. v. Jia Yueting**
========================================================================
**PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                              Not Present
Courtroom Clerk                               Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**        **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                   Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING IN PART EX PARTE APPLICATION FOR RELIEF** [ECF No. 5]

This matter is before the Court on Petitioner Shanghai Lan Cai Asset Management Company Limited's ("Petitioner" or "SLC") *Ex Parte* Application For Right-To-Attach Order Or In the Alternative For Temporary Protective Order ("Application"), filed December 10, 2018. Respondent Jia Yueting ("Respondent" or "Jia") has not filed an Opposition. For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** the Application.  The Court **GRANTS** Petitioner a Temporary Restraining Order ("TRO"), freezing certain of Respondent's assets in this jurisdiction pending the outcome of this litigation.  The Court **DENIES** Petitioner's request for a Right-To-Attach order.

I.        FACTUAL AND PROCEDURAL BACKGROUND

This action involves Petitioner's effort to confirm a foreign arbitral award issued by the Beijing Arbitration Commission.  (Petition To Enforce Foreign Arbitral Award ("Petition") at ¶ 2, ECF No. 1.)  The operative petition alleges as follows.

The arbitration before the Beijing Arbitration Commission resolved a dispute between SLC, Respondent, and two companies in which Respondent had a substantial ownership interest: LeTV Sports Culture Development (Beijing) Co. Limited (LeTV) and TV Plus Holdings (Beijing) Limited ("TV Plus" and together with Jia and LeTV,  "Arbitration Respondents").  (Petition at 1.)  The final award from the Beijing Arbitration Commission resolved a dispute between SLC and the Arbitration Respondents under two loan agreements.  (Petition at ¶ 11.)  Under the first loan agreement, SLC extended a 50 million Yuan loan to LeTV on December 2, 2016.  (First Kang Decl. Ex. 1 at 2, ECF No. 1-3; Petition at ¶ 13.)  LeTV was to repay the principal of the loan in a single lump-sum payment at the conclusion of a 12-month term.  (Petition at ¶ 12.)  Under the second loan agreement, Jia and TV Plus guaranteed the loan to LeTV, assuming joint and several liability for any failure by LeTV to perform its obligations under the Loan Contract. (First Kang Decl. Ex. 1 at 2.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**


**CASE NO.:   2:18-CV-10255 SJO (MRWx)           DATE: December 13, 2018**


Based on the date when SLC provided the loan to LeTV, the principal was due back to SLC by December 2, 2017.  (Petition at ¶ 13.)  The loan agreements provided that, in the event of a default by LeTV, an additional 0.05% per day would accrue under the agreements.  (Petition at ¶ 12.)  LeTV and its guarantors, Jia and TV Plus, made the first two interest payments but have not made any payments on the remaining principal and interest.  (Petition at ¶ 14.)

Petitioner subsequently instituted arbitration proceedings before the Beijing Arbitration Commission.  On January 22, 2018, after hearing all parties' presentations as to the default on the loan agreements, the Commission issued a 16-page arbitration award. (Petition at ¶ 20.)  The tribunal found that the Arbitration Respondents defaulted on their obligations under the loan agreements, and found the Arbitration Respondents liable for post-default interest at an annual rate of 16.5%.  (Petition at ¶ 20.)

The tribunal ordered the Arbitration Respondents to compensate SLC for: (1) the 50 million Yuan loan provided under the first loan agreement, (2) the principal interest on the loan at an annual rate of 7.5% from March 15, 2017, (3) post-default interest of 16.5% per year on the failure to repay the loan, (4) 507,028 Yuan for arbitration costs, and (5) 319,740 Yuan for other arbitration expenses.  (Petition at ¶ 23; Decision of Arbitration Panel at 20-21, ECF No. 1-3.)

Petitioner brings the instant action to enforce the Beijing Arbitration Commission's decision in the United States.  (*See generally* Petition.)  Petitioner primarily brings the instant Application to preserve the status quo with respect to Jia's assets in this jurisdiction.  (Application at 1-2.)  According to Petitioner, Respondent has taken several actions to avoid enforcement on judgments against him. (Application at 11-12.)  To ensure that Jia does not avoid the Court's future judgment recognizing the Beijing Arbitration Commission's award, Petitioner seeks to attach property owned by Respondent in this jurisdiction.  The specific property that Petitioner seeks to attach are: (1) Jia's 33% ownership interest in Faraday & Future Inc., a California corporation; and (2) four pieces real estate located in California owned by Respondent through a corporation called Ocean View Drive, Inc (collectively, "Attachment Property").  (Application at 2.)

