Bethany Stevens (SBN 245672)
bstevens@wscllp.com
Amanda Walker (SBN 252380)
awalker@wscllp.com
WALKER STEVENS CANNOM LLP
500 Molino Street, Suite 118
Los Angeles, California 90013
Telephone: (213) 712-9145
Fax: (213) 403-4906

Michael Ng (SBN 237915)
michael.ng@kobrekim.com
Daniel Zaheer (SBN 237118)
daniel.zaheer@kobrekim.com
KOBRE & KIM LLP
150 California Street, 19th Floor
San Francisco, California 94111
Telephone: (415) 582-4800

(Additional Counsel on next page)

*Attorneys for Petitioner*
*Shanghai Lan Cai Asset*
*Management Co, Ltd.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **SHANGHAI LAN CAI ASSET MANAGEMENT CO, LTD.**, <br><br> Petitioner, <br><br> v. <br><br> **JIA YUETING**, <br><br> Respondent. | Case No. 2:18-cv-10255-SJO-MRW <br><br> **PETITIONER'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD** <br><br> Hon. S. James Otero |

Christopher Cogburn (admitted *pro hac vice*)
christopher.cogburn@kobrekim.com
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 488 1200

John Han (admitted *pro hac vice*)
john.han@kobrekim.com
KOBRE & KIM
3 Garden Road
ICBC Tower, Unit 601
Central, Hong Kong SAR
Telephone: +852 2127 3291

*Attorneys for Petitioner
Shanghai Lan Cai Asset
Management Co, Ltd.*

The relevant factual background surrounding the Loan Contract [1], the Guarantee, and the Arbitration are set forth in SLC's opening memorandum. SLC will not repeat these facts here because Jia, in his memorandum in opposition (the "**Opposition**", Dkt. No. 25), does not dispute them.

Rather, Jia argues that the Court should deny or delay confirmation because (1) by entering into a Creditor's Rights Transfer Agreement (the "**CRTA**," Liu Decl. Ex. 5 [2]), SLC assigned its rights under the Final Award to a non-party, Taoyun Capital Group Co., Ltd. ("**Taoyun**"), which has not been joined to the proceedings; (2) Taoyun discharged Jia's liability under the Award to offset unrelated debts owed to other parties when it executed an Equity Transfer Agreement (the "**ETA**," Liu Decl. Ex. 4); and (3) other litigation pending in the People's Republic of China "will substantially impact the outcome" (Opp. at 2) of this proceeding. None of these arguments is a defense recognized by the New York Convention, and the Court should confirm the Final Award for that reason alone. And even were that not so, Jia's defenses would still fail because they rely on serious factual inaccuracies.

## I. None of the arguments raised in Jia's Opposition are grounds for deferring or denying confirmation under the New York Convention.

"Federal law . . . gives the courts little discretion when considering" confirmation petitions under the New York Convention: "'The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the Convention.'" *Seung Woo Lee v. Imaging3, Inc.*, 283 F. App'x 490, 492 (9th Cir. 2008) (quoting 9 U.S.C. § 207). These grounds "are interpreted narrowly," and Jia, "[a]s the party seeking to avoid

---

[1] Unless otherwise indicated, all defined terms have the same meanings ascribed to them in Petitioner's opening memorandum (Dkt. No. 1-1).

[2] All citations to exhibits appended to the Declaration of Shixin Liu (Dkt. No. 25-1) use the page numbers superimposed at the bottom of each page of those exhibits.

enforcement," bears the "substantial" burden of proving that one or more of them applies here. *Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 836 (9th Cir. 2010).

With no *bona fide* defense under the New York Convention's limited, enumerated grounds to confirmation, Jia tries to shoehorn arguments outside those narrow grounds into two Convention defenses that have no application to this case.

***Public policy does not require joinder of Taoyun.*** The Court can quickly dispense with most of the bases on which Jia asserts that Rule 19 requires joinder. Jia's argument that the Court "cannot accord complete relief" in Taoyun's absence (Opp. at 8) is wrong; the only "relief" SLC seeks at this stage is the "ministerial act" of confirming an award to which Taoyun is not a party. *Cf. Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 118–19 & n.18 (2d Cir. 2017). And Jia's argument that Taoyun's interests would somehow be compromised by a judgment in its absence (Opp. at 8) does not square with the terms of the CRTA, which reserve for SLC the exclusive right to "claim the Creditor's Rights to LeTV Sports in place of" Taoyun for enforcement. (Liu Decl. Ex. 5 at 52.)[3]

The only remaining question is whether confirming the Award would violate U.S. public policy by subjecting Jia to two overlapping recoveries on the same claim. Jia does not cite, and SLC is not aware of, a single case in which a court has denied confirmation under the New York Convention based on the absence of an entity that, like Taoyun, was not a party to the underlying arbitration or award. This makes sense: The Court's role at the confirmation stage "is a limited one," because "the Convention precludes" a reviewing judicial authority "from vacating, setting aside, or modifying a foreign arbitral award," including by, for example, second-guessing an arbitrator's decision to issue an award to one party and not another. *Gulf Petro*

---

[3] This argument is also inconsistent with Jia's (incorrect) assertion that Taoyun has already been compensated for this debt and therefore has no remaining interest in SLC's claim. (Opp. at 8–9.) If true, Taoyun would have no "interest relating to the subject of the action," Fed. R. Civ. P. 19, and thus nothing to appear and "protect."

*Trading Co. v. Nigerian Nat'l Petroleum Corp.*, 512 F.3d 742, 753 (5th Cir. 2008).