II.    LEGAL STANDARD

Petitioner brings this Application for either a TRO or for a pre-judgment attachment, to attach certain assets owned by Respondent in this jurisdiction. "The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995) (applying standard to a request for a temporary restraining order); *see also Arcamuzi v. Cont'l Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987) (applying same standard for a preliminary injunction).  A plaintiff seeking a preliminary injunction must establish that: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in hwe favor; and (4) an injunction is in the public interest. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008).  In the Ninth Circuit, preliminary injunction

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** **2:18-CV-10255 SJO (MRWx)**      **DATE:** December 13, 2018

is also appropriate if the plaintiff can show that "serious questions going to the merits were raised and the balance of hardship tips sharply towards the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 622 F.3d 1045, 1052 (9th Cir. 2010) (holding that the sliding scale test remains viable so long as plaintiff can satisfy other factors contained in *Winter*) (citation omitted).

The standard for a pre-judgment attachment is as follows. Federal Rule of Civil Procedure 64 empowers federal courts to grant a pre-judgment attachment. This rule gives federal courts the authority to grant: "every remedy . . . that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Subsection (b) of that rule lists "attachment" among the remedies that federal courts may grant. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 436 n.10 (1974) ("[I]n all cases in federal court . . . state law is incorporated to determine the availability of prejudgment remedies for the seizure of person or property to secure satisfaction of the judgment ultimately entered").

California Civil Procedure Code Sections 485.010-485.610 set forth the procedure for obtaining a pre-judgment attachment in California courts. "Upon the filing of the complaint or at any time thereafter, the plaintiff may apply pursuant to this article for a right to attach order and a writ of attachment by filing an application for the order and writ with the court in which the action is brought." Cal. Civ. Proc. Code § 485.210(a). To issue a pre-judgment attachment under California law, a petitioner must satisfy essentially the same requirements as the federal standard for qualifying for a preliminary injunction. Specifically, a Petitioner must show: (1) that its claim is "one upon which an attachment may be issued; (2) the Petitioner "has established the probably validity of the claim upon which the attachment is based"; (3) the Petitioner is not seeking the attachment "for a purpose other than recover upon" the claim; (4) "the property sought to be attached . . . is not exempt from attachment"; (5) the Petitioner "will suffer great or irreparable injury . . . if the issuance of the order is delayed until the matter can be heard on notice"; and (6) "[t]he amount to be secured by the attachment is greater than zero."

III.    ANALYSIS

The Court **GRANTS** Petitioner's Application insofar as Petitioner seeks to preserve the status quo as to Jia's assets, pending the resolution of SLC's Petition. The Court therefore **GRANTS** Petitioner's Application for a TRO. The Court **DENIES** Petitioner's Application for a Right-To-Attach order.

The Court addresses the four requirements of a TRO in turn. The Court then addresses the reasons why it declines to grant a pre-judgment attachment of Respondent's property.

///
///
///

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   **2:18-CV-10255 SJO (MRWx)**          DATE: <u>December 13, 2018</u>

### A.      Likelihood of Success On The Merits

Petitioner has clearly shown a high likelihood of success on the merits of the claim to confirm the foreign arbitral award issued by the Beijing Arbitration Commission.  The Commission issued a binding decision, unanimously finding that LeTV and Respondent defaulted on their obligations to SLC.  The tribunal granted the following award: (1) the Arbitration Respondents shall repay to SLC the principal of 50 million Yuan; (2) the Arbitration Respondents shall pay interest on the loan amounting to 1,890.410.96 Yuan; (3) the Arbitration Respondents shall pay a penalty interest to SLC at an annual interest rate of 16.5%; (4) the Arbitration Respondents shall pay SLC arbitration expenses of 507,028 Yuan; and (5) the Arbitration Respondents shall pay other arbitration costs of 319,740 Yuan.  (Decision of Arbitration Panel at 20-21.)

This Court is very likely to confirm this arbitral award because the Beijing Arbitration Commission's decision falls under the terms of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention").  This Court "must confirm an arbitration award falling under the New York Convention unless [the Court] determine[s] that 'one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [sic] said Convention.'" *Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 835–36 (9th Cir. 2010) (quoting 9 U.S.C. § 207 and citing *Mgmt. & Technical Consultants S.A. v. Parsons-Jurden Int'l Corp.,* 820 F.2d 1531 (9th Cir.1987)).

### B.      Irreparable Harm

Petitioner has made the threshold showing necessary to show irreparable harm in the absence of preliminary injunctive relief.  Respondent Jia's record of paying creditors is poor at best.  There is other litigation in this district concerning Respondent's failure to pay creditors, and he has been added to the Chinese government's national list of debt defaulters.  (Second Kang Decl. Ex. 1., ECF No. 1-4.)  It comes as no surprise that  the instant case stems from Respondent's failure to pay a debt to SLC.  *See Bd. of Trustees of Laborers Health and Welfare Trust Fund for N. Cal. v. CEM Builders, Inc.*, No. 518CV00685EJD, 2018 WL 1071171 (N.D. Cal. Feb. 27, 2018) (finding irreparable harm in part because of "Defendant's continued and longstanding failure to pay its debts owed to Plaintiffs").

### C.      Balance of Equities

The balance of equities tips in favor of Petitioner.  Although Respondent has a strong property interest in the Attachment Property, his record of poor debt repayments militates in favor of holding that this Court should issue a TRO.  Absent the TRO, there is a strong possibility that Respondent will seek to move the Attachment Property and avoid the judgment of this Court.  *Cf. Smith v. Pathway Fin. Mgmt., Inc.*, No. SACV1101573JVSMLGX, 2012 WL 12883909, at *6 (C.D. Cal. Nov. 19, 2012) (holding that a preliminary injunction was inappropriate where there was no danger that the fees sought in the litigation would be lost).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   2:18-CV-10255 SJO (MRWx)**        **DATE: December 13, 2018**

### D.   Public Interest

"When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the preliminary injunction analysis." *Smith*, 2012 WL 12883909, at *6 (quoting *Stormans v. Selecky*, 586 F.3d 1109, 1138–39 (9th Cir. 2009)).  Here, the TRO would only impact Petitioner and Respondent's interests and does not extend to non-parties.  Therefore, this factor is neutral.

### E.   Pre-Judgment Attachment Order

In lieu of a TRO, Petitioner seeks a prejudgment attachment of the Attachment Property.  This is an extraordinary remedy that may raise concerns under the Due Process Clause of the Constitution.  *See Connecticut v. Doehr*, 501 U.S. 1, 16 (1991). "For a property owner like [Respondent], attachment ordinarily clouds title; impairs the ability to sell or otherwise alienate the property; taints any credit rating; reduces the chance of obtaining a home equity loan or additional mortgage; and can even place an existing mortgage in technical default where there is an insecurity clause." *Connecticut v. Doehr*, 501 U.S. 1, 11 (1991).

Because of these due process concerns, at the present time, the Court declines to issue an *ex parte* pre-judgment attachment of the Respondent's property.  An alternative, less-intrusive remedy is available to this Court.  An injunction preserving the status quo can guarantee that this Court can adjudicate the merits of this dispute without interfering in Respondent's property rights more than is necessary. If the Court ultimately grants Petitioner's petition to confirm the foreign arbitral award, Petitioner can attach Respondent's property as a final matter.

## III.   RULING

The Court **GRANTS** Petitioner's Application and issues a TRO, enjoining Respondent from transferring, concealing, reducing, encumbering, or otherwise making unavailable the Attachment Property until SLC's Petition is adjudicated, and a final judgment is reached in this action.  The Court recommends that SLC notice a hearing on the Petition for the first available hearing date before this Court (currently January 14, 2018).  Respondent will then have the opportunity to oppose the Petition. *See* 9 U.S.C. § 207; *China Nat. Metal Prod. Imp./Exp. Co. v. Apex Digital, Inc.*, 379 F.3d 796, 799 (9th Cir. 2004) ("Section 207 of the FAA provides that a U.S. court 'shall confirm' a foreign arbitral award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [Convention].")

The Court **DENIES** Petitioner's Application for a pre-judgment attachment of the Attachment Property.

IT IS SO ORDERED.