In *Belize Social Development Ltd. v. Government of Belize*, the court did analyze Rule 19 in a confirmation action; there, the respondent contended that a third party that had assigned its claim to the petitioner was necessary to the litigation, precluding confirmation absent joinder of the assignor. *See* 5 F. Supp. 3d 25, 36–37 (D.D.C. 2013). The court dismissed that argument "[a]s a matter of both English and U.S. law, not to mention common sense," concluding that "an absent party that has assigned its legal rights is not 'required' in litigation brought by the assignee to enforce those rights." *Id.* at 37. The court noted that the absent party "ha[d] [n]ever signaled a willingness to . . . bring[] duplicitous lawsuits to enforce the arbitration award," and that any attempt to do so "would be patently frivolous." *Id.* at 37–38.

Here, the roles are reversed because the purported assignor, SLC, expressly ***retained*** the right to pursue the claim at issue, but the *Belize* court's reasoning applies with equal force: Where a party (1) has no right to enforce the award at issue and (2) has not indicated that it ever plans to assert any such right, that party's absence from the litigation is of no moment. *See id.* at 37–38. This case can proceed without Taoyun, which has no right to pursue SLC's claim because, under the CRTA, it never acquired that right in the first place. (Liu Decl. Ex. 5 at 52.)

***The Final Award is binding on the parties.*** The language in which Jia frames his other argument against confirmation is revealing: Jia claims that the Final Award is not binding "because it remains subject to challenge 'by a competent authority of the country in which, or under the law of which, that award was made.'" (Opp. at 13 (quoting New York Convention art. V(1)(e)).) But "subject to challenge" is not the New York Convention's standard for finality; that defense to the Convention applies only where the award at issue "***has been set aside or suspended*** by a competent authority of the country in which, or under the law of which, that award was made." New York Convention art. V(1)(e) (emphasis added). And this case illustrates why. Because arbitration awards are, in theory, ***always*** "subject to

3
PETITIONER'S REPLY IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD

challenge" by new collateral attacks at the seat of the arbitration, the roving standard that Jia proposes would empower debtors to manufacture ceaseless delays in confirmation, no matter how futile and remote their chances of success.

Nor can Jia rely on the Convention's language authorizing courts to defer confirmation, even before a set-aside ruling, where "[t]he award has not yet become binding on the parties." The Ninth Circuit has made clear that "an arbitration award becomes binding when no further recourse may be had to another arbitral tribunal (that is, an appeals tribunal)" or through set-aside applications at the seat of the arbitration within the time frame provided by that jurisdiction's arbitration laws. *Ministry of Def. of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1100 (9th Cir. 2011). There is no dispute that under Chinese arbitration law, the deadline for any application to set aside the Final Award expired on July 22, 2018, and Jia never made any such application. (First Kang Decl. ¶ 11.)

## II. Even if the arguments raised in Jia's Opposition were relevant, they are factually incorrect and thus cannot defeat confirmation.

Even if Jia's arguments were relevant, they would still fail because they are based on a faulty factual premise: that Taoyun somehow discharged SLC's rights against Jia two weeks *before* it even purportedly acquired those rights from SLC.

Jia's Opposition describes the CRTA as having taken place "[a]t roughly the same time as" the ETA, but the CRTA was actually executed two weeks later, on July 14, 2017. (Liu Decl. Ex. 5 at 54.) And nothing in the ETA (or any other document submitted with Jia's opposition) suggests that the debts discharged under that agreement extended to claims, like SLC's, that Taoyun would acquire *after* the execution of the ETA. (Liu Decl. Ex. 4 at 24.) The ETA describes the discharged claims as those "contained in the package loans" extended by "Taoyun and its related parties," totaling ¥692 million, to Jia and certain entities that he controlled. (*Id.*) Jia does not argue that SLC is a "related party" vis-à-vis Taoyun. Thus, this language offers no reason to believe that after-acquired claims like SLC's were among those

discharged, and Jia's Opposition supplies none.

Indeed, Jia himself never argued until 2019 that the ETA discharged SLC's claim, following the filing of this Petition and well over a year after the ETA was executed. The Arbitration Respondents made much of SLC's purported transfer of its claims to Taoyun, only to see those arguments rejected by the Tribunal in view of the CRTA's "clear provisions" authorizing SLC to continue pursuing that claim. (First Kang Decl. Ex. 1 (Dkt. No. 1-3) at 5, 14.) Tellingly, however, the Arbitration Respondents never argued, as Jia does here and now, that the claim itself was discharged under the ETA. Jia has offered no explanation for his failure to raise this issue before the Tribunal; absent such an explanation, this failure constitutes a waiver. *Marino v. Writers Guild of Am., E., Inc.*, 992 F.2d 1480, 1484–85 (9th Cir. 1993). More importantly, it reveals Jia's setoff argument for what it is: a Hail Mary defense to enforcement concocted by Jia only after he lost the Arbitration, missed the deadline to apply to set aside the Final Award in China, and was faced with confirmation proceedings in a jurisdiction in which he owns substantial assets subject to execution.

In short, every one of the arguments raised in Jia's Opposition relies on the assertion that SLC's claims were extinguished by the ETA. They were not, and the Court should reject Jia's defenses for that additional reason.

## CONCLUSION

For the foregoing reasons, the Court should confirm the Final Award and incorporate its terms into a judgment against Jia.

Dated: March 11, 2019            KOBRE & KIM LLP

                                 By: */s/ Christopher Cogburn*

                                 *Attorneys for Petitioner*
                                 *Shanghai Lan Cai Asset Management Co, Ltd.*

5
PETITIONER'S REPLY IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD